1

Gay Crosthwait Grunfeld – 121944
Shirley Huey – 224114
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California  94104-1823
Telephone:     (415) 433-6830
Facsimile:      (415) 433-7104
ggrunfeld@rbg-law.com
shuey@rbg-law.com

*Local Counsel for Plaintiffs*

Andrew N. Friedman
Victoria S. Nugent
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, D.C.  20005-3964
Telephone:     (202) 408-4600
Facsimile:      (202) 408-4699
vnugent@cohenmilstein.com
*Pro Hac Vice* Application Pending

*Counsel for Plaintiffs*

Matthew N. Metz - 154995
METZ LAW GROUP, PLLC
701 Fifth Avenue, Suite 7230
Seattle, Washington  98104-7042
Telephone:     (206) 583-2745
Facsimile:      (206) 625-8683
matthew@metzlaw.net

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CV 10 1455

| | |
|---|---|
| MELISSA FERRINGTON and CHERYL SCHMIDT, individually and on behalf of the class they represent,<br><br>Plaintiffs,<br><br>v.<br><br>MCAFEE INC., a Delaware Corporation,<br><br>Defendant. | NO.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Melissa Ferrington and Cheryl Schmidt, individually and on behalf of the Class

described below, by their attorneys, make the following allegations based upon information and

belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are

based on personal knowledge.  Plaintiffs bring this action for damages and injunctive relief

[353984-1]

1  against defendant McAfee Inc.

2  **NATURE OF ACTION**

3  1.  McAfee Incorporated ("McAfee") is the world's largest dedicated security
4  technology company. According to its most recent Form 10-K, McAfee delivers "proactive and
5  proven solutions and services that help secure systems and networks around the world, allowing
6  users to safely connect to the internet, browse and shop the web more securely."
7
8  2.  McAfee sells its security software products and services on its website,
9  www.mcafee.com.  When consumers buy these products directly from McAfee, however, a
10  misleading pop-up display on the McAfee site leads them to unwittingly enroll in subscription-
11  based services offered by a third party, Arpu Inc.  On information and belief, Plaintiffs allege that
12  McAfee transmits customer credit/debit card and billing information to Arpu Inc. and receives an
13  undisclosed fee for each customer.  McAfee transmits this confidential customer information
14  without adequately disclosing: (1) the nature of the subscription services;  (2) the customer's
15  commitment to pay the recurring cost of the service;  (3) the terms and conditions of the
16  subscription service;  (4) the identity of the billing party; and (5) the manner by which the
17  customer may cancel the service.  The shortcomings in these point-of-sale disclosures are further
18  compounded by billing practices that make the subscription charges hard to detect, track, and
19  terminate.  For these reasons, Plaintiffs allege that McAfee's practices, by structure and design,
20  have the capacity to deceive.

21  3.  Plaintiffs bring this class action against McAfee for restitution and other relief
22  available at law and in equity on behalf of themselves as well as on behalf of the members of the
23  following class:

24  All persons in the United States who purchased products or services
25  from McAfee Incorporated and were subsequently charged by a
third party for unused and unclaimed products and services after
26  McAfee transferred their credit/debit card and other billing
information to the third-party.

27
28

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

**THE PARTIES**

4.    Plaintiff Melissa Ferrington ("Ferrington") is a resident of the State of Mississippi who unknowingly purchased PerfectSpeed from Arpu, Inc. on the McAfee website.

5.    Plaintiff Cheryl Schmidt ("Schmidt") is a resident of the State of Ohio who unknowingly purchased PerfectSpeed from Arpu, Inc. on the McAfee website.

6.    Defendant McAfee is a Delaware Corporation with its principal place of business in Santa Clara, California.  On information and belief, Plaintiffs allege that the key acts of deception alleged herein were approved and executed at McAfee's headquarters in Santa Clara, California.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1332.  In the aggregate, the claims of Plaintiffs and the members of the Class exceed the jurisdictional minimum amount in controversy of $5,000,000.00, exclusive of costs and interests, 28 U.S.C. § 1332(d)(2)(A) and § 1332(6).  Additionally, this is a class action in which some of the members of the Class are citizens of a different state than the Defendant.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) in that McAfee resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California.

