1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA FERRINGTON and CHERYL SCHMIDT, | Case No.: 10-CV-01455-LHK |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| McAFEE, INC., | |
| Defendant. | |

Defendant McAfee moves to dismiss Plaintiffs' First Amended Complaint (FAC) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Having considered the parties' submissions and arguments, the Court grants Defendant's motion in part and denies it in part.

### I.  Background

On April 6, 2010, Plaintiffs Melissa Ferrington and Cheryl Schmidt brought this action, individually and on behalf of a nationwide class of consumers, against Defendant McAfee, Inc. McAfee is a leading provider of computer security software whose products may be purchased and downloaded from the McAfee website.  FAC ¶¶ 9, 13.  Arpu, Inc., is a company that places online advertisements that enable consumers to purchase products "with a single click, using credit card information already on file."  FAC ¶ 11.  In 2007, Arpu partnered with McAfee to place ads on McAfee's website that would appear after a customer completed a purchase of a McAfee product. FAC ¶ 12.  If a customer chooses to subscribe to the product or service offered in the Arpu ad,

1

1    McAfee transmits their billing information to Arpu for use in the purchase of the Arpu product.

2    FAC ¶ 12.  Plaintiffs allege, on information and belief, that McAfee receives an undisclosed fee for

3    each customer who subscribes to Arpu's services through the ad on McAfee's site.  FAC ¶ 2.

4         Plaintiffs Ferrington and Schmidt purchased McAfee's anti-virus program from the McAfee

5    website on August 18, 2009, and November 30, 2009, respectively.  FAC ¶¶ 18-19.  After they

6    completed their transactions, but before they downloaded the McAfee product, an Arpu pop-up ad

7    appeared on their computer screens with a button reading "Try It Now."  *Id.*  Believing that

8    clicking on "Try It Now" would download the McAfee software they had just purchased, Plaintiffs

9    clicked on the button.  *Id.*  They later learned that clicking on "Try It Now" authorized McAfee to

10   transfer their billing info to Arpu, enrolled them in a 30-day free trial of a non-McAfee product

11   called PerfectSpeed, and authorized Arpu to charge them a $4.95 monthly subscription fee after the

12   expiration of the free trial period.  *Id.*  Plaintiffs were not aware of this transaction until they

13   noticed charges listed as "TB *PERFECTSPD ON MCAF 202-4461821" on their credit or debit

14   card statements.  *Id.*

15        Plaintiffs claim that their experience is representative of the experiences of thousands of

16   people whom Defendant deceived into inadvertently purchasing PerfectSpeed software and other

17   products from third parties after purchasing McAfee software online.  FAC ¶ 29.  They allege that

18   McAfee transfers the confidential billing information of its customers without adequately

19   disclosing 1) the nature of the services to which customers are subscribing, 2) the consumer's

20   commitment to pay recurring monthly fees for the service, 3) the terms and conditions of the

21   subscription service, 4) the identity of the billing party, and 5) the manner by which the customer

22   may cancel the service.  FAC ¶ 2.  They allege further that McAfee employs "numerous artifices"

23   and "artful conceal[ment]" to "trick McAfee site users into believing that clicking on the popup

24   will simply permit them to download the McAfee software they purchased rather than actually

25   purchasing software from Arpu."  FAC ¶¶ 33.

26        Plaintiffs assert causes of action under the California Unfair Competition Law, Cal. Bus. &

27   Profs. Code § 17200 et seq., the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750

28

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as a number of New York

2    state laws.  Defendant McAfee moves to dismiss the entire FAC.

3    **II. Legal Standard**

4        A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

5    sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

6    whether the complaint is sufficient to state a claim, the court must accept as true all of the factual

7    allegations contained in the complaint.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However,

8    the court need not accept as true "allegations that contradict matters properly subject to judicial

9    notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or

10   unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d

11   1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must

12   contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its

13   face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

14   (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference

15   that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

16       Additionally, claims sounding in fraud are subject to the heightened pleading requirements

17   of Federal Rule of Civil Procedure 9(b).  Under the federal rules, a plaintiff alleging fraud "must

18   state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b).  To satisfy this

19   standard, the allegations must be "specific enough to give defendants notice of the particular

20   misconduct which is alleged to constitute the fraud charged so that they can defend against the

21   charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,

22   731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and

23   specific content of the false representations as well as the identities of the parties to the

24   misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

25       If a court grants a motion to dismiss, leave to amend should be granted unless the pleading

26   could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130

27   (9th Cir. 2000).

28

United States District Court
For the Northern District of California

1    **III. Request for Judicial Notice**

2        Both Plaintiffs and Defendant submitted documents and images for the Court's

3    consideration in ruling on this motion.  As a general rule, a district court may not consider any

4    material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim.

5    *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are, however, two exceptions

6    to the general rule forbidding consideration of extrinsic evidence on a 12(b)(6) motion.  *Lee*, 250

7    F.3d at 688.  First, a court may take judicial notice of matters of public record outside the

8    pleadings.  *Id.* at 689.  Second, a court may consider "material which is properly submitted as part

9    of the complaint.  *Id.* at 688 (internal quotation marks omitted).  Such consideration may extend to

10   documents "whose contents are alleged in a complaint and whose authenticity no party questions,

11   but which are not physically attached to the [plaintiff's] pleading."  *Parrino v. FHP, Inc.*, 146 F.3d

12   699, 706 (9th Cir.1998) (internal quotation marks omitted), *superseded by statute on other grounds*

13   *as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

14       A.  **Screen shots**

15       First, Defendant requests that the Court take judicial notice of "screen shots reconstructing

16   the McAfee and Arpu purchase process, including the screens that plaintiffs would have seen, for

17   the purchases they made."  Def. McAfee, Inc's Req. for Judicial Notice in Supp. of Mot. to

18   Dismiss FAC ("RJN"), Decl. of Carlos Ochoa ("Ochoa Decl.") 1.  Plaintiff objects to the screen

19   shots of the McAfee web pages presented in Defendant's exhibits A, B, C, G, H, I, J, and K, on

20   grounds that they are neither proper subjects for judicial notice nor documents that may be

21   incorporated into the complaint.  The Court agrees with Plaintiffs.

22       A district court may take judicial notice of facts not subject to reasonable dispute that are

23   "capable of accurate and ready determination by resort to sources whose accuracy cannot

24   reasonably be questioned."  Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331,

25   333 (9th Cir. 1993).  However, because "the effect of judicial notice is to deprive a party of an

26   opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary

27   evidence," courts must use caution in determining that a fact is not subject to reasonable dispute.

28   *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005).  Here, Plaintiffs have

4

demonstrated that the screen shots provided by Defendant are subject to reasonable dispute.  This is particularly true as to Exhibit J, which is alleged to be a reconstruction of the pop-up advertisement as it would have appeared on Plaintiffs' computers.  Ochoa Decl. ¶ 11.  Defendant submitted two declarations from Mr. Carlos Ochoa, a Programmer/Analyst on McAfee's Consumer Team, who describes the source of the exhibits submitted and attests to their authenticity.   In his second declaration, Mr. Ochoa acknowledges that because the pop-up is no longer running on the McAfee website, he "had McAfee's Web Infrastructure team retrieve a copy of that specific pop-up ad, which was then overlayed on the image for the 'Next Steps' page to recreate the image Plaintiffs would have seen."  Supplemental Decl. of Carlos Ochoa in Supp. of Defs.' Reply on Req. for Judicial Notice ("Ochoa Suppl. Decl.") ¶ 11.  Mr. Ochoa's reconstruction is materially different from the screen shot provided by Plaintiffs, which was created at a time when the pop-up still appeared on the McAfee website and thus did not require "overlay[ing]" an image of the pop-up on top of the screen shot.  Decl. of Patricia Seifert in Supp. of Pls.' Opp'n to Def.'s Req. for Judicial Notice ("Seifert Decl.") 2.  Based on the discrepancies between the images submitted by Defendant and Plaintiffs, the Court finds that Defendant's image is subject to reasonable dispute.  Accordingly, the Court may not take judicial notice Exhibit J.  Moreover, because Plaintiffs reasonably question the screen shot's authenticity, the Court also may not consider Exhibit J as a document whose contents are alleged in the Complaint.

