Gay Crosthwait Grunfeld – 121944
Shirley Huey – 224114
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbg-law.com
shuey@rbg-law.com

*Local Counsel for Plaintiffs*

Andrew N. Friedman- admitted *pro hac vice*
Victoria S. Nugent – admitted *pro hac vice*
Stefanie M. Ramirez – admitted *pro hac vice*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, D.C. 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
vnugent@cohenmilstein.com

*Counsel for Plaintiffs*

Matthew N. Metz - 154995
METZ LAW GROUP, PLLC
701 Fifth Avenue, Suite 7230
Seattle, Washington 98104-7042
Telephone: (206) 583-2745
Facsimile: (206) 625-8683
matthew@metzlaw.net

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

MELISSA FERRINGTON, CHERYL SCHMIDT, CHRISTOPHER BENNETT and CHRISTI HALL individually and on behalf of the class they represent,

Plaintiffs,

v.

MCAFEE INC., a Delaware Corporation, ARPU, Inc. (d/b/a TRYandBUY.com)

Defendants.

NO. 5:10-cv-01455 LHK

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Date: December 15, 2011
Time: 1:30 p.m.
Courtroom: 4
Judge: The Hon. Lucy H. Koh

PLEASE TAKE NOTICE that on December 15, 2011, at 1:30 p.m. or as soon thereafter as counsel can be heard, before the Honorable Lucy H. Koh, in Courtroom 4, Northern District of California, 280 South 1st Street, San Jose, CA 95113, Plaintiffs will and hereby do move –

pursuant to this Court's Order dated August 16, 2011, (ECF No. 100) – for an entry of order granting final approval of class settlement. Plaintiffs' motion is based on this Notice of Motion and Motion; the accompanying Memorandum In Support; the Declaration of Andrew N. Friedman; along with its exhibits; and all other papers filed and proceedings had in this action.

DATED: November 1, 2011

Respectfully submitted,

By: <u>*/s/ Andrew N. Friedman*</u>

Andrew N. Friedman
Victoria S. Nugent
Stefanie M. Ramirez
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Matthew N. Metz
METZ LAW GROUP, PLLC
701 Fifth Avenue, Suite 7230
Seattle, WA 98104
Telephone: (206) 583-2745
Facsimile: (206) 625-8683

Counsel for Plaintiffs

Gay Crosthwait Grunfeld
Shirley Huey
ROSEN, BIEN & GALVAN LLP
315 Montgomery Street, Tenth Floor
San Francisco, CA 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104

Local Counsel for Plaintiffs
Melissa Ferrington, Cheryl Schmidt, Christopher Bennett and Christi Hall

Gay Crosthwait Grunfeld – 121944
Shirley Huey – 224114
ROSEN, BIEN & GALVAN, LLP
315 Montgomery Street, Tenth Floor
San Francisco, California 94104-1823
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
ggrunfeld@rbg-law.com
shuey@rbg-law.com

*Local Counsel for Plaintiffs*

Andrew N. Friedman- admitted *pro hac vice*
Victoria S. Nugent – admitted *pro hac vice*
Stefanie M. Ramirez – admitted *pro hac vice*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, D.C. 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
vnugent@cohenmilstein.com

*Counsel for Plaintiffs*

Matthew N. Metz - 154995
METZ LAW GROUP, PLLC
701 Fifth Avenue, Suite 7230
Seattle, Washington 98104-7042
Telephone: (206) 583-2745
Facsimile: (206) 625-8683
matthew@metzlaw.net

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

MELISSA FERRINGTON, CHERYL SCHMIDT, CHRISTOPHER BENNETT, and CHRISTI HALL, individually and on behalf of the class they represent,

Plaintiffs,

v.

MCAFEE INC., a Delaware Corporation, ARPU, INC., d/b/a TRYANDBUY.COM,

Defendants.

NO. 5:10-cv-01455 LHK

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT**

Date: December 15, 2011
Time: 1:30 p.m.
Judge: Hon. Lucy Koh

## TABLE OF CONTENTS


Page

I. INTRODUCTION .... 1
II. SUMMARY OF THE LITIGATION AND SETTLEMENT .... 1
  A. The Claims Asserted .... 1
  B. Procedural Background .... 2
  C. Discovery .... 3
  D. Settlement Negotiations .... 4
  E. Terms of the Settlement .... 5
    1. The Settlement Class .... 5
    2. Settlement Benefits .... 5
    3. Notice to the Class .... 6
    4. The Claims Process .... 6
    5. Incentive Award for Class Representatives .... 6
    6. Attorneys' Fees and Expenses .... 6
    7. Releases .... 7
    8. No Admission of Liability .... 7
III. ARGUMENT .... 7
  A. The Class Action Settlement Process .... 7
  B. The Court Should Grant Final Approval of the Proposed Settlement .... 8
    1. The Strength of Plaintiffs' Case .... 10
    2. The Risks, Expense, Complexity, and Likely Duration of Further Litigation .... 11
    3. The Risk of Maintaining Class Action Status Through Trial .... 12
    4. The Benefits Offered in Settlement .... 13
    5. The Extent of Discovery Completed and the Stage of the Proceedings .... 14
    6. The Experience and Views of Counsel .... 14
    7. The Reaction of the Class Members to the Proposed Settlement .... 15
  C. Certification of the Proposed Settlement Class Under Rule 23 is Appropriate .... 15

