Gene J. Stonebarger, State Bar No. 209461
gstonebarger@stonebargerlaw.com
Richard D. Lambert, State Bar No. 251148
rlambert@stonebargerlaw.com
STONEBARGER LAW
A Professional Corporation
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7140

James R. Patterson, State Bar No. 211102
jim@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6993
Facsimile: (619) 756-6991

Attorneys for Objector Ken Pochis

STONEBARGER LAW
A Profesional Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MELISSA FERRINGTON, CHERYL SCHMIDT, CHRISTOPHER BENNETT AND CHRISTI HALL, individually and on behalf of the class they represent,<br><br>Plaintiffs,<br><br>vs.<br><br>MCAFEE INC., ARPU, Inc, (d/b/a TRYANDBUY.COM)<br><br>Defendants. | CASE NO.: 5:10-CV-01455 LHK<br><br>**CLASS ACTION**<br><br>**OBJECTION OF KEN POCHIS TO PROPOSED SETTLEMENT** |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. INFORMATION REGARDING OBJECTOR KEN POCHIS PURSUANT TO THE CLASS NOTICE .......... 3

III. HISTORY OF DISPUTE .......... 3

IV. LAW & ARGUMENT .......... 5

A. The Class Definition As Defined In The Settlement Notice Denies Benefits To A Large Number of Class Members .......... 6

B. Proposed Class Representatives and Their Counsel Are Not Adequate .......... 8

C. The Notice Misstates the Potential Benefits Available .......... 10

D. The Notice Misstates the Percentage of Benefits Allocated to Fees .......... 10

E. The Claims Process is Overly Burdensome .......... 10

V. THE COURT SHOULD, AT MINIMUM, CARVE OUT THE PEOPLE THAT DOWNLOADED THE "FREE" TRIAL SOFTWARE .......... 11

VI. CONCLUSION .......... 12

STONEBARGER LAW
A Professional Corporation

# TABLE OF AUTHORITIES

**Federal Cases**

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) .......... 6

Browning v. Yahoo! Inc., 2006 U.S. Dist. LEXIS 34770 (N.D. Cal. May 19, 2006) .......... 6

Hanlon v. Chrysler Corporation, 150 F.3d 1011 (9th Cir. 1998) .......... 6, 8

Hansberry v. Lee, 311 U.S. 32 (1940) .......... 8

Hesse, 598 F.3d at 589 .......... 9

Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615 (9th Cir. 1982) .......... 6

**Federal Rules**

Fed. R. Civ. P. 23(a)(4) .......... 8

Fed. R. Civ. P. 23(e)(2). .......... 5

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Profesional Corporation

## I. INTRODUCTION

Ken Pochis ("Pochis") objects to the class action settlement agreement preliminarily approved by this Court on August 16, 2011 between the Ferrington Plaintiffs ("Plaintiffs") and Defendants McAfee Inc. and Arpu, Inc. ("Defendants") on the grounds that it is not fair, reasonable or adequate to the Class. Under the express terms of the proposed settlement, Pochis, and a large number of the proposed Class Members are specifically precluded from claiming any benefits under the deal. These Class Members, which likely constitutes a majority of the total Class, are essentially releasing their claims for nothing.

The proposed Class is defined broadly:

> all persons in the United States who during the Class Period purchased software from McAfee's website and subsequently accepted an Arpu pop-up advertisement offer presented at the conclusion of the McAfee transaction and were charged by Arpu for the product, service or software sold in the Arpu pop-up.

This definition includes all persons that downloaded the "free" trial version of the software offered in the pop-up advertisement. The crux of this action is that consumers such as Pochis were duped into signing up for an ongoing payment obligation with Arpu by agreeing (through clicking the "Try It Now" button in the pop-up advertisement) to download the "free" trial software for which they would not be charged beyond the expiration of the 30-day free trial period, and that McAfee transferred their credit and/or debit card information to Arpu without their knowledge or consent so that Arpu could begin processing the unauthorized charges. But the Class Members that downloaded the "free" trial software are specifically precluded from making a claim for any benefit under the terms of the proposed agreement. The Notice and Claim Form that were sent to Class Members requires them to affirmatively declare under penalty of perjury that they "never downloaded any software from Arpu" in order to claim a benefit. As a result, a large number of Class Members are precluded from claiming a benefit even though their claims are being released.