**FACTUAL ALLEGATIONS**

9.    McAfee is a leading international provider of computer security software and services to consumers, businesses, and governments.

10.    McAfee claims on its website that it holds "the highest ethical standards," and that its "business relationships with customers . . .[are] built on a foundation of integrity and trust."  It

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1    also claims, "McAfee creates best-of-breed computer security solutions that prevent intrusions on

2    networks and protect computer systems from the next generation of blended attacks and threats."

3    McAfee does not advise consumers that McAfee itself allows third parties to market products and

4    services on McAfee's own website and that McAfee passes customer billing information to these

5    third parties.

6
7        11.    Arpu, Inc. is a company that, according to its website, places ads "enabl[ing]

8    consumers to purchase products or services from an online ad with a single click, using credit

9    card information already on file. Eliminating the need to enter billing info makes advertising with

10   ARPU ads 500% more effective than traditional online advertising."   Other text on the Arpu site

11   indicates that Arpu ads can be more than 47 times as "effective" as other ads.  Arpu's site lists

12   McAfee as one of its partners.

13       12.    According to Arpu, "McAfee partnered with Arpu in September 2007 with the

14   goal of increasing their profitability by selling additional products to their customers. Now,

15   whenever a McAfee customer completes a purchase on McAfee.com, an ad will appear for a

16   related product or service. Interested customers can choose to subscribe to the product or service

17   using the billing method just entered in their recent McAfee.com purchase. This convenience to

18   the customer streamlines the purchase flow and increases the overall conversion rate."

19       13.    The Arpu pop-up placed on McAfee's website appears immediately after a

20   customer has completed his purchase of McAfee software, and immediately before the customer

21   begins his download of McAfee software.  The pop-up, mimicking the look of the other pages on

22   the McAfee site, thanks the customer for purchasing McAfee software, and prompts McAfee's

23   customers to click a red button to "Try It Now."  The pop-up contains no obvious visual cues or

24   conspicuous text indicating that it is an advertisement for another product, or that clicking on

25   "Try It Now" will lead not to the delivery of the McAfee product but rather to the purchase of a

26   completely different product.  Instead, all of the obvious visual cues suggest that "Try It Now" is

27   a necessary step in downloading the McAfee software.

28

-4-                    COMPLAINT FOR EQUITABLE RELIEF
                                                                              AND DAMAGES

[363984-1]

14.     Language on the pop-up indicating that a company other than McAfee is involved in the sale of the product, and authorizing use of the credit card information provided to McAfee, appears in nearly illegible gray 6 point type set against a gray background.  The phrase "you agree to our terms of service," is similarly presented – but the terms are not available on the pop-up.  Information regarding the price of $4.95 a month is set forth in nearly illegible blue 8 point type set against a blue background.

15.     Customers are deceived by the McAfee-Arpu pop-up and believe that they are simply completing a necessary step to download McAfee software after their purchase.  But a single click on the deceptive pop-up causes the purchase of an unwanted product from Arpu, a sale made without the knowledge or authorization of customers, using credit/debit card billing information that they have entrusted solely to McAfee.

16.     These Arpu charges are billed monthly and appear on credit/debit card statements as "TB *PERFECTSPD ON MCAF 202-4461821."

17.     The phone number 202/446-1821 rings to Arpu Inc.  This phone number, however, is not staffed by live operators and instead plays a recording about Arpu; the recording provides no option for cancelling transactions or subscription services.

**Plaintiffs' Experiences Buying Products on McAfee's Website**

18.     On or about August 18, 2009, Plaintiff Melissa Ferrington purchased McAfee's anti-virus program directly from the McAfee website.  In her attempt to download the product at the conclusion of the transaction, she clicked on a button reading "Try It Now."  She has since been charged $4.95 each month by Arpu – to date, $34.65 -- and the charges are continuing.  These charges are described on her debit card statements as "TB *PERFECTSPD ON MCAF 202-4461821."  Ferrington did not recognize this vendor name when it appeared on her statements and initially believed that it reflected a convenience fee that her utility company

- 5 -

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

1   charged for using a debit card to pay bills.  She subsequently asked her bank to investigate the

2   charges; the bank offered to block future charges, but would have charged a fee for doing so.