As to Exhibits, A, B, C, G, H, I, and K, Defendant represents that these screen shots are an accurate representation of McAfee web pages that Plaintiffs would have clicked through in making their purchases and that there have been no material changes to the appearance of the web pages since Plaintiffs purchased the McAfee and Arpu software.  Ochoa Suppl. Decl. 2.  However, Defendant does not identify what non-material changes were made or why those changes were deemed non-material.  Taking the cautious approach to judicial notice that the Ninth Circuit requires, the Court concludes that these screen shots may also be subject to reasonable dispute and are not proper subjects of judicial notice.  Additionally, because Plaintiffs reasonably question the exhibits' authenticity, the Court may not consider them as documents whose contents are alleged in the Complaint.

5

United States District Court
For the Northern District of California

1    The Court will, however, consider the screen shot provided by Plaintiffs as Exhibit A to the

2    Seifert Declaration.  McAfee has stipulated that the Court may take judicial notice of Plaintiffs'

3    print-out of the screen shot.  Def. McAfee, Inc.'s Reply in Supp. of Req. for Judicial Notice 2.  The

4    print out is thus a document "whose contents are alleged in a complaint and whose authenticity no

5    party questions," and the Court may properly consider it in ruling on the Motion to Dismiss.

6           B.  **Policy documents and emails**

7    Defendant also requests judicial notice of McAfee End User License Agreements, RJN Ex.

8    D, E; McAfee's Privacy Policy, RJN Ex. F; Arpu's Terms of Service, Ex. L; Arpu's Privacy

9    Policy, Ex. M; a copy of the "Thank You" page from Arpu, Ex. N; and copies of emails sent from

10   Arpu to Plaintiffs, Ex. O, P.  Plaintiffs object to the Arpu-related documents in Exhibits L, M, N,

11   O, and P, on grounds that Defendant provides no explanation of the source of these documents.

12   The Court agrees that there is no basis to conclude that these documents are accurate and therefore

13   denies the request for judicial notice as to Exhibits L, M, N, O, and P.  Plaintiffs do not object to

14   Exhibits D, E, and F.  However, the Court does not rely on them in ruling on the motion.

15          C.  **Reports**

16   In addition to the documents discussed above, Defendant requests judicial notice of an FTC

17   publication entitled "Dot Com Disclosures," RJN Ex. Q, and Plaintiffs have submitted a Senate

18   Staff Report entitled "Aggressive Sales Tactics on the Internet and their Impact on American

19   Consumers," an FTC report entitled "Negative Options," and a letter on behalf of state Attorneys

20   Generals downloaded from the FTC website.  Decl. of Victoria S. Nugent in Supp. of Pls.' Opp'n

21   to Def. McAfee's Mot. to Dismiss FAC ("Nugent Decl."), Ex. A-C.  The Court agrees that the

22   existence of these documents, which are matters of public record, is properly subject to judicial

23   notice.  However, as the findings and opinions in the Senate Staff Report and the letter on behalf of

24   state Attorneys General may be subject to dispute, the Court does not take notice of the findings

25   and opinions within these documents.

26

27

28

6

United States District Court
For the Northern District of California

1    **IV. Discussion**

2         **A.  Rule 9(b) Pleading Requirements**

3              **1. Applicability of Rule 9(b)**

4         As a threshold matter, the Court must determine whether the heightened pleading

5    requirements of Rule 9(b) apply to Plaintiffs' claims under the California Unfair Competition Law

6    and the California Consumer Legal Remedies Act.  It is well-settled that Rule 9(b) applies to state

7    law claims sounding in fraud that are brought in a federal action, regardless of the basis of federal

8    jurisdiction.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003).  To

9    ascertain whether a complaint sounds in fraud, a court must determine, "after a close examination

10   of the language and structure of the complaint," whether the complaint alleges "a unified course of

11   fraudulent conduct" and relies entirely on that course of conduct as the basis of the claim.  *Rubke v.*

12   *Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009).  If it does, the claim sounds in fraud,

13   and the pleading of that claim as a whole must satisfy the requirements of Rule 9(b).  *Vess*, 317

14   F.3d at 1103-04.

15        Plaintiffs argue that Rule 9(b) does not apply here because their claims are "not grounded in

16   fraud, but rather in consumer deception."  Pls.' Opp'n to Def. McAfee, Inc.'s Mot. to Dismiss First

17   Amended Compl. ("Pls.' Opp'n").  Plaintiffs are correct that the fraudulent and unfair business

18   practices contemplated by the UCL do not necessarily correspond to common law fraud.  *See South*

19   *Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877, 85 Cal. Rptr. 2d

20   301 (Cal. Ct. App. 1999).  Nonetheless, "[w]hile fraud is not a necessary element of a successful

21   UCL claim, when fraud is alleged, the heightened pleading standard of Rule 9(b) applies."

22   *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1004 (N.D. Cal. 2009) (citing *Kearns v. Ford*

23   *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

24        Fraud may be alleged explicitly or "by pleading facts that, taken together, necessarily

25   constitute elements of a fraud claim."  *Marolda*, 672 F. Supp. 2d at 997.  California law identifies

26   the elements of fraud as follows: "(a) misrepresentation (false representation, concealment, or

27   nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

28   reliance; (d) justifiable reliance; and (e) resulting damage."  *Kearns*, 567 F.3d at 1126 (quoting

7

**United States District Court**
For the Northern District of California

1    *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843, 938 P.2d 903

2    (Cal.1997)).  Here, Plaintiffs' Complaint alleges that Defendant violated the UCL and CLRA by

3    "employ[ing] numerous artifices designed to trick McAfee sites users," FAC ¶ 33, "artfully

4    conceal[ing]" billing and price information, *id.*, and making various misrepresentations, *id.* ¶ 45-

5    46.  Plaintiffs further allege that they and other class members were deceived by McAfee's artifices

6    and misrepresentations and suffered monetary damages as a result.  FAC ¶¶ 15, 18-19, 29.  The

7    Complaint also describes McAfee's conduct as a "scheme."  FAC ¶ 39.  Such claims of intentional

8    misrepresentation and concealment for the purpose of "tricking" or inducing reliance in McAfee

9    site users, coupled with claims of actual deception and damages, constitute the elements of a fraud

10   claim.  Moreover, the claim that McAfee engaged in a scheme of misrepresentation, concealment,

11   and artifice designed to trick consumers amounts to an allegation of a unified course of fraudulent

12   conduct.  Accordingly, Plaintiffs' UCL and CLRA claims sound in fraud and must satisfy the

13   pleading requirements of Rule 9(b).