1. All Prerequisites for Class Certification Under Rule 23(a) Are Met ........ 16

a. The Settlement Class Is Sufficiently Numerous to Render Joinder of All Members Impracticable ........ 16

b. Common Questions of Law And Fact Exist ........ 16

c. Plaintiffs' Claims Are Typical of the Settlement Class Claims ........ 16

d. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ........ 17

2. The Proposed Class Is Maintainable Under Rule 23(b)(3) ........ 17

a. Common Questions of Fact and Law Predominate Over the Individual Questions Presented in This Action ........ 17

(1) Uniform Representations Made to Customers Will Establish the Existence of a Fraudulent Unfair and Unlawful Practice ........ 18

(2) Plaintiffs' Injuries Are Identical In Nature and Will be Objectively Determined ........ 19

(3) The Breach of Contract Claim Depends Upon The Interpretation of a Limited Number of Unilateral, Form Contracts Used by McAfee ........ 19

b. Class Treatment is Superior to Other Methods of Adjudicating This Controversy ........ 19

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Acosta v. Trans Union, LLC,
243 F.R.D. 377 (C.D. Cal. 2007) .......... 13

Amchem Prods, Inc. v. Windsor.,
521 U.S. 591 (1997) .......... 18

Blackie v. Barrack,
524 F.2d 891 (9th Cir. 1975) .......... 19

Boeken v. Philip Morris, Inc.,
127 Cal. App. 4th 1640 (2005) .......... 19

Dukes v. Wal-Mart Stores,
603 F.3d 571 (9th Cir. 2010) (en banc) .......... 13

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) .......... 8, 16, 20

Hanon v. Dataproducts Corp.,
976 F.2d 497 (9th Cir. 1992) .......... 17

In re Activision Sec. Litig.,
621 F. Supp. 415 (N.D. Cal. 1985) .......... 18

In re NVIDIA Corp. Derivative Litig.,
No. C 06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .......... 12

In re Omnivision Tech., Inc.,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 15

In re TD Ameritrade Accountholder Litig.,
No. C 07-2852 VRW, 2009 WL 6057238 (N.D. Cal. Oct. 23, 2009) .......... 9

In re Tobacco II Cases,
46 Cal. 4th 298 (2009) .......... 18

Officers for Justice v. Civ. Serv. Comm'n,
688 F.2d 615 (9th Cir. 1982) .......... 8

Pochis v. Arpu, Inc. et al,
No. C 11-00721 JF (N.D. Cal. Filed Feb. 16, 2011) ............ 20

Rodriguez v. West Publ'g Corp.,
563 F.3d 948 (9th Cir. 2009) ............ 8, 9, 14

Staton v. Boeing Co.,
327 F.3d 938 (9th Cir. 2003) ............ 17

Vathana v. Everbank,
No. C 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ............ 19

**STATUTES**

Cal. Civ. Code
§ 17500 ............ 2

California Business and Professions Code
§ 17200 ("UCL") ............ 2

California Civil Code
§ 1750 ............ 2

UCL ............ 2, 16, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1) ............ 16

Fed. R. Civ. P. 23(b)(3)(A-D) ............ 20

Fed. R. Civ. P. 23(e) ............ 7

Fed. R. Civ. P. 23(e)(2) ............ 8

Rule 23 ............ 15, 16, 18

Rule 23(a) ............ 16

Rule 23(a)(1)'s ............ 16

Rule 23(a)(2) ............ 16

Rule 23(a)(4) .......... 17
Rule 23(b)(3) .......... 18, 21
Rule 23(f) .......... 11

## I. INTRODUCTION

The Court previously certified a settlement class (ECF No. 101) and ordered the parties to issue notice of the proposed settlement. ECF No. 100. Pursuant to that Order, Plaintiffs now file this Motion for Final Approval of Class Settlement, asking that the Court certify the Settlement Class, approve the parties' compromise as fair, reasonable, and adequate, and enter the parties' proposed form of judgment.

## II. SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. The Claims Asserted

Plaintiffs Melissa Ferrington, Cheryl Schmidt, Christopher Bennett and Christi Hall purchased McAfee's anti-virus program directly from the McAfee website. Immediately prior to downloading the products, Plaintiffs were presented with a pop-up screen, bearing McAfee's logo, which prompted them to "Try It Now." Plaintiffs believed that by clicking on the button, they were completing a necessary step to download their purchased software. Plaintiffs were unaware that clicking on the deceptive pop-up screen resulted in the purchase of an unwanted product, PerfectSpeed, and that the credit card and billing information that Plaintiffs entrusted solely to McAfee for the purchase of anti-virus software was transferred by McAfee to a third party, Arpu, Inc. Plaintiffs were never asked to provide payment information for this additional promotional product, nor did they consent to purchase PerfectSpeed. Plaintiffs subsequently discovered unauthorized, monthly charges to their debit and credit card accounts for the PerfectSpeed subscription. Charged for services that they were unaware of, did not want and never utilized, Plaintiffs, on behalf of themselves and thousands of similarly situated consumers, filed a class action complaint in April 2010 against McAfee.