Given that a large number of Class Members are precluded from claiming any benefits, the represented value of the proposed settlement is grossly inaccurate. For example, the notice documents state that "the total amount <u>that can be claimed by all Class Members</u> is $1.2 million."

This is plainly false since $1.2 million represents the total revenues collected by Defendants from all Class Members. *Ferrington v. McAfee, Inc.*, Case No. CV-10-01455 LHK (HRL) [Doc. 87 at 2:28-3:6; Nugent Decl., Ex. 4 – Bates MCAF002396-2442]. Because many of these Class Members downloaded the "free" trial version of the software, they are precluded from making a claim for their portion of the revenues. In addition, even those Class Members that are eligible to make a claim are limited to receiving $5 per month for a maximum of 6 months (or $30 total) regardless of how many months or how much per month they actually paid. Consequently, there could never be $1.2 million, or anything close to that claimed by the Class Members even assuming each and every eligible Class Member returned a claim form.

Likewise, the notice provides that Class Counsel "can seek up to $350,000 or 29.2% of the total amount [$1.2 million] that can be claimed." For the same reasons, this is a false statement since there could never be anywhere close to $1.2 million claimed, so the requested fees are far in excess of 29.2% that is actually being made available.

In addition to the obvious problem with settling out a large number of Class Members' claims without paying them any consideration whatsoever, the claims process is entirely too burdensome as it requires eligible Class Members to provide proof of purchase (or otherwise provide contact information matching the Defendants database), and requires Class Members to verify the amount they paid during the first six months of any charges by Arpu, despite that Defendants know exactly how much each Class Member paid.

For these reasons Pochis objects to the proposed settlement and requests that the Court decline to grant final approval. Alternatively, Pochis requests that the Court modify the proposed Class definition to be consistent with the claim form by carving out persons that downloaded the "free" trial version of the software as follows:

> all persons in the United States who during the Class Period purchased software from McAfee's website and subsequently accepted an Arpu pop-up advertisement offer presented at the conclusion of the McAfee transaction and were charged by Arpu for the product, service or software sold in the Arpu pop-up**, and did not download any software from Arpu.**

///

STONEBARGER LAW
A Profesional Corporation

## II. INFORMATION REGARDING OBJECTOR KEN POCHIS PURSUANT TO THE CLASS NOTICE

Pursuant to the Class Notice, Pochis, by and through the undersigned counsel hereby states that he is a Class Member that downloaded the "free" trial version of the software after clicking the "Try It Now" button in the pop-up advertisement during his transaction with McAfee, in or about May of 2009, and was subsequently charged for the software approximately 30 days later. Pochis had no idea that he would be charged for the software after the free trial period, and, most importantly, he had no reason to believe that McAfee would transfer his debit card account number to Arpu without his consent.

Pochis has not objected to any other class action settlement in any United States court in the previous five (5) years, nor has his counsel objected to any other class action settlement in any United States court in the previous five (5) years.

Pochis hereby objects to providing his address, telephone number, or email address herein as called for in the Class Notice, because this pleading will be part of a public record, and thus, providing such information would invade his right to privacy as guaranteed by the United States Constitution. Such information can be obtained from Pochis' counsel at such a time that it becomes necessary.

Pochis intends on appearing at the Final Approval Hearing through his counsel set for on the above-entitled caption.

## III. HISTORY OF DISPUTE

This *Ferrington* case was originally filed on April 6, 2010 solely against Defendant McAfee. *Ferrington* [Doc. 1]. On May 13, 2010, Ferrington Plaintiffs filed a First Amended Complaint to add a demand for damages in connection with the CLRA claim. Id. at [Doc. 12]. In or about January 2011, Ferrington participated in mediation solely with McAfee. Id. at [Doc. 65].

On February 16, 2011, Pochis filed his class action complaint against three separate Defendants, McAfee, Arpu, and Iola Technologies, and alleging twelve (12) causes of action, including one for violations of the Electronic Funds Transfer Act, which specifically precludes a

STONEBARGER LAW
A Profesional Corporation

retailer such as Arpu from processing unauthorized charges to customers' debit card accounts. The EFTA claim is significant because it provides for statutory damages of up to $500,000 in addition to any actual damages suffered by Class Members, and attorney fees. *Pochis v. Arpu Inc., et al.*, Case No. CV11-0721[Doc. 1]. The Ferrington Plaintiffs never alleged this claim.