3   Ferrington was not able to discover the source of these charges until February 2010.

4
        19.    On or about November 30, 2009, Plaintiff Cheryl Schmidt purchased McAfee's

5   anti-virus program directly from the McAfee website.  In her attempt to download the product at

6   the conclusion of the transaction, she clicked on a button reading "Try It Now."  Schmidt was

7   subsequently charged $4.95 each month for "TB *PERFECTSPD ON MCAF 202-4461821."

8   She called McAfee, but McAfee told her that they could not do anything about the charge and did

9   not provide any assistance in understanding the charge or finding the vendor.  She tried the

10  202/446-1821 phone number but was unable to reach a person.   Schmidt searched the Internet for

11  information about PerfectSpeed and found a phone number for TryandBuy, which she called

12  several times, leaving messages requesting a refund.  Her calls were never returned, but the

13  charges were refunded to her debit account in March 2010.

14  **McAfee's Practices Are Inconsistent with Accepted Industry Norms and Reasonable**

15  **Consumer Expectations**

16
        20.    The United States Senate Committee on Commerce, Science and Transportation

17  held a hearing on November 17, 2009, about aggressive sales tactics on the Internet.  One

18  Congressional witness, Dr. Florencia Marotta-Wurgler, explained e-commerce norms as follows:

19
>           Consumers who access the Internet can quickly access the sites of
20          thousands of different vendors.  The reason why consumers can
            comfortably browse and window shop without having to delve into
21          the fine print governing each vendor's site is that, based on
            experience, they know that until they follow some well-established
22          steps, they are not financially bound to the vendor.  In almost all
            consumer transactions online, consumers select a product or service
23          and complete a multi-step checkout process that requires entering a
            preferred payment method as well as shipping and billing
24          addresses.  When the transaction is completed, consumers are
            presented with a confirmation page with details of the completed
25          transaction.  This norm of online commerce is what allows
            consumers to safely explore the web, become informed about
26          advertisement offers and complete transactions online.  The fact
            that this norm has been widely accepted and in a way standardized
27          has helped drive the explosive and economically beneficial growth
            of online transactions.

28

                                              - 6 -                COMPLAINT FOR EQUITABLE RELIEF
                                                                              AND DAMAGES

[363984-1]

21.     Another Congressional witness, Dr. Robert J. Meyer, testified about post-transaction marketing schemes, in which a consumer's billing information is passed after a volitional purchase from a familiar vendor to a third party, without meaningful disclosures or consent.   These post-transaction marketing schemes follow a specific design, using the following elements:

> (1) **an initial legitimate sales setting** – where a customer makes a volitional purchase using a credit card number and other billing information that the customer must enter into a data-field on the website;

> (2) **a disguised link and enticement** – where the customer is transferred, without disclosure, to a landing page maintained by a third-party but designed to look like part of the website where the customer made his purchase;

> (3) **distraction and confusion ploys** – where the fine-print details of the new sales pitch are minimized or obscured;

> (4) **concealment of the payment mechanism** – where the customer is asked to take an action – clicking a button or providing an email address – rather than  provide credit card and billing information, an omission that deceptively leads the customer to believe no additional purchase has been made;

> (5) **post-acceptance retention ploys** – billing the customer a low, but regular, amount that is likely to be overlooked on a monthly credit card statement and using non-descript or inaccurate vendor names to prevent the customer from noticing or questioning recurring charges;

> (6) **negative-option pricing** – making the purchase and ongoing

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1      payment of subscription fees the default outcome of the transaction

2      unless the customer takes specific action to stop payment, even

3      where the customer has never used the service.