14                                   **2. Rule 9(b) Pleading Requirements**

15         Defendant McAfee argues that Plaintiffs' claims fail to meet the Rule 9(b) pleading

16   standard because Plaintiffs failed to attach copies of the alleged misleading advertisements and

17   web pages to their Complaint and failed to specify the disclosures and visual cues on the pop-up ad

18   that allegedly misled them.  The Court disagrees.  First, this Court does not believe that Rule 9(b)

19   requires every plaintiff alleging misleading or deceitful advertising to attach a copy of the allegedly

20   misleading ad to the complaint.  Rule 9(b) requires only that a plaintiff "state with particularity the

21   circumstances constituting fraud."  Fed. R. Civ. Pro. 9(b).  If a written description of the

22   misleading ad or web page is "specific enough to give defendants notice of the particular

23   misconduct which is alleged to constitute the fraud," *Semegen v. Weidner*, 780 F.2d 727, 731 (9th

24   Cir. 1985), such description is sufficient to satisfy the requirements of Rule 9(b).[1]

25   _____
     [1] To support its claim that Plaintiffs should have attached copies of the pop-up ad to the Complaint,
26   Defendant cites language from *Marolda v. Symantec Corp.*, which seems to require a plaintiff to
     provide representative samples of allegedly misleading advertisements to satisfy Rule 9(b).  *See*
27   *Marolda*, 672 F. Supp. 2d at 1002 ("plaintiff must describe the content of the omission . . . as
     well as provide representative samples of advertisements, offers, or other representations").
28   However, language in the same case indicates that a plaintiff may *either* "describe the contents of
     the allegedly false representation in detail  . . .  *or* she may simply attach a copy of the offer."  *Id.*

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1       In this instance, the description of the allegedly misleading web pages and pop-up ad in

2    Plaintiffs' Complaint is specific enough to give McAfee the required notice.  The Complaint

3    describes when in the course of a purchase the pop-up ad appears, including the sequence of events

4    leading up to and following the pop-up, and identifies the specific dates on which the named

5    Plaintiffs viewed and clicked on the ad.  FAC ¶ 13, 18, 19.  The Complaint also describes the

6    allegedly misleading aspects of the ad in detail.  Plaintiffs allege that the ad "mimick[s] the look of

7    the other pages on the McAfee site," and indicate that the sequential placement of the ad and the

8    absence of "obvious visual cues or conspicuous text indicating that it is an advertisement for

9    another product" lead consumers to believe that they must click on the ad to download the McAfee

10   product they just purchased.  FAC ¶¶ 13, 15.  Plaintiffs also describe the contents of the ad and

11   allege the color and font size of specific information disclosed in the ad.  FAC ¶ 14.  The Court

12   agrees with Defendant that Plaintiffs could have provided more detail regarding the "obvious

13   visual clues suggest[ing] that 'Try It Now' is a necessary step in downloading the McAfee

14   software."  FAC ¶ 13.  Nonetheless, the Complaint as a whole paints a clear picture of the

15   sequential placement and the visual aspects of the ad - including the varying colors and sizes of

16   different statements and disclosures - that Plaintiffs find misleading.  This is sufficient "to give

17   defendants notice of the particular misconduct which is alleged to constitute the fraud charged,"

18   *Semegen*, 780 F.2d at 731, and therefore satisfies the requirements of Rule 9(b).

19          B.  **UCL Claim**

20          Plaintiffs' first cause of action alleges that Defendant's actions constitute an unfair or

21   deceptive business practice under the California Unfair Competition Law ("UCL"), Cal. Bus. &

22   Profs. Code § 17200 et seq.  The UCL creates a cause of action for business practices that are

23   1) unlawful, 2) unfair, or 3) fraudulent. Cal. Bus. & Profs. Code. § 17200.  Each "prong" of the

24   UCL provides a separate and distinct theory of liability, *Lozano v. AT & T Wireless Services, Inc.*,

25   504 F.3d 718, 731 (9th Cir. 2007), and Plaintiffs' assert claims under all three prongs.  After first

26

27

28   at 1001 (emphasis added).  This Court has found no Ninth Circuit decision requiring a plaintiff to
     attach copies of an allegedly false advertisement to the complaint.

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   addressing whether Plaintiffs have standing to sue under the UCL, the Court will consider

2   Plaintiffs' claims under each prong of the UCL in turn.

3                            1. **Standing under the UCL**

4          Defendants argue, as an initial matter, that Plaintiffs' UCL claims fail because Plaintiffs

5   lack standing to bring a UCL action.  More specifically, Defendants claim that Plaintiffs lack

6   standing because they cannot allege any loss of money or property, as required under Cal. Bus. &

7   Profs. Code § 17204, that can be recovered under the UCL.  This is because, according to

8   Defendant, the relief Plaintiffs seek – disgorgement of ill-gotten gains and restitution by McAfee of

9   monies wrongfully obtained from Plaintiffs – is not available under the UCL.

10         California's Unfair Competition Law creates a cause of action for "any unlawful, unfair or

11  fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

12  Bus. & Profs. Code § 17200.  Its coverage has been described as "sweeping," and its standard for

13  wrongful business conduct is "intentionally broad," allowing courts "maximum discretion to

14  prohibit new schemes to defraud."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir.

15  2006).  While the scope of conduct covered by the UCL is broad, its remedies are limited.  *Korea*

16  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 131 Cal. Rptr. 2d 29 (2003).

17  Plaintiffs prevailing on a UCL claim are generally limited to injunctive relief and restitution;

18  damages and non-restitutionary disgorgement are not available.  *Id.* at 1144-45.  In the context of

19  the UCL, restitution restores the status quo by returning to a plaintiff funds in which she had an

20  ownership interest.  *In re First Alliance Mortg. Co.*, 471 F.3d at 996.  Disgorgement, on the other

21  hand, is a broader remedy.  It may compel a defendant to surrender all money obtained through an

22  unfair business practice, even if the plaintiff did not have an ownership interest in those profits.

23  *Korea Supply Co.*, 29 Cal. 4th at 1145.  Under the UCL, disgorgement is available as a remedy

24  only to the extent that it constitutes restitution.  *Id.*

25         Relying on *Korea Supply*, Defendants argue that Plaintiffs cannot seek restitution from

26  McAfee because Plaintiffs did not pay any money directly to McAfee.  *Korea Supply* does include

27  language suggesting that an award is not restitutionary if it would not replace money that

28  defendants took directly from Plaintiffs.  *Korea Supply*, 29 Cal. 4th at 1149.  However, as the

10

1    California Court of Appeals has noted, this language was directed to the particular facts of *Korea*

2    *Supply*, which involved plaintiffs who never had an ownership interest in the money allegedly

3    obtained through defendant's unfair business practices.  *Troyk v. Farmers Group, Inc.*, 171 Cal.

4    App. 4th 1305, 1338, 90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009).  The California Court of Appeals

5    has since clarified that *Korea Supply* "does *not* hold that a plaintiff who paid a third party money

6    (i.e., money in which the plaintiff had a vested interest) may not seek UCL restitution from a

7    defendant whose unlawful business practice caused the plaintiff to pay that money."  *Id.* (emphasis

8    in original).

9         Defendant argues that *Troyk* merely creates an "indirect purchaser" exception that confers

10   standing on plaintiffs to recover from a defendant monies they paid to a third party to purchase

11   indirectly the defendant's product.  Def. McAfee, Inc.'s Reply Mem. In Supp. of Mot. to Dismiss

12   FAC ("Def.'s Reply") 8.  The Court is not persuaded that *Troyk* should be read so narrowly.  In

13   *Troyk*, Defendant Farmers Insurance argued that restitution could not be awarded against it because

14   plaintiffs sought restitution of fees paid directly to a billing agent, rather than to Farmers itself.