Plaintiffs Melissa Ferrington, Cheryl Schmidt, Christopher Bennett and Christi Hall filed suit against Defendants McAfee Inc. ("McAfee") and Arpu, Inc. (d/b/a TRYandBUY.com)

("Arpu") to recover unauthorized monthly charges to their debit and credit card accounts caused by Defendants' post-transaction marketing scheme. On behalf of themselves and a class of similarly situated consumers, Plaintiffs sought disgorgement and restitution permitted under California Business and Professions Code § 17200 ("UCL"); damages under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750; statutory damages and penalties as provided by law; prejudgment interest; punitive and exemplary damages and costs and fees incurred in connection with this action, including attorneys' fees. Plaintiffs propose to collectively resolve these issues through the proposed settlement.

### B. Procedural Background

Before this litigation began, Plaintiffs' Counsel spent over thirty hours investigating the unauthorized charges reported by McAfee consumers. Plaintiffs' Counsel then drafted the original Complaint, filed on April 6, 2010 (ECF No. 1), and subsequently a First Amended Complaint ("FAC") filed on May 13, 2010 (ECF No. 12), alleging on behalf of consumers that McAfee sold customers' debit/credit billing information to a third party, Arpu, Inc. ("Arpu"), without authorization and asserting claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17500.

McAfee filed a motion to dismiss the FAC (ECF No. 25), which was granted in part and denied in part on October 5, 2010. ECF No. 57. The Court denied Defendant's motion to dismiss Plaintiffs' UCL claim, finding that Plaintiffs alleged facts that could support a UCL claim under the fraudulent and unfair prongs of the UCL. The Court granted Plaintiffs leave to amend their claim under the unlawful prong of the UCL and their cause of action under the CLRA. McAfee filed an Answer to Plaintiffs' FAC on October 19, 2010. ECF No. 58.

Plaintiffs sought leave to file a Second Amended Complaint ("SAC") on April 7, 2011, re-

pleading their CLRA claim and adding a breach of contract claim (ECF No. 75); McAfee did not oppose the filing of this Second Amended Complaint. ECF No. 73. Plaintiffs filed a motion for class certification on April 7, 2011. ECF No. 70.

On July 13, 2011, Plaintiffs filed their Third Amended Complaint (ECF No. 83) and motion for certification of a settlement class and preliminary approval of a Class settlement, with the signed settlement agreement attached. ECF No. 87. On August 16, 2011, this Court conditionally certified the proposed settlement class and directed dissemination of notice of the settlement. ECF No. 101. In a separate August 24, 2011 Minute Order, the Court set December 15, 2011 as the date of the Final Approval Hearing, pursuant to the Order Granting Preliminary Approval of the Settlement. ECF No. 100.

### C. Discovery

In August 2010 Plaintiffs served document requests. In November 2010 Plaintiffs served interrogatories. In December 2010 and January 2011 McAfee produced documents reflecting revenue, practices, and consumer disclosures related to its post-transaction marketing joint venture with Arpu. Through discovery, Plaintiffs learned that the number of subscriptions sold through the Arpu ads that appeared on McAfee's site (*i.e.*, the number of Class members) is approximately 66,000. See Declaration of Victoria S. Nugent In Support of Plaintiffs' Memorandum In Support of Preliminary Approval ("Nugent Declaration"), ECF No. 88, Exhibit 2 - Subscription Distributor Report, Bates MCAF0002146-2149. Plaintiffs learned that McAfee began this post-transaction marketing in April 2006 and discontinued it in April 2010, when Plaintiffs filed suit. See Nugent Decl., ECF No. 88, Ex. 3, Bates MCAF0002834 and MCAF0002840; see also Nugent Decl., ECF No. 88, Ex. 2, Bates MCAF0002146-2149. Plaintiffs also learned that Class Members paid charges totaling approximately $1.2 million (Nugent Decl. (ECF No. 88), Ex. 4 - Bates MCAF0002396-2442) and that the net proceeds from

this scheme (an amount equal to the total charges minus the amount paid or payable by Arpu to the Supplier of the Product in connection with the sale) (MCAF0002422-2444) was divided equally between McAfee and Arpu. See Nugent Decl., ECF No. 88, Ex. 5 - Amended and Restated Arpu Services Agreement, p. 14, ¶ 7.

### D. Settlement Negotiations

At the September 28, 2010 motion to dismiss hearing, the Court ordered the parties to mediate their claims and litigate the action simultaneously. With the Court's approval, the parties retained a retired state judge for Alameda County, California, Ronald M. Sabraw, to mediate the dispute. In January 2011, both parties submitted mediation statements that incorporated discussions of the evidence obtained during discovery, case law relating to the claims asserted, and theories regarding calculating potential damages. The parties met with Judge Sabraw on January 13, 2011. The all-day mediation session with Judge Sabraw was vigorous and involved considerable back-and-forth between counsel for the parties.