On April 7, 2011, the Ferrington Plaintiffs filed a Second Amended Complaint that added (1) two new plaintiffs; (2) new allegations demonstrating that McAfee's software is a "service" within the meaning of the CLRA; and (3) causes of action for breach of contract and the covenant of good faith and fair dealing. *Ferrington* [Docs. 73-76]. On April 7, 2011, Ferrington also filed a motion to certify a proposed class solely with respect to claims against Defendant McAfee. *Ferrington* [Docs. 70-72].

On April 13, 2011, the Ferrington Plaintiffs and Defendant McAfee filed a "Joint Stipulation and Proposed Order Re: Proposed Settlement and Postponement of Pretrial Dates". *Ferrington* [Doc. 77]. Attached to the Joint Stipulation was a Memorandum of Understanding setting forth the details of the agreed upon settlement **solely between the Ferrington Plaintiffs and McAfee**, which generally provided that Class Members could make a claim for up to 50% of the total charges that they paid to Arpu for up to 6 months. The proposed settlement also required eligible Class Members to provide their receipts or credit card statements evidencing the disputed charges. The proposed settlement did not include Defendant Arpu. Id.

From May through July 2011, Pochis and Defendants McAfee, Arpu, and Iola were engaged in informal class-wide settlement discussions that would include all claims alleged by Pochis and all three Defendants in that action. On May 26, 2011, these parties filed a joint stipulation notifying the Court of these settlement talks and requesting an extension of relevant dates in the *Pochis* action. *Pochis* [Doc. 10]. On July 1, 2011, Pochis and Defendants McAfee, Arpu, and Iola filed a stipulation notifying the court that they had agreed upon material terms for a class-wide settlement in the related *Pochis* action. *Pochis* [Doc. 11].

On July 13, 2011, the Ferrington Plaintiffs filed a stipulation for leave to file a Third Amended Complaint adding Defendant Arpu to the *Ferrington* case for settlement purposes only. *Ferrington* [Docs. 83-85]. On July 13, 2011, the Ferrington Plaintiffs also filed a Motion



STONEBARGER LAW
A Professional Corporation

for Certification of Settlement Class and Preliminary Approval of Settlement. Id. [Docs. 86-88]. The proposed settlement included Arpu, and doubled the proposed benefits to eligible Class Members that was originally agreed to in the April 13, 2011 Joint Stipulation and Memorandum of Understanding. The proposed settlement still required eligible Class Members to provide proof of the disputed charges as part of the claims process.

On August 4, 2011, the Court held the hearing on the Ferrington Plaintiffs' Motion for Certification of Settlement Class and Preliminary Approval of Settlement. Id. [Doc. 94]. Counsel for Pochis appeared on his behalf to object to the motion based, among other things, the fact that a substantial number of proposed Class Members were precluded from making a claim because they downloaded the "free" trial version of the software, and because it was far too onerous to require eligible claimants to provide their receipts or statements evidencing the charges by Arpu. That same day, the Court entered an Order Regarding Edits to Proposed Class Notice that, among other things, removed any requirement that eligible Class Members provide proof of purchase in order to make a claim. Id. [Doc. 92].

On August 5, 2011, the Court entered a Supplemental Order Regarding Edits to Proposed Class Notice, which required the parties to confirm that Class Members were required to take additional affirmative steps, after clicking through the Arpu pop-up advertisement, to download the software. Id. [Doc. 93].

On August 16, 2011, the Court entered orders granting preliminary approval of the proposed settlement and conditionally certifying the settlement class. Id. [Doc. 100].

## IV. LAW & ARGUMENT

Before the Court may approve the settlement, it must determine that the Settlement is fair, reasonable, and adequate to the class. Fed. R. Civ. P. 23(e)(2). The Court must take extra care in evaluating the Settlement for fairness to *all* Class Members, not just the named representatives. Fed. R. Civ. P. 23. Advisory Committee Notes 2003 ("[C]ourt review and approval are essential to assure adequate representation of Class Members who have not participated in shaping the settlement"). A settlement should not be approved if it is "a global compromise with no structural assurance of fair and adequate representation for the diverse



STONEBARGER LAW
A Profesional Corporation

groups and individuals affected." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 627 (1997).