4          22.    Robert McKenna, the Attorney General of Washington, submitted Congressional

5   testimony summarizing his office's investigation into a few Internet companies.  His findings

6   about post-transaction marketing included:

7              (1) Consumers do not expect that the financial account information
              that they provide for one transaction will result in ongoing charges
8              placed by a third-party company;

9              (2) Consumers have difficulty identifying and contacting the seller
10             of the membership program to cancel or otherwise terminate any
              ongoing or recurring obligation because the sellers frequently do
11             not identify themselves in the offers;

12             (3) Sellers use a variety of distractions to obscure the "true" offer,
13             e.g., offering cash back on the consumer's primary purchase and
              using "consumer surveys"; and

14             (4) The use of words "free" or "trial offer" to market free-to-pay
15             conversions leads consumers to believe that they do not have to
              take further action in order to avoid ongoing charges.
16

17         23.    The Federal Trade Commission (FTC) has found that the passing of billing

18   information from one vendor to another (called "preacquired account information") is at odds

19   with consumer expectations and thus deceptive and unfair.  In issuing a rule that regulates this

20   practice in the context of telemarketing, the FTC concluded:

21             The record makes clear, in fact, that it is the very act of pulling out a
              wallet and providing an account number that consumers generally equate
22             with consenting to make a purchase, and that this is the most reliable
              means of ensuring that a consumer has indeed consented to the transaction
23             …. [T]he Commission still believes that whenever preacquired account
              information enables a seller or telemarketer to cause charges to be billed to
24             a consumer's account without the necessity of persuading the consumer to
              demonstrate his or her consent by divulging his or her account number, the
25             customary dynamic of offer and acceptance is inverted.
26
   Telemarketing Sales Rule, 68 Fed. Ref. 4580, 4619 (Jan. 29, 2003) (final amended rule).
27
28         24.    It is commonly understood that computer viruses are transmitted via email and that

- 8 -                COMPLAINT FOR EQUITABLE RELIEF
                                         AND DAMAGES

1   best practices for maintaining the security and integrity of computer networks and personal

2   computers counsel against opening email and email attachments from unknown sources.  Thus,

3   many people are reluctant or unwilling to open email from unknown or unfamiliar addresses.

4
5       25.      While many websites intentionally include pop-up boxes in their design, pop-up

6   boxes are also a type of nuisance associated with computer viruses.

7                              **CLASS ACTION ALLEGATIONS**

8
9       26.      This class action is brought and may be maintained pursuant to Fed. R. Civ. P.

10  23(a) and Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3).  Plaintiffs seek to represent a class

11  comprising:

12              All persons in the United States who purchased products or services
                from McAfee Incorporated and were subsequently charged by a
                third party for unused and unclaimed products and services after
13              McAfee transferred their credit/debit card and other billing
                information to the third-party.

14

15      27.      Excluded from the Class are governmental entities, Defendant, any entity in which

16  Defendant has a controlling interest, and Defendant's officers, directors, legal representatives,

17  successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or

18  judicial officer presiding over this matter and the members of their immediate families and

19  judicial staff.

20
21      28.      Plaintiffs reserve the right to modify the Class description pursuant to subdivisions

22  (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

23      29.      This action is properly brought as a class action under Fed. R. Civ. P. 23(b)(1),

24  (b)(2), and (b)(3) for the following reasons:

25      a.       Upon information and belief, Plaintiffs allege that Defendant deceived thousands

26               of persons into inadvertently purchasing PerfectSpeed software and other products

27               from third parties.  Therefore, the class consists of thousands of persons, and

28

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1        joinder of all members is impracticable.

2    b.   There are questions of law or fact common to the Class, which predominate over

3         any questions affecting individual members, including:

4        i.    Whether the McAfee-Arpu pop-up constitutes an unfair or deceptive

5              practice within the meaning of California Business and Professions Code

6              section 17200 in that McAfee's conduct is unfair, unlawful and/or

7              fraudulent;

8        ii.   Whether a reasonable consumer would be likely to be deceived by the

9              McAfee-Arpu pop-up;

10       iii.  Whether Defendant's actions in obtaining money from Plaintiffs and

11             members of the putative class constitutes unjust enrichment;

12       iv.   Whether Defendant's actions constitute a breach of the covenant of good

13             faith and fair dealing;

14       v.    Whether Defendant's actions and/or omissions violate California's

15             Consumers Legal Remedies Act, Civ.Code § 1750, *et seq.*; and

16       vi.   Whether Plaintiffs and the members of the Class have been damaged by the

17             wrongs complained of herein, and if so, the measure of those damages and

18             the nature and extent of other relief that should be afforded.