15   *Troyk*, 171 Cal. App. 4th at 1338.  The *Troyk* court first determined that *Korea Supply* was

16   inapposite.  *Id.*  It then broadly discussed the meaning of restitution under the UCL and concluded

17   that a party may be liable for restitution under the UCL even if it was not the direct recipient of the

18   funds a plaintiff seeks to recover.  *Id.* at 1338-40.  The court then turned to the facts of the case

19   before it and found that "[i]n the circumstances of this case, although the class members did not

20   pay the service charges directly to [Farmers], the trial court could have properly inferred from the

21   undisputed facts that [Farmers] received a benefit from those service charge payments (which

22   [Farmers] required) even though they did not directly receive money."  *Id.* at 1340.  The court then

23   noted, in what appears to be an *additional* basis for awarding restitution, that because Farmers and

24   the billing agent acted as a single enterprise, the payments to the billing agent should be treated as

25   if paid to Farmers.  *Id.* The court did not limit its holding to these facts.  Rather, its opinion

26   suggests more generally that the UCL permits restitution from a defendant whose unfair business

27   practices caused plaintiff to pay money to a third party, as long as it is reasonable to infer that the

28   defendant indirectly received that money from the third party.

1       Nor does *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006), prevent

2   Plaintiffs from establishing standing, as Defendant argues.  In *First Alliance*, plaintiffs claimed that

3   Lehman Brothers aided and abetted a fraudulent scheme perpetrated by First Alliance Mortgage

4   and also brought a companion UCL claim against Lehman.  *Id.*  Plaintiffs sought disgorgement of

5   Lehman's "ill-gotten gains" and alleged that Lehman unlawfully acquired plaintiffs' money and

6   property indirectly through First Alliance.  *Id.* at 997.  As Defendants point out, the court in *First*

7   *Alliance* assumed that the plaintiffs' money flowed from First Alliance to Lehman, but held that

8   plaintiffs could not recover because the relief they sought amounted to non-restitutionary

9   disgorgement, a remedy not available under the UCL.  *Id.*  In *First Alliance*, however, the court did

10  not find recovery barred because Lehman received plaintiffs' money and property indirectly.

11  Rather, recovery was barred because plaintiffs failed to specify the amount of Lehman's "ill-gotten

12  gains" in which they had an ownership interest.  *Id.*  In other words, plaintiffs sought disgorgement

13  of *all* Lehman's profits from its relationship with First Alliance, but only some portion of those

14  profits corresponded to the funds improperly taken from plaintiffs – and only that portion could be

15  recovered through restitution.

16       The distinction that California courts have drawn between restitutionary disgorgement and

17  non-restitutionary disgorgement does not turn on whether Plaintiffs paid money directly to the

18  defendant.  It turns, rather, on whether the profits sought to be disgorged would merely "restore the

19  status quo by returning to the plaintiff funds in which she has an ownership interest" or would

20  achieve something broader.  *In re First Alliance Mortg. Co.*, 471 F.3d at 996.  Here, Plaintiffs

21  allege that McAfee receives a fee from Arpu for each customer whose billing information is

22  transferred to Arpu via the pop-up ad.  FAC ¶ 2.  Taking this allegation as true, the Court finds that

23  Plaintiffs may be able to show that the fees paid by Arpu to McAfee come from the monies

24  Plaintiffs paid (and lost) to Arpu because of McAfee's business practices.  Thus, Plaintiffs have

25  alleged an injury in fact and lost money that may be recoverable under the UCL.  They have

26

27

28

12

therefore alleged sufficient facts to meet the standing requirements of the UCL.[2]  Accordingly, the Court turns to Plaintiffs' claims under the fraudulent, unfair, and unlawful prongs of the UCL.

## 2. **Fraudulent prong**

To state a claim under the fraudulent prong of the UCL, a plaintiff must show that members of the public are likely to be deceived by the business practice or advertising at issue. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  California has adopted a reasonable consumer standard for evaluating UCL claims.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504-513, 129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003).  Under this standard, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 508.  The standard does not require consumers to investigate the merits of advertisements, however, nor does it assume that a reasonable consumer is necessarily "exceptionally acute and sophisticated" or "wary or suspicious of advertising claims." *Id.* at 504, 509-10.

Plaintiffs' basic contention is that the "McAfee-Arpu" pop-up ad deceives consumers and leads them to believe that clicking on the ad is "a necessary step to download McAfee software after their purchase."  FAC ¶ 15.  Plaintiffs allege that consumers are deceived by the sequential placement of the ad between the purchase and downloading of the McAfee software; the similarity of the pop-up to other pages on the McAfee website; the lack of visual cues indicating that the pop-up is an ad for a different product; and the presentation of information relating to the source of the product, billing, and fees in small, illegible type that is the same color as the background.  FAC ¶ 13-14.

_____

[2] Defendant also argues that Plaintiff Schmidt's claims are moot because she received a refund from Arpu.  At this time, the Court is satisfied that the interest still owed Plaintiff Schmidt is sufficient to establish standing.  *See Tavernor v. Illinois Federation of Teachers*, 226 F.3d 842, 849 (7th Cir. 2000) ("a person is fully compensated for the temporary deprivation of money if the repayment is made with a market rate of interest").  Whether the interest on the money Schmidt paid to Arpu is recoverable under the UCL as restitution from McAfee cannot be determined at this early stage in the litigation, but Schmidt at least has a colorable argument that she had a vested interest in the interest earned on the money she inadvertently spent on the Arpu product and therefore can recover that interest in restitution.

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Plaintiffs' allegations of the deceptive aspects of the pop-up ad and purchasing process have

2  their strengths and their weaknesses.  The Court agrees, for instance, that Plaintiffs have made a

3  plausible case that the pop-up would deceive a significant portion of the public into believing that

4  the ad and the product shown on the ad are affiliated with McAfee.  Arpu's name appears nowhere

5  on the pop-up; the only reference to a third party appears in fine print and informs the consumer

6  only that "you are agreeing to share the payment information used in the preceding McAfee

7  purchase with TRYandBUY."  Seifert Decl. Ex. A.  The Court agrees that the term "TRYandBUY"

8  is not easily identifiable as the name of a third party or even as a company.  Pls' Opp'n 19.  Indeed,

9  it is difficult not to view the ad as an attempt to conceal PerfectSpeed's source and to pass off both

10  the ad and the product as McAfee's own.

11    Plaintiffs also make a strong case that the sequential placement of the ad, after a customer

12  has purchased the McAfee software but before download, adds to the potential for deception.  A

13  customer who expects to immediately click on a button to download the product she just purchased

14  might well click on the red "Try It Now" button, assuming it will complete the transaction.  To

15  such a customer, moreover, the fine-print disclosures regarding the transfer of billing information

16  and subsequent monthly charges may provide insufficient notice of the consequences of clicking

17  on the ad.

18    There are, however, other visual clues in the pop-up that undermine Plaintiffs' claims.  In

19  their opposition, Plaintiffs acknowledge that "the offer of a '30 DAY FREE TRIAL' – presented in

20  white, capital letters against a red background – is prominently-placed in the upper-left corner of

21  the pop-up."  Pls.' Opp'n 17.  Plaintiffs do not explain why this prominent statement would not be

22  enough to notify consumers that the pop-up is an ad for a new product, rather than the product they

23  just paid for.  Indeed, given that consumers see the pop-up immediately after paying for the

24  McAfee product and inputting their credit card information, the fact that the pop-up advertises the

25  new product as FREE in prominent capital letters should inform consumers that the ad is unrelated

26  to their purchase.  Additionally, Plaintiffs do not allege that the name and image of the Arpu

27  product on the ad are similar to the product they purchased from McAfee, or why the name

28  "PerfectSpeed" that is legible on the pop-up would not have alerted Plaintiffs that the pop-up

14

**United States District Court**
For the Northern District of California

1   advertised a different product.  Plaintiffs are also unable to allege with any precision McAfee's role

2   in or responsibility for the content of pop-up ad, although the Court notes that Plaintiffs cannot

3   reasonably be expected to have knowledge of these details at this time.  *See Marolda*, 672 F. Supp.