Counsel continued to negotiate without Judge Sabraw after the January 13, 2011 session and reached agreement on terms of a Class settlement. Negotiations were pursued through dozens of telephone calls, letters, and written exchanges of relevant data between January and May 2011.

Although there was a considerable gap between the parties' negotiating positions at the outset, that gap narrowed, ultimately resulting in the execution of the Settlement Agreement before the Court. See Settlement Agreement, ECF No. 88, Ex. 1. The settlement confers a substantial benefit on the Class and also avoids the considerable risks, delays and expense inherent in litigation such as this. In the end, the parties believe the settlement addresses Plaintiffs' allegations in a sensible way that is meaningful and timely for the Class. The parties thus respectfully ask that the Court finally approve the Settlement.

### E. Terms of the Settlement

#### 1. The Settlement Class

On August 16, 2011, this Court conditionally certified the following settlement class: "All persons in the United States who clicked through a pop-up advertisement from Arpu at the conclusion of a transaction with McAfee on the McAfee website between April 2006 and the date of the class notice and whose confidential billing information was transferred by McAfee to Arpu." ECF No. 101.

#### 2. Settlement Benefits

The settlement provides significant benefits to Class Members, with many Class Members entitled to full reimbursement for their unauthorized charges. This result is close to what Plaintiffs could achieve if successful at trial with significantly less time and expense expended by the parties.

Under the terms of the settlement, Defendants will provide to Class Members their choice of one of the following benefits: (1) the "Cash Settlement Benefit": (a) for those Plaintiff Settlement Class Members who were billed by Arpu monthly, five dollars for each month the claimant paid charges to Arpu for Software, up to a maximum of thirty dollars per claim, and (b) for those Plaintiff Settlement Class Members who were billed annually for an annual Software license, five dollars for each prepaid month, up to a maximum of thirty dollars per claim; or (2) the "Software Settlement Benefit": A software license for the current version of McAfee Family Protection (which sells at a retail price of $49.99/year) for: (a) six months for those Class Members who paid charges for fewer than six months, or (b) 12 months for those Class Members who paid six months or more of charges. See Settlement Agreement, ECF No. 88, Ex. 1, § 4.1.

Class Members will receive one of the benefits listed above for each separate Software they can prove they paid for, subject to the requirements listed below.

**3. Notice to the Class**

Pursuant to the Court's Order, Defendants will submit information regarding the notice provided to the Class in their Certification of Compliance with the Notice Requirements, due to be filed on December 1, 2011.

**4. The Claims Process**

To make a valid Claim, Class Members are required to provide: (1) a statement made under penalty of perjury that they: (a) did not intend to purchase the Software; (b) were charged for the Software; (c) did not receive a refund; and (d) did not download the Software. McAfee will, through a settlement administrator, administer the payment/distribution of benefits and may deny claims if it has a reasonable basis for believing that the Class Member received the benefit of the Software or the claim is otherwise fraudulent or invalid. Class Members or Class Counsel may contest any denial of benefits to the Court. McAfee shall provide Class Counsel with reasonable details regarding the claims administration process and report of any denials of claims.

**5. Incentive Award for Class Representatives**

Subject to Court approval, Defendants will pay named Plaintiffs Ferrington and Schmidt $500 each; the additional named Plaintiffs included in the Second Amended Complaint, Christi Hall and Christopher Bennett, will be paid $250 each. Such payments will be in addition to any benefits that the named Plaintiffs might be entitled to as described above.

**6. Attorneys' Fees and Expenses**

The parties agreed to binding arbitration, subject to this Court's approval, before Judge Sabraw as to the amount of attorneys' fees and expenses that Class Counsel would seek from the Court within a range of numbers. Judge Sabraw met with counsel on July 6, 2011 for the arbitration and issued an opinion on July 14, 2011, recommending that Class Counsel be awarded the total sum of $350,000 for fees and costs. Plaintiffs have filed herewith a motion, and

Defendants do not oppose this request, for fees and costs in the amount of $350,000. The attorneys' fees and expenses payment will not affect the settlement benefits available to the Class.

**7. Releases**

Defendants, their parents, subsidiaries, officers, employees, and distributors will receive a release of liability binding upon Plaintiffs and Class Members covering all claims that were or could have been raised in this action, upon final approval by the Court. The Named Plaintiffs will release all claims they now have or ever had against McAfee and Arpu. Plaintiffs and their counsel will also receive a release of liability for prosecution of the litigation upon final approval by the Court.

**8. No Admission of Liability**

McAfee and Arpu deny each and all of Plaintiffs' claims and contentions and all other charges of wrongdoing or liability.

## III. ARGUMENT

### A. The Class Action Settlement Process

A class action settlement like the one proposed here must be approved by the Court to be effective. See Fed. R. Civ. P. 23(e). The court approval process has three principal steps:

1. A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness and possibly meriting final approval;
2. A notice period, during which time Class Members are notified of the proposed settlement and given an opportunity to express any objections;
3. A "formal fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the Class.