The District Court must examine the settlement taken as a whole, rather than the individual component parts, for overall fairness. Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1026 (9th Cir. 1998). The district court does not have the ability to "delete, modify or substitute certain provisions." Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982). The settlement must stand or fall in its entirety. Id.

However, while a District Court may not unilaterally modify a settlement, it may suggest modifications of the proposed settlement to the parties and subsequently either grant or withhold approval. Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 630 (9th Cir. 1982). "The court may... voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it." Browning v. Yahoo! Inc., 2006 U.S. Dist. LEXIS 34770, at *3 (N.D. Cal. May 19, 2006). In Browning, the District Court demanded the parties to narrow the scope of the release provision. "At the insistence of the Court, th[e] release was written to limit its scope to the claims raised in this litigation." Browning v. Yahoo! Inc., 2007 U.S. Dist. LEXIS 86266, at *9 (N.D. Cal. Nov. 16, 2007). The narrowed release ultimately led to the Court's final approval of the proposed settlement. Id. at *22.

### A. The Class Definition As Defined In The Settlement Notice Denies Benefits To A Large Number Of Class Members

If the proposed settlement includes a broad class definition and release of all claims by all McAfee customers that clicked through an Arpu pop-up advertisement and were subsequently charged by Arpu. The problem is a large number of these Class Members are precluded from asserting a claim for any of the benefits provided under the agreement because they downloaded the "free" trial software, even though they never agreed to be charged after the "free" trial period expired, and even if they did not intend to download the software. Indeed, it is undisputed that Class Members were enrolled and later charged by Arpu the moment they clicked on the "free" trial pop-up advertisement, and regardless of whether they then downloaded the software.

///



STONEBARGER LAW
A Profesional Corporation

Some Class Members downloaded the Arpu software intentionally, believing that this was truly a "free" trial as advertised, and without any expectation that McAfee would immediately forward their payment information to Arpu to begin charging them at the expiration of the 30-day trial period. Others did so unintentionally, or out of confusion or curiosity only after they had been directed to the link to download the software subsequent to clicking the "Try It Now" button in the pop-up advertisement. And some Class Members may have downloaded the software only after discovering Arpu's unfamiliar charges in an effort to figure out what they were being charged for. Whether a particular consumer downloaded the "free" trial software offered by McAfee and Arpu has little bearing on the underlying legal claims. But even if this were a consideration, it would still be entirely unfair to release these Class Members' claims without providing them with *any* benefit under the proposed agreement.

Despite releasing all of their claims alleged in both the *Ferrington* and *Pochis* actions, including claims under the Electronic Funds Transfer Act that forbid Arpu from charging consumers' debit cards without informed consent, none of the above categories of Class Members will receive any benefit whatsoever under the proposed settlement. This is because the claim form specifically prohibits anyone that downloaded the "free" trial software, at any time and for any reason, from asserting a claim:

> "If you are a United States resident who, on or after April 6, 2006: (1) purchased software from McAfee's website, subsequently clicked-through a pop-up advertisement from Arpu d/b/a TryandBuy.com presented at the conclusion of the McAfee transaction; (2) were charged by Arpu for the software sold in the pop-up ad, even though you did not intend to accept the offer; **(3) never downloaded any software from Arpu**; and (4) have not received a refund for the Arpu charges, you may submit a claim."

The settlement agreement clearly benefits the named plaintiffs in the *Ferrington* action, who apparently did not download the software, and to the detriment of the remaining Class Members that downloaded the "free" trial software for various different reasons. Based on the disparate treatment between the named and unnamed Class Members, the settlement agreement is not "a fair and adequate representation of the diverse groups and individuals affected." Anchem, 521 U.S. at 627.



STONEBARGER LAW
A Profesional Corporation

### B. Proposed Class Representatives and Their Counsel Are Not Adequate

The class representative and their counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, absent Class Members must be afforded adequate representation before entry of a judgment which binds them. See Hansberry v. Lee, 311 U.S. 32, 42-43 (1940). Class representation is inadequate if the named plaintiff or his counsel fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other Class Members. Hesse, 598 F.3d at 589. Examination of potential conflicts of interest requires courts to apply "heightened scrutiny." Hanlon, 150 F.3d at 1020. Here, the named plaintiffs and their counsel are forfeiting a large number of Class Members' claims to protect their own interests.