19   Plaintiffs contend that these common questions should be decided under the

20   California state laws regulating unfair and deceptive business practices because

21   McAfee is headquartered in Santa Clara, California.  If, however, the Court

22   determines that McAfee's conduct falls within the scope of the McAfee End User

23   License Agreement that governs the use of McAfee software products, the claims

24   of the proposed national class shall be governed by the substantive laws in force in

25   the State of New York.  Accordingly, Plaintiffs' claims are pled under California

26   law and, in the alternative, under New York law.

27   c.   The claims asserted by Plaintiffs are typical of the claims of the members of the

28        Class.  Plaintiffs and all members of the Class have been similarly affected by

- 10 -

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1    Defendant's common course of conduct since Defendant caused Plaintiffs to incur

2    charges without their knowledge or consent.

3    d.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs

4    seek no relief that is antagonistic or adverse to other members of the class and

5    have no conflict of interest with other Class members in the maintenance of this

6    class action. Plaintiffs have retained counsel competent and experienced in class

7    and consumer litigation and will vigorously pursue the claims of the Class.

8    e.    Individual adjudication of these claims with respect to individual members of the

9    Class risks establishment of inconsistent standards of conduct for the Defendant,

10    for example, establishing relief that could require Defendant to refund the money

11    of certain class members, but not others.

12    f.    Defendant has acted on grounds generally applicable to Plaintiffs and the Class as

13    alleged herein, thereby making appropriate final injunctive relief and incidental

14    damages with respect to the Class as a whole.

15    g.    A class action is superior to any other available means for the adjudication of the

16    controversy. This action will enable the orderly and expeditious administration of

17    the Class claims; economies of time, effort and expense will be fostered, and

18    uniformity of decisions will be ensured at the lowest cost and with the least

19    expenditure of judicial resources.

20    h.    Because the loss suffered by the Class members may be relatively small, the

21    expense and burden of individual litigation make it impracticable for the Class

22    members to seek redress individually for the wrongs done to them. Plaintiffs

23    believe that the Class members, to the extent they are aware of their rights against

24    Defendant, would be unable to secure counsel to litigate their claims on an

25    individual basis because of the relatively small nature of the individual damages

26    and/or the value of individual injunctive relief. Hence, a class action is the only

27    feasible means of recovery for the Class members. Furthermore, without a class

28    action, Class members will continue to suffer damages and Defendant will

- 11 -

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

1    continue to violate the law, reaping and retaining the proceeds of its wrongful

2    practices.

3    i.    Plaintiffs do not anticipate any difficulty in management of this action because the

4    evidence proving Defendant's legal violations is readily ascertainable through

5    discovery.  The identities of the Class are known by Defendant, and damages can

6    be calculated from Defendant's records.  This action poses no unusual difficulties

7    that would impede its management by the Court as a class action.

8
## FIRST CAUSE OF ACTION
9
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### (On behalf of the Plaintiffs and the Class)
10

11    30.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1

12    through 29 of this complaint.

13

14    31.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in

15    fact and have lost money or property as a result of Defendant's actions as described herein.

16    32.    Defendant's actions as alleged in this complaint constitute an unfair or deceptive

17    practice within the meaning of California Business and Professions Code section 17200 in that

18    Defendant's actions are unfair, unlawful, and/or fraudulent.

19

20    33.    Defendant's business practices are unfair because they violate established public

21    policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to

22    consumers in that Defendants (a) employ numerous artifices designed to trick McAfee site users

23    into believing that clicking on the popup will simply permit them to download the McAfee

24    software they purchased rather than actually purchasing software from Arpu, an unknown third

25    party vendor; (b) artfully conceal the authorization for McAfee to share customer billing

26    information; (c) conceal the price of PerfectSpeed in small, nearly illegible blue type on a blue

27    background.