4   2d at 997-98 (noting that pleading requirements may be relaxed where plaintiffs cannot be

5   expected to have personal knowledge of the facts constituting the wrongdoing).

6           Defendant urges the Court to follow the decisions in *Ford v. Hotwire Inc.*, No. 07-CV-

7   1312, 2007 WL 6235779 (S.D. Cal. 2007), and *In re Vistaprint Corp Marketing and Sales*

8   *Practices Litigation*, No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. 2009), which granted

9   motions to dismiss after finding that allegedly deceptive web pages were not deceptive as a matter

10  of law.  *Hotwire* is a brief decision involving claims that are much more straightforward than those

11  alleged in this case, and the Court does not find it particularly apposite here.  The facts alleged in

12  *Vistaprint* are much closer to those in this case, but even so the Court finds important factual

13  differences.  For instance, the *Vistaprint* plaintiffs were required to proactively enter their email

14  addresses, rather than merely click on a button, in order to authorize charges to their credit cards,

15  and the terms of the pop-up offer were affirmatively presented to plaintiffs in close proximity to the

16  place where they entered their email addresses.  *Vistaprint*, 2009 WL 2884727, at *5-6.  The ad in

17  *Vistaprint* also clearly identified the third party receiving Plaintiffs' billing information as a service

18  provider for Vistaprint.  *Id.* at *5.  Thus, although *Vistaprint* is instructive, the Court is not

19  persuaded that its determination of factually distinct claims under different laws should determine

20  the outcome of this case.

21          Under the particular state law at issue here, California courts have found that "[w]hether a

22  practice is deceptive or fraudulent . . .  is [a] question of fact, requiring consideration and weighing

23  of evidence from both sides before it can be resolved."  *McKell v. Washington Mut., Inc.*, 142 Cal.

24  App. 4th 1457, 1473, 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006).  In this instance, although their

25  case as pleaded is not air-tight, Plaintiffs have alleged sufficient facts to state a plausible claim for

26  relief, and they are entitled to a consideration and weighing of the evidence as to the deceptive

27  nature of the pop-up ad and McAfee's involvement in any deception.  Accordingly, the Court

28  denies Defendant's motion to dismiss Plaintiffs' claim under the fraudulent prong of the UCL.

3. **Unfair prong**

California law is currently unsettled with regard to the correct standard to apply to consumer suits alleging claims under the unfair prong of the UCL. *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Historically, California courts evaluated claims of unfairness by balancing the harm to the consumer against the utility of the defendant's practice. *Id.* In 1999, the California Supreme Court rejected this approach in suits alleging unfairness to the defendant's competitors, finding the balancing test too amorphous to provide guidance to courts. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 185, 83 Cal. Rptr. 2d 548 (1999). Instead, the Court held that the alleged unfairness must be "tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." *Id.* (internal citations omitted).

The *Cel-Tech* court explicitly limited its holding to claims brought by a business competitor alleging anticompetitive practices. *Cel-Tech*, 20 Cal. 4th at 187 n.12. California courts are currently divided on whether the tethering or balancing test applies in consumer actions, *compare McKell*, 142 Cal. App. 4th at 1473 (applying balancing test), *with Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940, 134 Cal. Rptr. 2d 101 (2003) (finding that *Cel-Tech* narrowed the meaning of unfair in consumer suits), and at least one court rejected both approaches and applied the three-pronged test contained in the Federal Trade Commission (FTC) Act instead, *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1402-03, 48 Cal.Rptr.3d 770 (2006). Pending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions, but has rejected the FTC test. *Lozano*, 504 F.3d at 736; *see also Davenport v. Litton Loan Servicing, LP*, --- F.Supp.2d ----, No. C 10-0679, 2010 WL 3218592, at *9 & n.5 (N.D. Cal. July 16, 2010) (applying balancing test).

Defendant argues that *Lozano* should be read as rejecting the balancing test, or requiring it to be used in conjunction with the tethering test. Def.'s Reply 14. The Court acknowledges that *Lozano*'s holding in this respect is not entirely clear. The opinion initially states, "we agree with the Fourth District that *Cel-Tech* effectively rejects the balancing approach." *Lozano*, 504 F.3d at

16

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

736.  A paragraph later, however, after rejecting the FTC test, the Ninth Circuit describes the "remaining options" as "to apply *Cel-Tech* directly to this case and require that the unfairness be tied to a 'legislatively declared' policy, or to adhere to the former balancing test."  *Id.* (citation omitted).  The court then concludes that the two options are not mutually exclusive and states that "[i]n the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained a balancing test."  *Id.*

Relying on the word "contained," Defendant argues that *Lozano* authorizes use of the balancing test only as "contained" within a standard that includes the tethering test.  While this is not an implausible reading of *Lozano*, district courts have read the Ninth Circuit's opinion to mean simply that either the balancing test or the tethering test is appropriate.  *See, e.g.*, *Davenport v. Litton Loan Servicing, LP*, ---F.Supp.2d ----, No. C 10-0679, 2010 WL 3218592, at *9 & n.5 (N.D. Cal. July 16, 2010) (applying balancing test); *Wahl v. American Sec. Ins. Co.*, No. C 08-0555, 2010 WL 2867130, at *2 (N.D. Cal. 2010) ("In Lozano, the Ninth Circuit upheld a district court's adoption of the balancing test in the consumer context."); *Sanchez v. Bear Stearns Residential Mortg. Corp.*, No. 09-CV-2056, 2010 WL 1911154, at *7 (S.D. Cal. 2010) (applying tethering test, but stating that "[t]he Ninth Circuit has not stated its preference" as between the two tests); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F.Supp.2d 1036, 1045 (C.D. Cal. 2008) (applying balancing test after determining that plaintiff's claim failed under tethering test).  In accordance with other district courts, as well as some California appellate courts, this Court finds that the balancing test remains appropriate in consumer suits under the UCL until the California Supreme Court declares otherwise.

Turning first to the tethering test, the Court finds that Plaintiffs do not state a claim under that approach.  Plaintiffs suggest two regulations to which their unfair claims might be tethered: the FTC's Telemarketing Sales Rule, 16 C.F.R. § 310.4, and the Negative Option Plans Rule, 16 C.F.R. § 425.  Plaintiffs concede that neither of these regulations applies to the Internet transactions at issue in this case.  Pls.' Opp'n 22-23.  With respect to the telemarketing rule, Plaintiffs argue that the principle underlying this rule, which applies only to telemarketing, is equally applicable to the Internet.  Pls.' Opp'n 22.  While this may be true, this Court finds that

17

1    Plaintiffs' claims cannot be tethered to a public policy that Congress has articulated for

2    telemarketing and has not chosen to extend to the Internet.  With regard to the Negative Option

3    Plans Rule, Plaintiffs argue that the FTC is currently reviewing this rule and asks the Court to look

4    to FTC's Negative Options Report as an indication of the FTC's policies regarding online negative

5    option marketing.  Pls.' Opp'n 23.  However, this Report is not "a constitutional or statutory

6    provision or a regulation carrying out statutory policy," *Cel-Tech*, 20 Cal. 4th at 185, and thus it is

7    not a "legislatively declared policy" to which Plaintiffs' claims can be tethered.  *Id.* at 186.

8            Turning next to the balancing test, the Court finds that Plaintiffs state a plausible claim for

9    relief under that approach.  Under the traditional balancing test, a business practice is unfair "if it is

10   immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs

11   its benefits."  *McKell*, 142 Cal. App. 4th at 1473.  A determination under this test requires an

12   examination of the conduct's "impact on its alleged victim, balanced against the reasons,

13   justifications and motives of the alleged wrongdoer."  *Id.*  Additionally, California courts have

14   noted that the determination of whether a business practice is unfair is "one of fact which requires a

15   review of the evidence from both parties" and often cannot be made solely on the pleadings.