See Manual For Complex Litig. (Fourth) §§ 21.632-34 (2004).

The first two steps have been completed. The Court granted the motion for preliminary approval of the proposed settlement (ECF No. 100), and Defendants will attest in their Certification of Compliance with the Notice Requirements that they have notified Class Members of the proposed settlement and fairness hearing.

**B. The Court Should Grant Final Approval of the Proposed Settlement**

A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)); see also Officers for Justice v. Civ. Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

The decision whether to approve the parties' proposed settlement is committed to the sound discretion of the trial judge, and will not be overturned except upon a strong showing of a clear abuse of discretion. Hanlon, 150 F.3d at 1026-27. The Ninth Circuit, however, has set forth a list of non-exclusive factors that a district court should balance in deciding whether to grant final approval, namely:

1. the strength of plaintiffs' case;
2. the risk, expense, complexity, and likely duration of further litigation;

3. the risk of maintaining class action status throughout the trial;

4. the amount offered in settlement;

5. the extent of discovery completed, and the stage of the proceedings;

6. the experiences and views of counsel;

7. the presence of a governmental participant; and

8. the reaction of the class members to the proposed settlement.

Rodriguez 563 F.3d.at 963 (referred to herein as "the Hanlon factors").

The first four Hanlon factors are designed to assist the Court in comparing the compromise with the likely rewards of the litigation. By evaluating the strength of the Plaintiffs' case, the risk, expense, complexity, and delay associated with further proceedings, and the risk of maintaining class certification through trial, the Court can get a good idea of the value of the Class Members' claims. The Court can then evaluate the amount offered by the parties' proposed settlement in context to determine whether it provides fair compensation for those claims – or, stated another way, "whether the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litig. (Fourth) §§ 21.61 (2004); see generally In re TD Ameritrade Accountholder Litig., No. C 07-2852 VRW, 2009 WL 6057238, *4 (N.D. Cal. Oct. 23, 2009) ("Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation.") (quoting from Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)) (brackets and ellipsis removed).

The remaining Hanlon factors offer additional perspectives on whether the amount offered by the settlement is fair, with the fifth factor designed to ensure that the parties and the court have sufficient information to intelligently assess the value of the class members' claims, the sixth and eighth factors taking into account class counsel's and individual class members' opinions about

the settlement, and the seventh factor accounting for the position or views of any governmental participant.

A thorough evaluation of the Hanlon factors in this case shows that the proposed settlement provides strong value to Class Members without the risk and delay associated with further litigation, and should be approved as a fair, adequate, and reasonable resolution of their claims against McAfee and Arpu.

**1. The Strength of Plaintiffs' Case**

Plaintiffs believe they have a fairly strong case on the facts, which is borne out by the strength of the settlement itself. In discovery, McAfee produced copies of all of Arpu's post-transaction offers that customers would have seen during the Class period. In 2009 and 2010, approximately 7 different Arpu post-transaction pop-ups advertising software appeared on McAfee's website; these ads were identical in style. See Nugent Decl., Ex. 3, Bates MCAF0002838 and MCAF0002840. The ads involve products marketed by Arpu and manufactured by Iolo and Raxco, but neither the involvement nor the identity of Arpu or the manufacturers is clear from the information presented to the customer. The fine print disclosures are located at the bottom of ads, but are commonly presented in grey 6-point type against a grey background. The terms and conditions and/or privacy policy are not on the face of the ads themselves, but rather are hyperlinked. A prominent "Try It Now" button, which customers interpret will lead to the desired download, is featured in every pop-up. It is the brightest visual element on the page, appearing in a vibrant red color. There are only a few variations regarding the placement of the "Try It Now" button throughout the entire series of pop-ups. The Arpu ads appearing on McAfee's website between December 2006 and December 2009 follow the same basic architecture (the timing of the pop-up and the effect of the clicking through), but they reflect more variety in terms of style and content. Thus, Plaintiffs would have faced challenges in

showing that all ads were substantively identical for purposes of class certification. McAfee, moreover, has made clear its intent to argue that the question of deception is a subjective one, determinable only with information about each customer's individual interpretation of the ad.

In the judgment of Plaintiffs' counsel, the proposed Settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each side's case. If the case were to proceed to trial and if Plaintiffs were to prevail both at trial and on appeal, a class recovery would likely come no earlier than 2013. And any damage award at that time would need to be distributed to Class Members based on subscription records that would then be several years old; Class Members would also likely need to locate payment records for their subscriptions that would be equally old, significantly reducing the overall recovery of the Class. In other words, a victory at trial, coming a year or two after the claims period that has just concluded, would not necessarily delivery results superior to the settlement before the Court.

**2. The Risks, Expense, Complexity, and Likely Duration of Further Litigation**

If the parties had been unable to resolve this case through settlement, the litigation could have been even more expensive and lengthy. While Plaintiffs successfully withstood McAfee's motion to dismiss, the parties would need additional time to finish discovery, including taking the depositions of McAfee and Arpu personnel and class representatives. This discovery would be followed by further briefing on the motion for class certification, filed on April 7, 2011 (ECF No. 70), a Rule 23(f) appeal (if a class were certified), a potential motion for summary judgment, and then trial. It is therefore unlikely that the case would go to trial before mid-2012, with post-trial activities to follow.