Pochis, an unnamed plaintiff, was not adequately represented here because the named plaintiffs and counsel failed to prosecute the action vigorously on behalf of the entire Class. The Ninth Circuit is less likely to find inadequate counsel when "[t]here is no disparate treatment between Class Members" and "all stood to benefit equally" because these facts "lessen[] the likelihood that the named plaintiffs and their attorneys colluded with [Defendant] to increase their own recovery at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Id. at 1027. Here, there is unmistakable disparate treatment between Class Members, and they are not treated equally and fairly since a majority of them will receive no benefits at all. The agreement deliberately excludes those who downloaded the software and disallows those Class Members from receiving any benefit of the settlement. The results of this settlement agreement are (1) a majority of unnamed plaintiffs are left in the dust with no recovery, (2) the named plaintiffs and their attorneys will be compensated and (3) Defendant will minimize their payout since many or most of the Class Members are ineligible to assert a claim. The proposed agreement essentially provides that some Class Members, including the named plaintiffs, are entitled to full refunds of all money they paid, while others, including Pochis, are entitled to nothing. The Class Members who are precluded from making a claim and receive nothing are still required to release their claims, while the named plaintiffs and others can receive full refunds. It is hard to imagine a greater conflict of interest.



STONEBARGER LAW
A Profesional Corporation

In connection with his related action, Pochis has asserted a number of state and federal claims that were never pursued in the *Ferrington* action. Notably, Pochis asserted a claim under the EFTA, which imposes a heavy burden on businesses to obtain informed consent authorizing ongoing charges to a consumer's debit card, and also requires that the consumer be provided with an accurate copy of any purported authorization and the terms. The EFTA claim provides for substantial statutory damages of up to $500,000 in addition to any actual damages suffered, plus attorney fees. Importantly, whether a Class Member downloaded any software from Arpu would have no effect whatsoever on this claim, which is focused more on a valid signature or authorization and providing the consumer with a copy. Yet, the Ferrington Plaintiffs never pursued this or a number of other claims asserted by Pochis.

"Without adequate representation, a court order approving a claim-preclusive class action settlement agreement cannot satisfy due process as to all members of the class." Plaintiffs' representation is inadequate as to Pochis because Plaintiffs failed to prosecute Pochis' and the Class' federal and other claims. In Hesse, the plaintiffs filed a class action against Sprint Corporation for state tax statutes only to find that their claims were allegedly barred by an earlier settlement where the plaintiffs were Class Members. Hesse, 598 F.3d at 589. Because the plaintiffs from the earlier settlement ("prior plaintiffs") did not possess the same type of claim as the plaintiffs at issue ("current plaintiffs"), the Ninth Circuit found an insurmountable conflict of interest between the prior plaintiffs and the current plaintiffs. Id. There was no dispute that the prior plaintiffs did not vigorously prosecute the state law claims that the current plaintiffs brought. Id. The prior plaintiff's "interest in settling his claims, even at the cost of a broad release of other claims he did not possess, was in conflict with the [current plaintiffs'] unrepresented interest in prosecuting their [state] claims." Id. As a result of prior plaintiff's inadequate representation, the broad release was ineffective.

Like Hesse, the Ferrington Plaintiffs have an overwhelming interest in settling their claims at the cost of a broad release of other claims that they do not possess. Their interest in settling is clearly in conflict with Pochis' unrepresented interest in prosecuting his federal claims, and this insurmountable conflict prevents a finding of adequacy as to the Ferrington Plaintiffs.

### C. The Notice Misstates the Potential Benefits Available

The notice and all relevant settlement documents falsely state that the total amount that can be claimed by all Class Members is $1.2 million. Not true. The Defendants' *total revenues* are $1.2 million. But this includes money that was collected from Class Members that downloaded the "free" trial software and are therefore precluded from making a claim. It also includes money that was collected from Class Members that paid more than $5 per month, and those that paid for more than 6 months. Even those Class Members who are eligible to make a claim are limited to receiving $5 per month for a maximum of 6 months (or $30 total) regardless of how many months or how much per month they actually paid. Consequently, there could never be $1.2 million, or anything close to that claimed by the Class Members even assuming each and every eligible Class Member returned a claim form.