28

- 12 -

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

34.    Defendant's business practices are fraudulent because they deceive customers into believing that they are simply downloading McAfee software, when in reality they are unknowingly authorizing Arpu to charge their credit card $4.95 a month.

35.    Defendant's practices are unlawful because they violate the Consumer's Legal Remedies Act and Section 43(a) of the Lanham Act.  Defendant's practices are also unlawful because they constitute false advertising, breach of the covenant of good faith and fair dealing, and unjust enrichment.

36.    Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition.

37.    Defendant's business acts and practices, as alleged herein, have caused injury to Plaintiffs and the Class.

38.    Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including the acts set forth in the complaint.

39.    Plaintiffs and the Class also seek an order requiring Defendant to disgorge all ill-gotten gains and provide full restitution of all monies they wrongfully obtained from Plaintiffs and the Class through the scheme described herein.

40.    Plaintiffs and the Class seek an award of attorneys' fees under California Civil Code § 1021.5.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,
### CALIFORNIA CIVIL CODE § 1750
#### (On behalf of the Plaintiffs and the Class)

41.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 29 of this complaint.

- 13 -

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

42.   Defendant is a person as defined by Civil Code § 1761(c).

43.   Plaintiffs and the Class are consumers within the meaning of Civil Code §1761(d).

44.   Defendant violated Civil Code § 1770(a)(1) by passing off PerfectSpeed as part of McAfee's product.

45.   Defendant violated Civil Code § 1770(a)(2) by misrepresenting McAfee as the source of PerfectSpeed.

46.   Defendant violated Civil Code § 1770(a)(3) by misrepresenting the affiliation and connection of McAfee with respect to PerfectSpeed.

47.   Defendants violated Civil Code § 1770(a)(19) by placing unconscionable and functionally illegible contract terms in the "pop-up" contract it offered to Plaintiffs and the Class.

48.   Plaintiffs and the Class seek an award of attorneys' fees under California Civil Code § 1780(d).

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201 and Fed. R. Civ. P. 57
### (On behalf of the Plaintiffs and the Class)

49.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 29 of this complaint.

50.   There exists an actual controversy regarding the rights of Plaintiffs and Defendant with respect to Defendant's actions herein.  This question is common to the members of the Class who seek a declaration of their rights and legal obligations in addition to such other relief which might be granted by this Court.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF N.Y. G.B.L. § 349
### (On behalf of the Plaintiffs and the Class)
### Pled in the Alternative

51.   Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

through 29 of this complaint.

52.     Plaintiffs and other members of the Class have been injured and suffered damages by violation of section 349(a) of New York General Business Law ("GBL"), which prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

53.     By reason of the foregoing, McAfee has engaged in acts and practices, willfully and knowingly, that were deceptive or misleading in a material way, and that injured Plaintiffs and the other members of the Class.  Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances extant at the time the Plaintiffs and the other members of the Class purchased software from McAfee.

54.     By reason of the foregoing, Plaintiffs and the other members of the Class have been damaged by McAfee's violation of section 349 of the GBL, for which they seek the recovery of actual damages they suffered, statutory damages and penalties, and disgorgement of any ill-gotten gains.

55.     Plaintiffs and the other members of the Class also seek to enjoin those of McAfee's practices that violate section 349 of the GBL.

56.     Plaintiffs and other members of the Class seek an award of attorneys' fees under section 349(h) of the GBL.

### FIFTH CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### UNDER NEW YORK LAW
**(On behalf of the Plaintiffs and the Class)**
**Pled in the Alternative**

57.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 29 of this complaint.

58.     Plaintiffs' and the Class's purchase of McAfee anti-virus software from the

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1   McAfee website created a contractual relationship between McAfee and Plaintiffs, subjecting

2   McAfee to an implied covenant of good faith and fair dealing.

3       59.     Said covenant prevents McAfee from engaging in arbitrary or unfair acts which

4   would disadvantage and/or unfairly take advantage of its customers.