16   *McKell*, 142 Cal. App. 4th at 1473.

17          Here, Plaintiffs identify the harm to the alleged victim as being "trick[ed] . . . into

18   purchasing PerfectSpeed."  Pls.' Opp'n 21.  Admittedly, this harm may not be great, and for most

19   victims likely amounts to the loss of a small sum of money, coupled with the inconvenience and

20   frustration entailed in identifying and canceling the unwanted subscription.  Yet the utility of

21   Defendant's practices is not great either.  McAfee does not discuss utility in its papers, but at oral

22   argument suggested that the utility of the pop-up is that of any advertisement: offering consumers a

23   product they may desire.  McAfee does not explain why such utility could not just as easily be

24   achieved through an ad that clearly and conspicuously identifies the source of the product

25   advertised and provides for affirmative, informed consent to all charges.  The Court has already

26   found that Plaintiffs may be able to show that Defendant's practices were likely to deceive

27   consumers, and Plaintiffs may similarly be able to show that this deception was unscrupulous and

28

United States District Court
For the Northern District of California

18

1    causes injury to consumers which outweighs its benefits.  Accordingly, Defendant's motion to

2    dismiss Plaintiff's claim under the unfair prong of the UCL is denied.

3                    4. **Unlawful prong**

4           The unlawful prong of the UCL prohibits "anything that can properly be called a business

5    practice and that at the same time is forbidden by law." *Cel-Tech*, 20 Cal. 4th at 180 (quotation

6    marks and citations omitted).  By proscribing "any unlawful" business practice, Cal. Bus. & Profs.

7    Code § 17200, the UCL permits injured consumers to "borrow" violations of other laws and treat

8    them as unfair competition that is independently actionable.  *Id.*  A practice may be unlawful and

9    actionable under the UCL if it violates any law "civil or criminal, statutory or judicially made,

10   federal, state or local." *McKell*, 142 Cal. App. 4th at 1474.  Plaintiffs allege that Defendant's

11   business practices are unlawful under the UCL because they violate the CLRA and Section 43(a) of

12   the Lanham Act, and because they constitute false advertising, breach of the covenant of good faith

13   and fair dealing, and unjust enrichment.  As discussed below, the Court finds that Plaintiffs have

14   not alleged facts sufficient to establish that Defendant's business practices are unlawful under the

15   CLRA, the Lanham Act, or the other common law and statutory bases Plaintiffs allege.

16   Accordingly, the Court will grant Defendant's motion to dismiss Plaintiffs' claims under the

17   unlawful prong of the UCL, with leave to amend.

18                    **a.  CLRA**

19          Turning first to Plaintiff's claim based on violations of the CLRA, the Court concludes that

20   Plaintiffs do not state a claim on this theory because the CLRA does not cover transactions relating

21   to the sale or lease of software.  As discussed in detail in section IV.C, California law does not

22   support Plaintiffs' contention that software is a tangible good or a service for purposes of the

23   CLRA, and therefore the CLRA does not apply to the transactions at issue in this case.

24   Accordingly, Plaintiffs cannot state a claim under the UCL based on violations of the CLRA.

25                    **b.  Lanham Act**

26          Plaintiffs next allege that Defendant's practices are unlawful under the UCL because they

27   violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  As Defendant points out, Plaintiffs

28   would not have standing to sue under the Lanham Act itself.  *See Waits v. Frito-Lay, Inc.*, 978 F.2d

19

**United States District Court**
For the Northern District of California

1   1093, 1109 (9th Cir. 1992) (holding that only those with commercial injuries have standing to

2   bring false association claims under the Lanham Act); *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th

3   Cir. 1995) ("As consumers, [plaintiffs] have alleged neither commercial injury nor competitive

4   injury. Therefore . . . they lack standing."). Defendant thus argues that Plaintiffs cannot "plead

5   around" the standing requirements of the Lanham Act by bringing the claim under the UCL.

6          It is true that plaintiffs may not "plead around an absolute bar to relief" by recasting the

7   cause of action as a claim under the UCL. *Cel-Tech*, 20 Cal. 4th at 182-83 (internal quotation

8   marks and citation omitted). At the same time, California courts have repeatedly stated that a

9   plaintiff may bring a UCL claim even when the conduct alleged to constitute unfair competition

10  violates a statute that does not provide a private right of action. *Troyk*, 171 Cal. App. 4th at 1335;

11  *McKell*, 142 Cal. App. 4th at 1475; *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 119 Cal. Rptr. 2d 296

12  (2002); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 561-66, 950 P. 2d 1086

13  (1998), *superseded by statute on other grounds as stated in Californians For Disability Rights v.*

14  *Mervyn's, LLC*, 39 Cal. 4th 223, 46 Cal. Rptr. 3d 57 (2006). California courts have reconciled

15  these two principles by holding that "[t]o forestall an action under the unfair competition law,

16  another provision must actually 'bar' the action." *Cel-Tech*, 20 Cal. 4th at 183. Thus, if a statute

17  indicates that exclusive enforcement authority shall lie with the government and explicitly

18  precludes private enforcement, or if a statute expressly provides immunity for the conduct alleged,

19  a plaintiff may not plead around this bar by bringing a claim under the UCL. *Compare Hartless v.*

20  *Clorox Co.*, No. 06CV2705, 2007 WL 3245260, at *4 (S.D. Cal. 2007) (holding that a UCL claim

21  cannot be predicated on FIFRA due to Congress' express rejection of private actions to enforce

22  FIFRA), *with Stop Youth Addiction, Inc.*, 17 Cal. 4th at 566-67 (permitting provision of California

23  penal code to serve as basis for UCL claim because plaintiff sought relief from unfair competition,

24  not enforcement of penal laws).

25         Defendant argues that *Summit Tech, Inc. v. High-Line Medical Instruments Co.*, 922

26  F.Supp. 299 (C.D. Cal. 1996), holds that a plaintiff who would not have standing to sue under the

27  Lanham Act cannot use that Act as a predicate for a UCL claim. The Court disagrees with this

28  reading of *Summit Tech*. In that case, the plaintiff brought various claims against defendant for its

*United States District Court*
*For the Northern District of California*

1   use and marketing of ophthalmological laser systems that had not been approved by the Food and

2   Drug Administration (FDA).  The Federal Food Drug and Cosmetic Act (FDCA) provides that "all

3   such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the

4   name of the United States."  21 U.S.C. § 337(a).  Because of this express bar on private

5   enforcement and the FDA's exclusive regulatory authority over medical devices, the court in

6   *Summit Tech* held that plaintiff could not use the Lanham Act "as a vehicle for enforcing the

7   requirements of the FDCA."  922 F. Supp. 299, 305-06 (C.D. Cal. 1996).  To do so would "usurp[ ]

8   the FDA's discretionary role in the application and interpretation of its regulations."  *Id.* (citation

9   omitted).  For the same reason, plaintiff could not bring a UCL claim based on the Lanham Act.

10   *Id.* at 316.

11          *Summit Tech*, however, does not suggest that the Lanham Act imposes such an express,

12   absolute bar on private enforcement.  Unlike the provisions of the FDCA and FIFRA, the Lanham

13   Act does not create a comprehensive regulatory regime that places enforcement authority

14   exclusively in the government.  The Lanham Act permits private enforcement by individuals and

15   businesses who have suffered competitive or commercial injuries, and while the courts have

16   determined that standing is limited to such persons, Defendant cites no authority suggesting that

17   this limitation constitutes an express, absolute bar of the sort described in *Summit Tech*.