As noted above, certifying a class here would not have been easy. The parties would have likely engaged in a battle of the experts showing that the pop-up ads were deceptive to a reasonable person and that the deception was consistent amongst the varying ads. In addition, the

issue of whether McAfee's software qualifies as a "service" under the CLRA is still unsettled. Even if Plaintiffs had prevailed on the merits, there is also the likelihood that Defendants would have appealed the verdict, thereby further delaying any recovery for Class Members.

Courts recognize the risks associated with litigating a case through trial. In finally approving a class settlement, one district observed:

> An evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). The outcome of this action was by no means a foregone conclusion. Had . . . Plaintiffs continued to litigate, they would have faced a host of potential risks and costs, including the potential for successful attacks on the pleadings, high costs associated with lengthy and complex litigation, potential loss on summary judgment, and risks and costs associated with trial, should the case progress that far. Indeed, even a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.

In re NVIDIA Corp. Derivative Litig., No. C 06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

### 3. The Risk of Maintaining Class Action Status Through Trial

McAfee and Arpu would likely oppose class certification if the case were to proceed on the merits. "The value of a class action 'depends largely on the certification of the class,' and . . . class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 392 (C.D. Cal. 2007) (quoting In re GMC Pick-Up Truck Fuel Tank Prods, Liab. Litig., 55 F.3d 768, 817 (3d Cir. 1995)). As discussed below, Class Counsel believe that this case is appropriate for class certification in the litigation context. However, there is always a risk that a Court would not find this action suitable for certification as

a nationwide class or a multi-state class. Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be decertified at any time. Dukes v. Wal-Mart Stores, 603 F.3d 571, 579 (9th Cir. 2010) (en banc), rev'd on other grounds, 131 S. Ct. 2541 (2011). The bottom line is that there is much risk in procuring class certification, and maintaining it through trial.

**4. The Benefits Offered in Settlement**

The proposed settlement provides benefits to the Class approaching those that could be obtained through trial. Indeed, the settlement provides valuable benefits to Class Members comparable to the relief Plaintiffs could hope to gain through success at trial. The cost of these subscriptions ranged from $34.95/year to $1.95/month. The vast majority of these subscriptions -- 90.6% -- cost $4.99 or less per month. See Nugent Decl. (ECF No. 88), Ex. 2, Subscription Distributor Report, Bates MCAF0002146-2149. McAfee sold approximately 66,000 software subscriptions through post transaction marketing. Id. With the exception of a few months in which the number of subscriptions jumped dramatically, the amount of revenue derived from active subscriptions stayed fairly constant (rising *or falling* by 10% or less) from month to month. See Nugent Decl. (ECF No. 88), Ex. 4, McAfee Distributor Payment Historical Summary, Bates MCAF002396-2442. These numbers make clear that as new subscriptions were beginning each month, existing subscriptions were being cancelled. Thus, a mathematical average reasonably approximates the average subscription length. That average subscription length is 3.7 months.

The settlement provides Class Members with their choice of a "Cash Settlement Benefit" or a "Software Settlement Benefit." The "Cash Settlement Benefit" offers (a) five dollars for each month the claimant paid charges to Arpu for Software, up to a maximum of thirty dollars per claim for those Plaintiff Settlement Class Members who were billed by Arpu monthly and (b) for those Plaintiff Settlement Class Members who were billed annually for an annual Software

license, five dollars for each prepaid month, up to a maximum of thirty dollars per claim. The "Software Settlement Benefit" offers a software license for the current version of McAfee Family Protection (which retails for $49.99/year) for (a) six months for those Class Members who paid charges for fewer than six months, or (b) 12 months for those Class Members who paid six months or more of charges. Plaintiffs believe that most Class Members will receive full compensation for their actual out-of-pocket payments, because the average subscription lasted less than six months.

By securing relief for Class Members now, the settlement not only avoids the uncertainty associated with prolonged litigation, but also permits the prompt distribution of benefits to Class Members when they are easier to locate and thus make it easier to file claims for benefits.

**5. The Extent of Discovery Completed and the Stage of the Proceedings**

Class Counsel has sufficient information to evaluate the strengths and weaknesses of the claims intelligently. Rodriguez, 563 F.3d at 967. Class Counsel obtained and reviewed significant document discovery before the parties reached agreement following mediation, as discussed above and additional confirmatory discovery following the signing of the parties' Memorandum of Understanding. This discovery permits Plaintiffs to evaluate the merits of the proposed Settlement. Class Counsel successfully withstood portions of Defendant's motion to dismiss Plaintiffs' claims, which gave Counsel insight into the Court's views on the claims alleged. As a result, Class Counsel had a firm grip on the strengths and weaknesses of the Class claims before recommending the Settlement to the Class.