### D. The Notice Misstates the Percentage of Benefits Allocated to Fees

The notice and relevant settlement documents state that proposed class counsel are going to apply for $350,000, or only up to 29.2% of the total amount that can be claimed. For the same reason set forth in the previous section, this is a blatant misstatement since there can never be $1.2 million claimed, so the requested $350,000 constitutes far more than 29.2% of the actual amount available to be claimed.

### E. The Claims Process is Overly Burdensome

In addition to the obvious problem with settling out a large number of Class Members' claims without paying them any consideration whatsoever, the claims process is entirely too burdensome as it requires eligible Class Members to provide proof of purchase (or otherwise provide contact information matching the Defendants database), and also requires Class Members to verify the amount they paid during the first six months of any charges by Arpu, despite that Defendants know exactly how much each Class Member paid. The appropriate thing to do, as is common in claims-made settlements, is for the Defendants to identify the amount of money each Class Member is entitled to, and perhaps print the amounts on the individual claims forms. Requiring claimants to provide proof of purchase or otherwise provide contact information matching Defendants' records is an obvious ploy designed to discourage claims.



STONEBARGER LAW
A Profesional Corporation

The claim form also requires Class Members to verify the amount they paid during the first six months of any charges by Arpu. If Class Members do not have proof of purchase, how could they reasonably be expected to figure out what they paid? This is essentially just another way of requiring claimants to dig through records, that they may have never had or may no longer be available, to figure out what they are owed. While the Court attempted to cure the practical problem of requiring Class Members to provide proof of purchase, it has not addressed this obstacle, which basically creates the exact same problem.

## V. THE COURT SHOULD, AT MINIMUM, CARVE OUT THE PEOPLE THAT DOWNLOADED THE "FREE" TRIAL SOFTWARE

Pochis anticipates that Ferrington and the Defendants will try to justify the proposed settlement based on an argument that, by downloading the "free" trial software, Class Members manifested their understanding and agreement to the terms of the trial period. As set forth above, this is a flawed conclusion since there are a number of reasons a Class Member might download the software after the fact. But more importantly, if the proposed justification were true, there would be no reason to include these people in the class definition or require them to release their claims. This argument further highlights that the Ferrington Plaintiffs and their counsel are certainly not attempting to protect the rights of Class Members that downloaded the "free" trial software. How could they claim to zealously represent a group of people that they concede have not been damaged and are not otherwise entitled to any compensation for their claims?

In reality, the question of whether a particular Class Member downloaded the "free" trial software is largely irrelevant to the crux of the claims in this case. The real issues are whether Defendants tricked Class Members into paying for something they did not agree to pay for, whether Class Members authorized McAfee to share their credit and debit card information with Arpu, and whether Class Members lawfully authorized Arpu to charge their debit and credit cards. Class Members were admittedly enrolled in Arpu's negative option trial program, and their payment information was passed to Arpu the moment they clicked on the "Try It Now" pop-up advertisement. Whether they subsequently downloaded the offered "free" trial software would not seem to matter.

Assuming that the Court disagrees, it still cannot ignore that these people have claims that cannot simply be released without some form of compensation. It follows that the Court should, at minimum, carve out the people that downloaded the "free" trial software from the Class Definition and release.

## VI. CONCLUSION

At bottom, all Class Members that are required to release their claims pursuant to the agreement should be entitled to some form of relief and compensation in exchange. The proposed agreement requires a majority of the proposed Class to release their claims for nothing. It is hard to imagine how such a "settlement" could survive judicial scrutiny.

Pochis objects to the proposed settlement and requests that the Court decline to grant final approval. Alternatively, the Court should carve out the people that downloaded the "free" trial software, or otherwise modify the settlement terms to require that all Class Members are allowed to assert a claim for the promised benefits.

DATED: November 17, 2011

STONEBARGER LAW, APC
PATTERSON LAW GROUP, APC

By: ______________________
Gene J. Stonebarger
Attorneys for Objector Ken Pochis

STONEBARGER LAW
A Profesional Corporation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 17, 2011, the foregoing **OBJECTION OF KEN POCHIS TO PROPOSED SETTLEMENT** was filed electronically with the Clerk of the Court to be served by operation of the Court's CM/ECF electronic filing system to all counsel of record.

Yvonne Sabolboro

STONEBARGER LAW
A Professional Corporation