5

6       60.     By participating in the scheme described herein, McAfee engaged in arbitrary and

7   unfair acts and practices that disadvantaged and unfairly took advantage of Plaintiffs and the

8   Class.  Among other things, McAfee passed billing information entrusted by customers to

9   McAfee along to third parties.  Plaintiffs were subsequently charged for products that they did not

10  intend or consent to buy.

11

12      61.     In engaging in the conduct alleged herein, McAfee unfairly and in bad faith

13  enriched itself, at the expense of Plaintiffs and the Class.

14      62.     As a direct and proximate result of McAfee's acts and practices, Plaintiffs and the

15  Class have been damaged.

16  **SIXTH CAUSE OF ACTION**
    **UNJUST ENRICHMENT UNDER NEW YORK LAW**

17  **(On behalf of the Plaintiffs and the Class)**
    **Pled in the Alternative**

18

19      63.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1

20  through 29 of this complaint.

21      64.     Plaintiffs and the Class provided credit card and other billing information to

22  McAfee for the express purpose of purchasing McAfee software products from McAfee.  McAfee

23  subsequently passed Plaintiffs' credit card and billing information to third parties and was paid by

24  those parties for providing such information.  The third parties subsequently billed charges to

25  Plaintiffs using the information provided by McAfee.

26

27      65.     Defendant has been unjustly enriched at the expense of and to the detriment of

28  Plaintiffs and the Class.

- 16 -                    COMPLAINT FOR EQUITABLE RELIEF
                                    AND DAMAGES

[363984-1]

66.     By reason of Defendant's conduct as aforesaid, Plaintiffs and the Class are entitled to legal and/or equitable relief.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs request judgment against Defendant for themselves and the members of the class as follows:

A.      Certification of the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2) or (b)(3);

B.      An order that Defendant be permanently enjoined from the improper activities and practices described herein;

C.      Restitution of all charges paid by Plaintiffs and the Class because of Defendant's unlawful, unfair, and/or fraudulent business practices complained of herein.

D.      Disgorgement and restitution to Plaintiffs and to members of the Class of all monies wrongfully obtained and retained by Defendant.

E.      Compensatory damages in an amount according to proof at trial;

F.      Statutory damages and penalties, as provided by law;

G.      Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;

H.      Punitive and exemplary damages in an amount according to proof at trial;

I.      Costs and fees incurred in connection with this action, including attorneys' fees, expert witness fees, and other costs, as provided by law; and

J.      Granting such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

COMPLAINT FOR EQUITABLE RELIEF
AND DAMAGES

[363984-1]

1

## JURY TRIAL DEMAND

2

Plaintiffs hereby request a jury trial for all issues so triable.

3

**DATED** this ___6___ day of April, 2010.          Respectfully submitted,

4

5                                         ROSEN, BIEN & GALVAN, LLP

6                                         By: _____

7                                         Gay Crosthwait Grunfeld
                                          Shirley Huey
8                                         315 Montgomery Street, Tenth Floor
                                          San Francisco, CA 94104-1823
9                                         Telephone: (415) 433-6830
                                          Facsimile: (415) 433-7104

10                                        Local Counsel for Plaintiffs
                                          Melissa Ferrington and Cheryl Miller
11

12                                        Victoria S. Nugent
                                          Andrew N. Friedman
13                                        COHEN MILSTEIN SELLERS & TOLL PLLC
                                          1100 New York Avenue, N.W.
14                                        Suite 500, West Tower
                                          Washington, DC 20005
15                                        Telephone: (202) 408-4600
                                          Facsimile: (202) 408-4699
16

17                                        Matthew N. Metz
                                          METZ LAW GROUP, PLLC
18                                        701 Fifth Avenue, Suite 7230
                                          Seattle, WA 98104
19                                        Telephone: (206) 583-2745
                                          Facsimile: (206) 625-8683
20
                                          Counsel for Plaintiffs
21

22

23

24

25

26

27

28

COMPLAINT FOR EQUITABLE RELIEF
                                          AND DAMAGES

[363984-1]