18   Accordingly, the Court finds that Plaintiffs may predicate their UCL claim on the Lanham Act,

19   even though they have no independent private right of action under the Act itself.  In so finding, the

20   Court notes that while the UCL is a broad statute intended to allow injured consumers to seek relief

21   from "anything that can properly be called a business practice and that at the same time is

22   forbidden by law," *Cel-Tech*, 20 Cal. 4th at 180 (quotation marks and citations omitted), this

23   breadth is mitigated by the narrow scope of remedies available under the UCL. The Court's finding

24   does not permit Plaintiffs to bring a Lanham Act claim by another name; rather, it permits

25   Plaintiffs to seek limited restitution or injunctive relief for injuries caused by business practices that

26   the Lanham Act makes unlawful.  *See Korea Supply*, 29 Cal. 4th at 1144 (noting that relief under

27   the UCL is limited to injunctive relief and restitute, and damages are not permitted).

28

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Although the Lanham Act may be available to Plaintiffs as a predicate for their UCL claim, the Court nonetheless finds that Plaintiffs have failed to allege sufficient facts to establish that Defendant's conduct is unlawful under the Act.  Section 43(a) of the Lanham Act provides that

> (1) Any person who . . .  uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The first prong of Section 43(a), 15 U.S.C. § 1125(a)(1)(A), provides a federal cause of action for infringement of trademarks and dress, regardless of whether those marks are registered.  It embodies the same standard applied in actions for infringement of registered trademarks under Section 32 of the Act.  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 & n.6 (9th Cir. 1999).  Under these sections, liability is established if the plaintiff demonstrates "(1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake."  *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1122 (C.D. Cal. 2007).  Here, although Plaintiffs' allegations may be sufficient to show a likelihood of consumer confusion, Plaintiffs have not alleged the existence of a valid and protectable mark[3] that is being used without authorization.  Thus, Plaintiffs have not stated a plausible claim that McAfee's actions constitute trademark infringement under the Lanham Act.

---

[3] Under Section 43(a), a valid and protectable mark need not be a registered trademark. Nonetheless, "[t]o state an infringement claim under § 43(a) – whether it be a trademark claim or a trade dress claim – a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion."  *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)").

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    The second prong of Section 43(a), 15 U.S.C. § 1125(a)(1)(B), provides a federal cause of

2    action for false advertising.   A prima facie case under this prong requires a showing that: "(1) the

3    defendant made a false statement either about the plaintiff's or its own product; (2) the statement

4    was made in a commercial advertisement or promotion; (3) the statement actually deceived or has

5    the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it

6    is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter

7    interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false

8    statement, either by direct diversion of sales from itself to the defendant, or by a lessening of

9    goodwill associated with the plaintiff's product." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304

10   F.3d 829, 835 n.4 (9th Cir. 2002); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir.

11   2003).  A false statement under the Lanham Act may consist of a statement that is literally false or

12   a statement that is "literally true but likely to mislead or confuse consumers." *Southland  Sod*

13   *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  While the deceptive elements of

14   the pop-up ad may satisfy the first five elements of the false advertising prong, the Court is not

15   persuaded that Plaintiffs' allegations, as pled in the FAC, are sufficient to establish a likelihood of

16   injury by direct diversion of sales or a lessening of goodwill.  Although it seems possible that

17   Plaintiffs' and class members' goodwill toward McAfee or Arpu lessened as a result of McAfee's

18   allegedly deceptive statements, the FAC simply does not allege this or address any of the elements

19   of Section 43(a) with specificity.  Thus, Plaintiffs have not made a plausible showing that

20   Defendant's acts are unlawful under the false advertising prong of the Lanham Act.

21   Because Plaintiffs have not alleged facts allowing the Court to draw a reasonable inference

22   that Defendant violated either prong of Section 43(a), Plaintiffs cannot state a claim under the UCL

23   based on violations of the Lanham Act.  Accordingly, Defendant's motion to dismiss Plaintiffs'

24   UCL claim premised on the Lanham Act is granted with leave to amend.

### c.  False advertising, breach of covenant of good faith and fair dealing, and unjust enrichment

27   The FAC also alleges that Defendant's practices are unlawful because they constitute false

28   advertising, breach of the covenant of good faith and fair dealing, and unjust enrichment.  FAC ¶

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

35.  Defendant argues that these are New York law causes of action, and that as such they cannot serve as a basis for a California UCL claim.  Defs.' Mot. to Dismiss 17.  Although Plaintiffs do plead New York state causes of action in the alternative, FAC ¶¶ 59-68, the Court doubts that Plaintiffs intended to predicate their California UCL claims on New York law.  However, Plaintiffs did not address this issue in their opposition, and the Court cannot conclude, based on the bare allegations of false advertising, breach of the covenant of good faith and fair dealing, and unjust enrichment in the FAC, that Plaintiffs have stated a plausible claim for relief on these grounds.

To the extent that Plaintiffs intend to allege a UCL claim based on violations of California's false advertising law, Cal. Bus. & Profs. Code § 17500, the UCL provides an independent basis for such claims.  Cal. Bus. & Profs. Code § 17200 ("As used in this chapter, unfair competition shall mean and include . . .  any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.").  As to breach of the covenant of good faith and fair dealing, under California law "the implied covenant operates to protect the express covenants or promises of the contract."  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806, 71 Cal. Rptr. 3d 885 (Cal. Ct. App. 2008).  Plaintiffs' general allegations in support of their New York claim for breach of the implied covenant are not sufficient to show, with the plausibility required, that McAfee's conduct frustrated or impaired Plaintiffs' rights under their contract with McAfee.  *See id.* ("the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract").  The Court also notes that there is no cause of action for unjust enrichment under California law.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010).

In sum, Plaintiffs have failed to allege facts sufficient to establish plausible claims that Defendant's conduct is unlawful under the CLRA or the Lanham Act, or that it constitutes false advertising, breach of the covenant of good faith and fair dealing, or unjust enrichment. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claims under the unlawful prong of the UCL, with leave to amend.

C.  **Consumers Legal Remedies Act**

Plaintiff's second cause of action alleges violations of four provisions of the California

Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 et seq.  The CLRA prohibits

certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any

person in a transaction intended to result or which results in the sale or lease of goods or services to

any consumer."  Cal. Civ. Code § 1770(a).  Defendant argues that Plaintiff cannot state a claim

under the CLRA because software, or a license for the use of software, is not a "good" or a

"service" covered by the CLRA.  Because no California decision directly addresses this issue, this

Court must construe the CLRA's provisions to determine whether the statute applies to the

transactions in this case.

The CLRA defines "good" as

> tangible chattels bought or leased for use primarily for personal, family, or household
> purposes, including certificates or coupons exchangeable for these goods, and including
> goods that, at the time of the sale or subsequently, are to be so affixed to real property as to
> become a part of real property, whether or not they are severable from the real property.

Cal. Civ. Code § 1761(a).  Defendant argues that software, like insurance and credit, is an

intangible chattel under California law and is therefore not encompassed in the CLRA's definition

of a "good."  *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61, 205 P. 3d 201 (2009) (holding

that life insurance is not a tangible chattel and therefore not a good under the CLRA); *Berry v.*

*American Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 229, 54 Cal. Rptr. 3d 91 (Cal. Ct. App.