**6. The Experience and Views of Counsel**

The recommendation of experienced counsel weighs in favor of approving the Settlement. In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Here, Class Counsel is Cohen Milstein Sellers & Toll PLLC. Cohen Milstein is one of the most respected and

experienced consumer class action litigation firms in the country. See Declaration of Andrew N. Friedman in Support of Attorneys' Fees, Expenses and Service Payments ("Friedman Fee Declaration"), Ex. 1 (Cohen Milstein Sellers & Toll PLLC Firm Resume). The other Class Counsel also have extensive experience with consumer class action litigation. Id., Exs. 2, 3. Moreover, it is noteworthy that this proposed Settlement is the result of over five months of arm's length negotiations by experienced counsel, assisted by a respected mediator, and was reached only after Class Counsel aggressively prosecuted the claims of the Class. These experienced Class Counsel recommend the settlement without reservation.

**7. The Reaction of the Class Members to the Proposed Settlement**

The number of Class Members who have filed claims indicating their approval and/or have opted-out of the Settlement will be provided by Defendants in their Motion in Support of Final Approval of Settlement, due December 1, 2011. The last date to mail in a comment or objection regarding the Settlement is November 18, 2011, so Plaintiffs will specifically respond to existing and all additional favorable comments, criticisms, and objections in their later reply filing, which is also due December 1, 2011.

**C. Certification of the Proposed Settlement Class Under Rule 23 is Appropriate**

The parties also seek final certification of a Settlement Class. On August 16, 2011, the Court conditionally granted Plaintiffs' motion for certification of the Settlement Class. ECF No. 101. As demonstrated in Plaintiffs' previously filed motion for class certification (ECF No. 70) and Plaintiffs' memorandum in support of certification of settlement class and preliminary approval of settlement (ECF No. 87), and, as briefly analyzed below, all of the requirements of Rule 23 are met.

**1. <u>All Prerequisites for Class Certification Under Rule 23(a) Are Met</u>**

**a. <u>The Settlement Class Is Sufficiently Numerous to Render Joinder of All Members Impracticable</u>**

The first requirement under Rule 23(a) is that the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). In this case, discovery has shown that there are approximately 66,000 customers whose billing information was transferred to Arpu via post-transaction marketing. Plaintiffs believe that a class of this size easily satisfies Rule 23(a)(1)'s requirement that the class be so large that joinder is impracticable.

**b. <u>Common Questions of Law And Fact Exist</u>**

Under Rule 23(a)(2), Plaintiffs must demonstrate the existence of questions common to all members of the proposed class. Fed. R. Civ. P. 23(a)(2). Individual factual variations among class members does not defeat underlying commonality. <u>See</u> <u>Hanlon</u>, 150 F.3d at 1019.

In this case, the common factual and legal questions that form the basis of this lawsuit include: (1) whether the McAfee-Arpu pop-up constitutes an unfair or deceptive practice within the meaning of the UCL in that Defendants' conduct is unfair, unlawful and/or fraudulent; (2) whether a reasonable consumer would be likely to be deceived by the pop-up; (3) whether Defendants' actions in obtaining money from Plaintiffs and Class Members constitute unjust enrichment; (4) whether Defendants' actions constitute a breach of contract or the implied covenant of good faith and fair dealing; (5) whether Defendants' actions and/or omissions violate the CLRA, and (6) whether Plaintiffs and Members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded. The answers to these common questions depend upon a uniform set of operative facts concerning Defendants' conduct.

**c. <u>Plaintiffs' Claims Are Typical of the Settlement Class Claims</u>**

The test for typicality is whether "other members have the same or similar injury, whether

the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). In this case, Plaintiffs' experiences are not simply typical of – they are identical to – those of other Class Members.

As explained above, members of the Settlement Class saw the same ads with the same deceptive characteristics. All members took the same action by clicking on the "Try It Now" button and suffered the same resulting injury – unauthorized charges to their debit/credit accounts..

**d. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class**

In order to determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). Here, the adequacy of representation requirement of Rule 23(a)(4) is clearly satisfied.

Plaintiffs have no conflict of interest with the other Class Members. Plaintiffs have demonstrated their commitment to prosecuting this case on behalf of the Class by reviewing and commenting upon the pleadings and responding to requests for written discovery. Furthermore, Plaintiffs have retained and are represented by counsel who are highly experienced in class action litigation and consumer law. Class Counsel, for instance, has held lead roles in scores of complex and national class action cases. ECF No. 71, Ex. 3.

**2. The Proposed Class Is Maintainable Under Rule 23(b)(3)**

**a. Common Questions of Fact and Law Predominate Over the Individual Questions Presented in This Action**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods, Inc. v. Windsor., 521 U.S. 591, 623 (1997). Under Rule 23(b)(3), common issues need only predominate, as Rule 23 does not require the total absence of any individual issues. In re Activision Sec. Litig., 621 F. Supp. 415, 429-430 (N.D. Cal. 1985). Here, the common issues Plaintiffs have identified predominate over any perceived individualized issues.

**(1) Uniform Representations Made to Customers Will Establish the Existence of a Fraudulent Unfair and Unlawful Practice**

The California Supreme Court has held that "relief under the UCL is available without individualized proof of deception, reliance and injury." In re Tobacco II Cases, 46 Cal. 4th 298, 320 (2009). Under California law, reliance may be presumed from a showing that a misrepresentation was material. Id. at 327.

As described in detail above, Plaintiffs have alleged a scheme premised on uniform representations made to McAfee customers during the final stages of on-line purchases of antivirus software. Plaintiffs need not show that every class member saw the same Arpu ad, but must show the ads seen by all Class Members were marked by common, material features that could lead to a finding that the ads were deceptive. See Boeken v. Philip Morris, Inc., 127 Cal. App. 4th 1640, 1660-61 (2005). Plaintiffs can do this. Several of the deceptive elements identified in the Court's October 2010 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss are common to all of the ads used in late 2008, 2009 and 2010: (1) All of the ads are presented to the customer at the conclusion of the customer's volitional purchase, while the customer is waiting for his desired product to appear; (2) the ads are styled like McAfee's website and are particularly striking when viewed together; (3) a prominent "Try It Now" button, which customer will interpret will lead to the desired download, is featured on every pop-up; and (4) all

of the pop-ups were part of a transaction that deviates from the norms of e-commerce. ECF No. 71, Ex. 2. Ads used before 2008 follow the same basic architecture. Id.

**(2) Plaintiffs' Injuries Are Identical In Nature and Will be Objectively Determined**

The forms of Plaintiffs' damages in this case are not merely similar, they are identical – all were caused by a uniform course of conduct and all can be calculated by the simple addition of charges paid for the add-on products that were marketed post-transaction. The only variation in individual claims will relate to the quantum of damages, and it is well established that such variations do not preclude class certification. Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975).

**(3) The Breach of Contract Claim Depends Upon The Interpretation of a Limited Number of Unilateral, Form Contracts Used by McAfee**

Contract claims are routinely certified for class treatment and are even described as ideal for class certification. Vathana v. Everbank, No. C 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010). Here, Plaintiffs assert that McAfee violated the terms of its own EULA and Privacy Policy and that Arpu violated the contracts entered into when customers accepted Arpu's offers. See Nugent Decl., Ex. 6, TAC ¶ 23. Plaintiffs assert McAfee undertook several obligations: to use its customers' payment information exclusively for customers' use of McAfee software; to securely maintain customers' payment information and; to pass such information to third parties only when the customers asks McAfee to do so. The question of whether McAfee and/or Arpu breached contractual obligations can be resolved with common evidence: the contracts and documents themselves.

**b. Class Treatment is Superior to Other Methods of Adjudicating This Controversy**

Generally, the factors relevant to assessing superiority include "(A) the class members'

interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

The individual Class Members' damages are modest – based upon monthly charges of approximately $5 accumulating over a period of months. Approximately 90% of the Class paid similar or lower charges. Litigation costs would dwarf potential recovery of any individual member. The size and nature of the proposed Class Members' statutory damages weigh heavily in favor of certification here. Hanlon, 150 F.3d at 1023. As to nature and extent of other litigation concerning the alleged wrongdoing, this case is not duplicative of litigation previously commenced. Indeed, in its May 19, 2011 Order, the Hon. Judge Koh related a similar case filed after this one. See Pochis v. Arpu, Inc. et al, No. C 11-00721 JF (N.D. Cal. Filed Feb. 16, 2011). Class certification here will not interfere with or undermine litigation commenced in other courts.

Finally, a class action in this forum, where adequate plaintiffs and experienced and able legal counsel are pursuing the claims, is the superior means of resolving this dispute. The proposed Class numbers approximately 66,000. Maintaining this Class as a class action in this forum will guard against inconsistent results. Therefore, considering all the relevant factors, it is clear that certification of the proposed Class pursuant to Fed. R. Civ. P. 23(b)(3) is proper and warranted.

## CONCLUSION

The proposed Settlement will provide significant benefits to the Class, will do so in the immediate future, and does not represent a significant discount from what Plaintiffs might hope to achieve if they were to succeed at trial. The proposed Settlement is thus fair, reasonable, and

adequate.

Plaintiffs respectfully request that the Court grant final certification of the Settlement Class, grant final approval of the proposed Settlement, and enter final judgment. Class Counsel will provide the Court with a Proposed Order of Dismissal and Final Judgment prior to the final approval hearing, which will include a list of all persons who have timely requested to be excluded from the Class.

Dated: November 1, 2011

**COHEN, MILSTEIN, SELLERS & TOLL, PLLC**

By: *<u>/s/ Andrew N. Friedman</u>*__________
Andrew N. Friedman (admitted *pro hac vice*)
Victoria S. Nugent (admitted *pro hac vice*)
Stefanie M. Ramirez (admitted *pro hac vice*)
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2011, a true and correct copy of the foregoing Plaintiffs' Memorandum in Support of Final Approval of Class Action Settlement was served by first class mail to:

Daniel K. Slaughter
Michael F. Donner
STEIN & LUBIN LLP
Transamerica Pyramid
600 Montgomery Street 14th Floor
San Francisco, California 94111

Scott Raber
The Banchero Law Firm LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

*/s/ Andrew N. Friedman*
Andrew N. Friedman