2007) (holding that a credit card is not a good for purposes of the CLRA).  In support of its

argument, Defendant points to Section 9102(a) of the California Commercial Code, which provides

definitions of terms that apply to secured transactions.  Section 9102(a) defines "general

intangibles" specifically to include software, Cal. Comm. Code § 9102(a)(42), and expressly

excludes computer programs from the definition of "goods," *id.* § 9102(44).  The Court also notes,

in support of Defendant's position, that at least one California appellate court has held that a

database stored on a computer is not "physical" or "tangible" in the "ordinary and popular sense"

of those words.  *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th

548, 556, 7 Cal. Rptr. 3d 844 (2003).  In so holding, the court relied on and approved of a decision

25

from the Eastern District of Virginia, which held that "computer data, software and systems are not

'tangible' property in the common sense understanding of the word" and distinguished the tangible

medium in which such data and programs are stored from the intangible software and information

itself. *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th at 557

(quoting *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 462 (E.D. Va.

2002).

Plaintiffs counter that the CLRA must be "liberally construed and applied to promote its

underlying purposes," Cal. Civ. Code § 1760, and that extending protection to the growing market

in Internet downloads is consistent with the legislative intent behind the Act.  Plaintiffs point out

that several jurisdictions have held software to be a good for purposes of the UCC, *see Dealer*

*Management Systems, Inc. v. Design Automotive Group, Inc.*, 355 Ill. App. 3d 416, 822 N.E. 2d

556 (2005) (collecting cases), and suggest that this Court follow their lead. [4]  The Court also notes

that the California Revenue and Taxation Code appears to treat software as tangible personal

property for purposes of sales tax. [5]  *See* Cal. Rev. & Tax. Code §§ 6006, 6010.9; *Navistar Int'l*

*Transp. Corp. v. State Bd. of Equalization*, 8 Cal. 4th 868, 874, 884 P.2d 108 (Cal. 1994) (noting

that "California law imposes a tax on the retail sale of tangible personal property, but not on the

sale of intangible personal property" and upholding imposition of sales tax on non-custom

software).

_____

[4] Plaintiffs also point out that two federal district court decisions reached the merits of CLRA claims involving software and music downloads. *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1002-03 (N.D. Cal. 2009) (dismissing CLRA claim involving antivirus software for failure to inadequately plead misrepresentations); *In re Apple iPod iTunes Anti-Trust Litigation*, Nos. C 05-00037 JW, C 07-06507 JW, 2010 WL 2629907, at 6* (N.D. Cal. 2010) (dismissing CLRA claim involving consumer contracts for music downloads on grounds that claim was vague and conclusory).  However, neither of these decisions address whether software is a "good" for purposes of the CLRA.

[5] For taxation purposes, the Code defines a "sale" as "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of *tangible personal property* for a consideration." Cal. Rev. & Tax. Code § 6006 (emphasis added). The code then exempts from the definition of "sale" any "custom computer program," but specifically includes a "'canned' or prewritten computer program which is held or existing for general or repeated sale or lease." *Id.* § 6010.9. Accordingly, where software is not deemed exempt as a "custom computer program," it is considered "tangible personal property" properly subject to sales tax.  *See Navistar Internat. Transportation Corp. v. State Bd. of Equalization*, 8 Cal. 4th 868, 874, 884 P.2d 108 (Cal. 1994).

26

United States District Court
For the Northern District of California

1   The Court acknowledges that Plaintiffs' policy arguments have significant force and

2   ultimately finds that this issue presents a very close call.  The Court concludes, however, that

3   California law currently provides greater support for Defendant's construction.  While the CLRA

4   must be liberally construed, "courts have not expanded it beyond its express terms." *Berry*, 147

5   Cal. App. 4th at 232.  The CLRA's express limitation of goods to "tangible chattels" must be given

6   meaning, and current California law suggests that these words exclude software from the Act's

7   coverage.  The Court therefore concludes that the software Plaintiffs purchased is not a good

8   covered by the CLRA.[6]

9   Additionally, the Court finds that software generally is not a service for purposes of the

10  CLRA.  *See* Cal. Civ. Code § 1761(b) (defining service as "work, labor, and services . . . ,

11  including services furnished in connection with the sale or repair of goods").  To the extent

12  Plaintiffs argue that the particular subscription provided by Arpu should be considered a service,

13  Plaintiffs have not alleged sufficient facts as to the nature of the services provided by the

14  PerfectSpeed subscription to allow the Court to draw that conclusion.

15  Based on the foregoing analysis, the Court finds that the transaction at issue in this case is

16  not covered by the CLRA.[7]  Defendant's motion to dismiss Plaintiffs' CLRA claims is therefore

17  granted, with leave to amend.

18              D. **Declaratory Judgment**

19  In their third cause of action, Plaintiffs seek a declaration of their rights and legal

20  obligations under the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil

21  Procedure 57.  Defendant argues that this claim should be dismissed because there is no cognizable

22  controversy between the parties and because to the extent that Plaintiffs have viable causes of

23  action, declaratory relief is superfluous and duplicative.  The cases Defendant cites regarding the

24

---

25  [6] The Court notes that its analysis is based upon a limited understanding of the exact nature of the
    PerfectSpeed subscription Plaintiffs purchased, which is not described in detail in the FAC.  If
26  Plaintiffs can allege additional facts about that software that may affect the Court's analysis, they
    are free to do so in an amended pleading.

27  [7] Because the Court finds that the CLRA does not cover the transactions at issue in this case, the
28  Court does not reach Plaintiffs' claim that Defendant's conduct violated specific provisions of the
    CLRA, including those prohibiting passing off, misrepresentation, and unconscionable contracts.

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

1   availability of declaratory relief rely on cases construing declaratory relief under the California

2   Code of Civil Procedure, not the federal Declaratory Judgment Act or Federal Rules of Civil

3   Procedure.  *See Metcalf v. Drexel Lending Group*, No. 08-CV-0073, 2008 WL 4748134, at *5

4   (S.D. Cal. 2008) (citing *Canova v. Trustees of Imperial Irrigation District Employee Pension Plan*,

5   150 Cal. App. 4th 1487, 1497, 59 Cal. Rptr. 3d 587 (2007)); *Canova*, 150 Cal. App. 4th at 1497

6   (citing *Jackson v. Teachers Ins. Co.*, 30 Cal. App. 3d 341, 344, 106 Cal. Rptr. 208 (1973));

7   *Jackson*, 30 Cal. App. 3d at 344 (citing Cal. Code Civ. Pro. § 1061).  Moreover, the Court has

8   found that an actual controversy exists between the parties, as required by 28 U.S.C. § 2201(a).

9   Accordingly, the Court finds that Plaintiffs' allegations are sufficient to state claim for declaratory

10  relief.  Defendant's motion to dismiss this cause of action is denied.

11         E.  **New York State Law Claims**

12        In their fourth, fifth, and sixth causes of action, Plaintiffs, pleading in the alternative, allege

13  claims arising under the laws of the New York.  Both parties agree that California law governs this

14  action and that therefore the New York state claims should be dismissed.  Accordingly, the Court

15  grants Defendant's motion to dismiss Plaintiffs fourth, fifth, and sixth causes of action.

16  **V.  Conclusion**

17        For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss in part and

18  DENIES it in part.  Defendants' motion is GRANTED, with leave to amend, as to: 1) Plaintiffs'

19  claims under the unlawful prong of the UCL; and 2) Plaintiffs' second cause of action under the

20  California CLRA.  Defendant's motion is DENIED as to: 1) Plaintiffs' claims under the fraudulent

21  and unfair prongs of the UCL; and 2) Plaintiffs' third cause of action for declaratory relief.  The

22  New York claims asserted in Plaintiffs' fourth, fifth, and sixth causes of action are dismissed with

23  prejudice based on the parties' agreement that California law governs this case.

24  **IT IS SO ORDERED.**

25

26  Dated: October 5, 2010                                   _Lucy H. Koh_____

27                                           LUCY H. KOH
                                             United States District Judge

28

Case No.: 10-CV-01455-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS