**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MELISSA FERRINGTON, CHERYL SCHMIDT, CHRISTOPHER BENNETT AND CHRISTI HALL, | ) ) ) ) | Case No.: 10-CV-01455-LHK |
| Plaintiffs, | ) ) | ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE |
| v. | ) ) | |
| MCAFEE, INC., ARPU, INC., D/B/A TRYANDBUY.COM, | ) ) ) | |
| Defendants. | ) ) | |

Before the Court is Plaintiffs' motion for final approval of a class action settlement, and Plaintiffs' counsel's motion for attorneys' fees. A fairness hearing on the motions was held on December 15, 2012. After considering the briefs filed by the parties and the papers filed by the objector, and hearing oral argument on the matter, the Court DENIES final approval of the class settlement, and DENIES Plaintiffs' counsel's motion for attorneys' fees for the reasons discussed below.

## I.       Background

This is a class action against McAfee, Inc. ("McAfee") and Arpu, Inc. ("Arpu") arising out of a partnership between the two companies. McAfee is a provider of computer security software whose products may be purchased and downloaded from the McAfee website. Arpu is a company that places online advertisements that enable consumers to purchase products "with a single click,

1

United States District Court
For the Northern District of California

using credit card information already on file."  In 2007, Arpu partnered with McAfee to place ads on McAfee's website that would appear after a customer completed a purchase of a McAfee product.  These ads were targeted to entice a customer to purchase an Arpu product using the billing information that had been provided to McAfee for the purchase of the McAfee product.  If a customer chose to subscribe to the product or service offered in the Arpu ad, McAfee transmitted the customer's billing information to Arpu for use in the purchase of the Arpu product.

Named Plaintiffs in this action, Melissa Ferrington and Cheryl Schmidt, purchased McAfee's anti-virus program from the McAfee website on August 18, 2009, and November 30, 2009, respectively.  After they completed their transactions, but before they downloaded the McAfee product, an Arpu pop-up ad with a button reading "Try It Now" appeared on their computer screens.  Believing that clicking on "Try It Now" would download the McAfee software they had just purchased, Plaintiffs clicked on the button.  They later learned that clicking on "Try It Now" authorized McAfee to transfer their billing information to Arpu, enrolled them in a 30-day free trial of a non-McAfee product called PerfectSpeed (alternatively "Arpu software" or "the software"), and authorized Arpu to charge them a $4.95 monthly subscription fee after the expiration of the free trial period.  Plaintiffs never downloaded the PerfectSpeed software, and were not aware of this transaction until they noticed charges listed as "TB *PERFECTSPD ON MCAF 202-4461821" on their credit or debit card statements.

### A.  Procedural Background

Named Plaintiffs Ferrington and Schmidt filed the original Complaint on April 6, 2010 (ECF No. 1), and subsequently filed a First Amended Complaint ("FAC") on May 13, 2010 (ECF No. 12).  Both complaints alleged that McAfee sold customers' debit/credit billing information to Arpu, without authorization and asserted claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17500.

McAfee filed a motion to dismiss the FAC (ECF No. 25), which was granted in part and denied in part on October 5, 2010.  ECF No. 57.  The Court denied Defendant's motion to dismiss

2

Plaintiffs' UCL claim, but granted Defendant's motion to dismiss the CLRA claim.  McAfee filed an Answer to Plaintiffs' FAC on October 19, 2010.  ECF No. 58.  Plaintiffs sought leave to file a Second Amended Complaint ("SAC") on April 7, 2011, re-pleading their CLRA claim and adding a breach of contract claim (ECF No. 75).

On July 13, 2011, Plaintiffs filed their Third Amended Complaint ("TAC"), ECF No. 84-1, as well as the motion for certification of a settlement class and preliminary approval of a class settlement, with the signed settlement agreement attached.  ECF Nos. 87-88.

The class as defined in the TAC was:

> All persons in the United States who purchased software, products or services from McAfee, Inc. and subsequently accepted an Arpu pop-up advertisement offer presented at the conclusion of the McAfee transaction and were charged by Arpu, Inc. for **unused and unclaimed software, products and services** after McAfee transferred their credit/debit card and other billing information to Arpu.

TAC ¶ 5, ECF No. 84-1 (emphasis added).  Notably, in every version of the complaint, despite other minor differences, the class was consistently defined to include only those individuals who had *not* downloaded the Arpu software.

The ad program between Arpu and McAfee also prompted another lawsuit against McAfee and Arpu by an objector to this lawsuit.  On February 16, 2011, Ken Pochis filed suit against Arpu, McAfee, and an additional defendant, Iolo Technologies, Inc., for violations of RICO, the Electronic Funds Transfer Act ("EFTA"), the Electronic Communications Privacy Act, and various state law claims including the UCL and the CLRA.  The Pochis class[1] was defined as "All persons residing in the United States who, during the four year period preceding the date of filing of this Class Action Complaint, did not provide their credit card, debit card, or billing information directly to Arpu but whose credit card, debit card, or billing information was obtained by Arpu."  Pochis Complaint ("Pochis Compl.") ¶ 36, Case No. 11-CV-00721-LHK, ECF No. 1.  The Pochis Complaint contained no limitation regarding whether the class member had downloaded the Arpu software or not.  Thus, the Pochis class included both those individuals who downloaded the Arpu

---

[1]  For ease of reference it will be referred to as the "Pochis class" even though the Court has not yet certified a class under Federal Rule of Civil Procedure 23.

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1  software, like Plaintiff Pochis himself, and those who did not download the Arpu software, like the

2  Ferrington Plaintiffs.

3      The Pochis class counsel,[2] like the Ferrington class counsel, entered into settlement

4  negotiations with Defendants.  On July 1, 2011, Plaintiff Pochis and Defendants McAfee, Arpu and

5  Iolo filed a stipulation notifying the court that the parties in the Pochis lawsuit had agreed upon

6  material terms for a class-wide settlement in the Pochis action.  Case No. 11-CV-00721-LHK, ECF

7  No. 11.  However, the parties in the Pochis case never reached a final agreement and never filed a

8  motion for preliminary approval of the class settlement.  In contrast, on July 13, 2011, the

9  Ferrington Plaintiffs filed a motion for preliminary approval of the class settlement in the instant

10  litigation.  Case No. 10-CV-01455-LHK, ECF Nos. 86-87.

11  **B.  Terms of the Settlement**

12      In anticipation of the preliminary approval hearing, the parties in the Ferrington case

13  provided the Court with the proposed class settlement (the "settlement").  The settlement defined

14  the class as:

> [A]ll persons in the United States who during the Class Period purchased software
> from McAfee's website and subsequently accepted an Arpu pop-up advertisement
> offer presented at the conclusion of the McAfee transaction were charged by
> Arpu for the product, service or software sold in the Arpu pop-up.

17  *See* Settlement Agreement, ECF No. 88-1, ¶ 2.24.  Notably, the class definition in the settlement is

18  broader than the class definition provided for in the previously filed complaints.  In the TAC, the

19  class definition limited the class to those individuals who *did not* download the Arpu software as a

20  result of the pop-up ad.  Specifically, the class definition in the TAC was limited to class members

21  who were charged by Arpu for "unused and unclaimed software, products and services."  TAC ¶ 5,

22  ECF No. 84-1.  In contrast, the class definition in the settlement agreement contains no such

23  limitation.  In the settlement agreement, the class is defined to include both those individuals who

24  had, in fact, downloaded the Arpu software, and those who had not.  As a result, as the parties

25  conceded at the preliminary approval hearing, the Ferrington settlement class is now essentially

---

[2] Class counsel has not been appointed in the Pochis litigation, but for ease of reference the Court
refers to the attorneys in the putative Pochis litigation as "class counsel."

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

1    identical to the class defined in the Pochis litigation.  Prelim. Approval Hr'g Tr. at 25 ("Tr."), ECF

2    No. 112-2.

3         Defendants set aside $1.2 million, the entire amount generated by the pop-up ad program

4    with Arpu, to pay claims made by class members.  Under the terms of the settlement, class

5    members are given the option to elect between two types of benefits: either a cash benefit, or a free

6    license to McAfee software.  The "Cash Settlement Benefit," provides either: (a) for those class

7    members who were billed by Arpu monthly, five dollars for each month the claimant paid charges

8    to Arpu for software, up to a maximum of thirty dollars per claim, and (b) for those class members

9    who were billed annually for an annual software license, five dollars for each prepaid month, up to

10   a maximum of thirty dollars per claim.  The "Software Settlement Benefit" provides a software

11   license for the current version of McAfee Family Protection (which sells at a retail price of

12   $49.99/year) for either: (a) six months for those class members who paid charges for fewer than six

13   months, or (b) 12 months for those class members who paid six months or more of charges.  *See*

14   Settlement Agreement ¶ 4.1, ECF No. 88-1.

15        The settlement agreement provides that each class member will receive either the Cash

16   Settlement Benefit or the Software Settlement Benefit for each separate software for which they

17   can prove they paid.  As a further condition of receiving any settlement benefit, the claims process

18   requires claimants to attest that they did not, in fact, download the Arpu software available through

19   the program.  Thus, the benefits payable to the class provide a restitutionary remedy only to those

20   class members who did not receive the Arpu software for which they had paid.  The class members

21   who actually downloaded the Arpu software are not entitled to any settlement benefits.  Any funds

22   that are not paid to the class members will revert back to the Defendants.

23        In exchange for the benefits described above, class members agree to release Defendants

24   from all federal and state claims that were or could have been raised in this action, upon final

25   approval by the Court.  *Id.* ¶ 10.2.[3]

26   _____

27   [3] The release language states: "Upon Final Approval, Plaintiffs and their assignors, predecessors, successors, and assigns shall release and forever discharge the Released Parties from and shall be forever barred from instituting, maintaining, or prosecuting: (a) any and all claims, liens, demands,

28   actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether

5

In addition to the release of claims and the scope of the class definition contained in the Settlement Agreement, the parties in the Ferrington case also agreed to binding arbitration, subject to this Court's approval, before a neutral third party as to the amount of attorneys' fees and expenses that class counsel would seek from the Court. The parties were unable to agree upon an attorneys' fee award, but were able to agree that the fee award should be between $250,000 and $675,000. The arbitrator issued an opinion on July 14, 2011, determining that class counsel should be awarded the total sum of $350,000 for fees and costs. *See* Arbitrator's Decision and Order on Attorneys' Fees ("Arbitrator Decision") at 10, Friedman Decl. Ex. 7, ECF No. 106-7. These fees and costs were to be awarded separate and apart from the claims fund made available by Defendants to pay for the benefits to the class. Although the Arbitrator Decision discussed a possible claims rate as high as 50 percent, the parties have indicated that the prevailing rule of thumb with respect to consumer class actions is 3-5 percent. *See* Arbitrator Decision at 3; *see also* Mem. In Supp. of Pl's Mot. for Attys' Fees, Expenses and Serv. Payments at 3, ECF No. 115.

---

legal or equitable or otherwise, that actually were, or could have been, asserted in the Litigation, based upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Litigation, that Plaintiffs have had in the past, or now have, related in any manner to the Released Parties' products, services, software or business affairs; (b) any and all other claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, that Plaintiffs have had in the past or now have, related in any manner to any and all products, services, software or business affairs of Defendants, the Released Parties, and, in their representative capacities, all of Defendants' past and present officers, directors, agents, designees, attorneys, employees, parents, subsidiaries, associates, divisions, affiliates, heirs, and all successors or predecessors in interest, assigns or legal representatives. Plaintiffs expressly understand and acknowledge that it is possible that unknown losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and Defendants with the knowledge of the possibility of such unknown claims, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs expressly waive all provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States or any state or territory thereof, or of the common law). Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (c) Each and every term of this section shall be binding upon, and inure to the benefit of the Released Parties, and any of their successors and personal representatives, which persons and entities are intended to be beneficiaries of this section.

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

### C.  Preliminary Approval

The Court held a hearing on the preliminary approval of the class settlement on August 4, 2011.  At the hearing, Plaintiff Pochis, represented by James Patterson, expressed concern with several aspects of the claims process in the Ferrington settlement.  Specifically, Plaintiff Pochis argued that the claims form was too onerous for class members because it required claimants to provide proof of purchase in order to receive a minimal amount of money.  Tr. at 9, 26.  Plaintiff Pochis also expressed concern that the $1.2 million pay out would not compensate class members who downloaded the software.  Tr. at 10.  At the conclusion of the hearing, Plaintiff Pochis's counsel stated that "[i]f we can work out the claim form, which it sounds like the court is telling them to make a lot of the changes that we had problems with, then we probably wouldn't object to the settlement."  Tr. at 60.

The Ferrington Plaintiffs filed additional documentation after the hearing showing that those who downloaded the Arpu software and were not eligible for the settlement benefits had to engage in additional steps to download the software.  According to the additional filings, the individuals who downloaded the software were sent an e-mail that indicated that they would be billed at the end of the 30-day free trial period, and that McAfee was partnering with a third party.  Schuck Decl. ¶¶ 7-8; Ex. C, ECF No. 97.  Customers had to affirmatively take extra steps to download the software.  *Id.* ¶ 8.  Thus, the Ferrington class counsel argued that this subclass of individuals was not actually harmed by the program.  On August 16, 2011 the Court conditionally certified a class and granted preliminary approval of the class settlement.  ECF Nos. 100-101.

### D.  The Pochis Objector

Despite the issues discussed, and apparently resolved, at the preliminary approval hearing, on November 17, 2011, Plaintiff Pochis filed an objection to the final approval of the Ferrington settlement.  Plaintiff Pochis primarily objected to the proposed settlement because: (1) the settlement denies benefits to a "large number of class members," and (2) the class representatives do not fairly and adequately protect the interests of the class.  *See* Objection of Ken Pochis to

7

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1  Proposed Settlement 6-9, ECF No. 109.  Additionally, Plaintiff Pochis raised concerns regarding

2  the class notice, the claims process, and the attorneys' fees awarded.

3  ## II.   Legal Standard and Analysis

4  Although the proposed settlement before the Court is a privately negotiated agreement

5  between the Plaintiffs and Defendants, the Federal Rules of Civil Procedure have vested with the

6  court the duty to oversee the final approval of all certified class settlements.  Because class

7  settlements necessarily bind individuals who have not participated in the litigation, "judges have

8  the responsibility of ensuring fairness to all members of the class presented for certification."

9  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  "Especially in the context of a case in

10  which the parties reach a settlement agreement prior to class certification, courts must peruse the

11  proposed compromise to ratify both the propriety of the certification and the fairness of the

12  settlement."  *Id.*

13  First, the district court must assess whether a class exists under Federal Rule of Civil

14  Procedure 23(a) and (b); "[s]uch attention is of vital importance, for a court asked to certify a

15  settlement class will lack the opportunity, present when a case is litigated, to adjust the class,

16  informed by the proceedings as they unfold."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620

17  (1997).  Second, the district court must carefully consider "whether a proposed settlement is

18  fundamentally fair, adequate, and reasonable," pursuant to Federal Rule of Civil Procedure 23(e);

19  recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts,

20  that must be examined for overall fairness."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th

21  Cir. 1998) (citations omitted).  With due respect to the rights of the parties to compromise and

22  reach a private resolution to litigation, the Court has serious concerns regarding the settlement

23  agreement proposed by the parties.  Ultimately, the Court finds that the agreement does not pass

24  muster under either the class certification requirements presented in Rule 23(a), or under the

25  standard for class settlement approval under Rule 23(e), and so declines to grant Plaintiffs' motion

26  for final approval of the class settlement.

27  ### A.  Class Certification

28

8

The Supreme Court has instructed that "undiluted, even heightened, attention" to class certification is necessary in a settlement context. *Amchem Prods., Inc.*, 521 U.S. at 620. The "threshold task" of approving a certified class settlement is to ensure that the proposed settlement class satisfies all the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Hanlon*, 150 F.3d at 1019. Additionally, the proposed class must also be maintainable under Rule 23(b)(1), (2), or (3). *Id.* at 1022. A proposed class must meet each of the Rule 23(a) requirements, and failure to meet any one of the requirements is fatal to certification of the class. Here, because the proposed class fails the commonality, typicality, and adequacy of representation requirements, the class is not certifiable for settlement purposes.

### 1. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality exists where class members' 'situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (quoting *Hanlon*, 150 F.3d at 1019).

The parties' proposed settlement consists of two distinct subclasses: those who downloaded the Arpu software ("the downloaders"), and those who did not ("the non-downloaders"). The parties have asserted that there are no records indicating which of the approximately 57,000 class members fall into each of the subclasses. It is not even possible to know, therefore, what percentage of the settlement class is entitled to recover the settlement benefits, and what percentage is not entitled to recover anything under the terms of the agreement. Fundamentally, the situations of the two subclasses are distinct because they raise different claims. Those who did not download the Arpu software claim that they were charged for something that they never received. In contrast, the downloaders are in a different position. Some class members, like Pochis, may have

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   been misled into believing that the software was provided by McAfee; never intended to purchase

2   the software despite the download; or did not intend to transfer their credit or debit card

3   information to a third party.  On the other hand, other downloaders may have knowingly and

4   purposefully downloaded the Arpu software with the intention to pay the monthly charges after the

5   30-day free trial period ended.  Thus, the claims of the subclasses are not common.

6                          **2.   Typicality**

7          The typicality inquiry under Rule 23(a)(3) requires that Plaintiffs establish that "the claims

8   or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R.

9   Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury,

10  whether the action is based on conduct which is not unique to the named plaintiffs, and whether

11  other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts*

12  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotation marks omitted).

13  "Typicality refers to the nature of the claim or defense of the class representative, and not to the

14  specific facts from which it arose or the relief sought."  *Id.* (internal citation and quotation marks

15  omitted).

16         The class representatives, Melissa Ferrington, Cheryl Schmidt, Christopher Bennett, and

17  Christi Hall, are all members of the subclass who did not download the Arpu software.  None of the

18  class representatives is a member of the downloader subclass.  Because the class representatives

19  are entitled to recover under the terms of the settlement, while the remaining class members may

20  not, the claims of the named Plaintiffs are not typical of the claims of the class as a whole.

21  Accordingly, Plaintiffs have not established the typicality requirement.

22                          **3.   Adequacy**

23         Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

24  interests of the class."  "Without adequate representation, a court order approving a claim-

25  preclusive class action settlement agreement cannot satisfy due process as to all members of the

26  class."  *Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010) (citing *Phillips Petroleum Co. v.*

27  *Shutts*, 472 U.S. 797, 812 (1985)).  "Resolution of two questions determines legal adequacy: (1) do

28

10

United States District Court
For the Northern District of California

1    the named plaintiffs and their counsel have any conflicts of interest with other class members and

2    (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

3    class?"  *Hanlon*, 150 F.3d at 1020.

4         The subclass of individuals who did not download the Arpu software has been capably

5    represented in this action by both named plaintiffs and class counsel.  Yet, no class representatives

6    have been appointed to represent the interests of the downloader subclass whose claims are

7    released as a result of this settlement agreement.  Moreover, counsel has not been assigned to

8    represent the interests of this subclass.  Such a state of affairs presents a conflict of interest: the

9    subclasses have conflicting interests regarding how the settlement fund should be allocated

10   amongst them.  Thus, the Court cannot say that the interests of all class members have been

11   adequately represented by the named plaintiffs and class counsel in negotiating the terms of the

12   settlement agreement.  *See id.* (explaining that the Supreme Court "instructs [the district court] to

13   give heightened scrutiny to cases in which class members may have claims of different strength");

14   *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 797 (3d

15   Cir. 1995) ("[A] judge must focus on the settlement's distribution terms (or those sought) to detect

16   situations where some class members' interests diverge from those of others in the class.  For

17   example, a settlement that offers considerably more value to one class of plaintiffs than to another

18   may be trading the claims of the latter group away in order to enrich the former group.").

19   Accordingly, Plaintiffs have failed to establish the requirements necessary for the Court to certify

20   the proposed class[4] for settlement purposes.

21              **B.  Fair, Adequate, and Reasonable Settlement**

22         Plaintiffs must also establish that the settlement complies with Rule 23(e), which requires

23   court approval for the settlement of any class action.  In order to be approved, a settlement must be

---

[4]  Because the Court concludes that the Rule 23(a) requirements have not been met, the Court need
not determine whether the requirements of Rule 23(b) have also been met.  However, the Court
notes that a recent Ninth Circuit decision may impact whether or not a nationwide class may be
certified under California state consumer protection laws.  *See Mazza v. Am. Honda Motor Co.,
Inc.*, 666 F.3d 581 (9th Cir. Jan. 12, 2012).  The Court takes no position on this issue at this time,
but notes that should the parties decide to pursue a negotiated settlement of class claims, they
should take into account the controlling Ninth Circuit law when crafting a settlement.

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1    "fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

2    1375 (9th Cir. 1993).  The factors in a court's fairness assessment will naturally vary from case to

3    case, but courts generally weigh: (1) the strength of the plaintiff's case; (2) the risk, expense,

4    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

5    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

6    the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

7    governmental participant; and (8) the reaction of the class members of the proposed settlement.

8    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi*, 8 F.3d at 1375.

9            Although several of the *Churchill* factors -- including the risk and expense of continued

10   litigation, the fact that through discovery the parties have developed a factual record, and the

11   experience and views of capable counsel favor granting the settlement -- favor granting final

12   approval, the Ninth Circuit has indicated that applying these factors mechanically is not sufficient

13   to determine whether final approval is appropriate.  *In re Bluetooth Headset Prods. Liability Litig.*,

14   654 F.3d 935, 947 (9th Cir. 2011).  Ultimately, the Ninth Circuit has explained that the district

15   court, in determining whether a certified class settlement is "fair, adequate, and reasonable," must

16   ensure that the agreement is not the product of fraud, overreaching by, or collusion among, the

17   negotiating parties.  *Id.*; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir.), *cert.*

18   *denied sub nom. Hoffer v. City of Seattle*, 506 U.S. 953 (1992).  When the class settlement precedes

19   formal, adversarial class certification, the approval of the settlement requires a higher standard of

20   fairness.  *Hanlon*, 150 F.3d at 1026; *see also In re Bluetooth*, 654 F.3d at 946 ("Prior to formal

21   class certification, there is an even greater potential for a breach of fiduciary duty owed the class

22   during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny

23   for evidence of . . . conflicts of interest than is ordinarily required under Rule 23(e).").

24                            **1.   Release of Claims**

25           "Basic to [the process of deciding whether a proposed settlement is fair, reasonable and

26   adequate] * * * is the need to compare the terms of the compromise with the likely rewards of

27   litigation."  *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009);

28

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Settlements in which the class or

2   a significant subclass will receive no benefit have been rejected by courts because such agreements

3   are not fair, adequate, and reasonable for all class members.  *See, e.g., In re TD Ameritrade*

4   *Accountholder Litig.*, 266 F.R.D. at 423; *Molski v. Gleich*, 318 F.3d 937, 953-54 (9th Cir. 2003),

5   overruled on other grounds by *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 617 (9th Cir. 2010),

6   rev'd by *Wal-Mart v. Dukes, Inc.*, 131 S.Ct. 2541 (2011); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d

7   781, 782-3 (7th Cir. 2004); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880-82 (7th

8   Cir. 2000).  Similarly, disparate treatment between class members increases the likelihood that the

9   settlement agreement does not meet the Rule 23(e) standard.  *See Hanlon*, 150 F.3d at 1027; *In re*

10  *General Motors*, 55 F.3d at 807 ("One sign that a settlement may not be fair is that some segments

11  of the class are treated differently from others.").

12          Under the terms of the settlement agreement here, only the subclass who did not download

13  the Arpu software will receive some form of compensation.  The parties explained at the fairness

14  hearing that the settlement benefits are intended to compensate class members for charges that

15  were improperly posted to their credit or debit cards and for which they received no product.  Thus,

16  those individuals who downloaded the software are not entitled to the negotiated restitutionary

17  remedy and will receive nothing from the class settlement.

18          Ferrington Plaintiffs argue that the settlement is reasonable to all members of the Ferrington

19  class and that the disparity in benefits between the subclasses is attributable to the relative strengths

20  of the subclasses' respective claims.  Ferrington Plaintiffs argue that the downloader subclass

21  received the software for which they paid.  Moreover, because the downloaders were required to go

22  through additional steps before downloading the product, their purchases were not inadvertent.

23  Thus, the members of the subclass who downloaded the software were not harmed, and therefore,

24  have no viable claims against the Defendants that would justify settlement benefits.  From

25  Ferrington Plaintiffs' perspective, the terms of the compromise for this subclass are perfectly

26  justified because their claims are worthless.

27

28

13

**United States District Court**
For the Northern District of California

1       While the Court agrees that the claims of the downloader subclass are relatively weak, that

2 does not necessarily mean that the downloaders suffered *no* compensable harm.  The downloader

3 subclass may still have claims arising out of the McAfee program that will be extinguished through

4 the class settlement here.  For example, the Pochis Complaint alleges that he and other class

5 members were misled into downloading the software, believing it to be a McAfee product and

6 believing it to be a free 30-day trial.  Pochis Compl. ¶ 18-19.  Pochis claims that he gave McAfee

7 his debit card information, but never intended McAfee to transmit this information to third parties.

8 *Id.* ¶¶ 19; 30-32.  Additionally, Pochis claims that when he realized that his debit card was being

9 charged for the software that he had purchased and downloaded, he attempted to contact McAfee

10 regarding the disputed charge.  *Id.* ¶ 33.  Pochis claims that McAfee responded that it had no

11 affiliation with the Arpu software, and "that it would never had [sic] given his billing information

12 to a third party."  *Id.*  Pochis claims that when he attempted to discontinue the monthly charges, he

13 was unable to contact anyone at Arpu to help him and that the only way to discontinue the charges

14 was to cancel his debit card.  *Id.* ¶ 35.

15       Pochis has alleged that the scheme perpetrated by McAfee and Arpu, as well as a third

16 defendant, violates EFTA, among other causes of action.  EFTA establishes the rights, liabilities,

17 and responsibilities of participants (consumers, financial institutions, and intermediaries) in

18 electronic fund transfer systems.  *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1181 (S.D.

19 Cal. 2010) (citing 15 U.S.C. § 1693).  EFTA governs, for example, automatic direct payroll

20 deposits, transactions at automated teller machines, and debit card purchases at retail or online

21 shops.  *See id.* (citing 15 U.S.C. § 1693a(6), (7)).  EFTA provides that a "preauthorized electronic

22 fund transfer from a consumer's account may be authorized by the consumer only in writing, and a

23 copy of such authorization shall be provided to the consumer when made."  15 U.S.C. § 1693e(a).

24       Similar claims have been recognized as viable in other cases alleging similar factual

25 circumstances.  For example, in *Easysaver*, the district court denied, in part, defendants' motion to

26 dismiss plaintiffs' EFTA and CLRA claims.  In *Easysaver*, plaintiffs were redirected to a third

27 party website offering a discount on future purchases.  Rather than receiving a "free gift," however,

28

14

**United States District Court**
For the Northern District of California

customers were enrolled in a separate discount scheme for which they were charged monthly. 737

F. Supp. 2d at 1164. Like Pochis, in *Easysaver*, efforts to have the charges reversed were

unsuccessful and the plaintiff had to close her bank account to stop the unauthorized charges. *See*

*id*. In *Easysaver*, the district court concluded that the EFTA claim survived a motion to dismiss

because the electronic monthly payment was either not pre-authorized or violated the provision of

EFTA requiring the customer be provided with a copy of the authorization to deduct funds. *Id*. at

1182-83. Additionally, plaintiff's EFTA claim that the defendant continued to withdraw funds

after plaintiff called to cancel her membership also survived a motion to dismiss. It does not

appear that the EFTA claim turns on whether Plaintiffs receive a benefit from the transaction, but

rather whether the authorization and notice provisions of the statute are met. *See id.*

      Thus, EFTA provides for statutory damages, which, while minimal, may still provide

potential relief for those who downloaded the Arpu software and are barred from seeking relief

from Arpu and McAfee[5] under the terms of the Ferrington settlement. *See* 15 U.S.C. § 1693m(a).

It is troubling, at the very least, that the subclass of individuals who downloaded the Arpu software

will necessarily be releasing all of their claims without any compensation despite the pending

Pochis lawsuit, and despite the potential viability of some of their claims. "Such [claims] would

not be a sure bet, but colorable legal claims are not worthless merely because they may not prevail

at trial." *Mirfasihi*, 356 F.3d at 783.

      Additionally, the actions of Defendants in the Pochis litigation appear to undermine the

Ferrington Plaintiffs' arguments that the claims of the downloader subclass are worth no

consideration. The parties in the Pochis litigation engaged in negotiations and agreed upon

material terms for a class-wide settlement. Even without the benefit of knowing the terms of the

settlement agreement in the Pochis litigation, the Court can safely say that the Pochis plaintiffs

were likely to settle for *some* consideration. This certainly suggests that, regardless of the strength

---

[5] Under *Easysaver*, it is not clear that the Pochis class can state a claim against McAfee (as opposed to Arpu) because the transfer of funds that McAfee conducted for the initial purchase of McAfee software was arguably "authorized." *See In re Easysaver*, 737 F. Supp. 2d at 1181. Moreover, EFTA does not apply to credit-based transactions. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010). Accordingly, those members of the Pochis class whose *credit cards* are wrongly charged (as opposed to debit cards) likely do not have a viable EFTA claim.

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

1    of the claims, extinguishing the Pochis class's claims for no consideration would be unfair and

2    unreasonable.

3         A similar set of circumstances arose in the settlement presented in *Mirfasihi*, in which a

4    negotiated class settlement contained a provision that provided benefits for only one subclass.  The

5    other subclass received nothing, while surrendering all its members' claims against the defendant.

6    The Seventh Circuit reversed the district court's grant of final approval of the class settlement, in

7    part because the agreement released all of the claims of a subclass for essentially no consideration.

8    *See* 356 F.3d at 783-85.  The Seventh Circuit concluded that while the subclass that was to receive

9    no consideration may not have had strong claims, the claims were not worthless, and therefore the

10   settlement could not stand.  *Id.* at 783, 786.  Likewise here, the claims of the downloader subclass

11   are not so meritless that releasing the claims for no consideration is fair and reasonable.

                    **2.  Other Factors**

12

13        In addition, the Ninth Circuit has identified other subtle signs that the proposed settlement

14   does not adequately protect the interests of all class members.  These signs include (1) "when

15   counsel receive a disproportionate distribution of the settlement," and (2) "when the parties arrange

16   for fees not awarded to revert to defendants rather than be added to the class fund."  *In re*

17   *Bluetooth*, 654 F.3d at 947; *see also Mirfasihi*, 356 F.3d at 785.  Several of these red flags are

18   present in the settlement agreement here and convince the Court that final approval of the proposed

19   settlement agreement is not warranted.

20        First, class counsel[6] will receive a disproportionately large percentage of the total amount

21   that Defendants have agreed to pay to settle this lawsuit.  The parties selected a third party neutral

22   to resolve the fee dispute and provide a binding arbitration award between $250,000 and $675,000.

23   The parties apparently justified the attorneys' fee range based in part on the assumption that in a

24

---

25   [6]  Because Plaintiffs' motion for final approval is denied, class counsel's motion for attorneys' fees
     is denied as moot.  *See In re Bluetooth*, 654 F.3d at 941.  The Court cannot foresee whether the
26   parties may seek to reach a renewed settlement, and whether a renewed motion for attorneys' fees
     would meet the standards for reasonable attorneys' fee under prevailing California law.  As it
27   stands now, however, the amount paid to class counsel, in relation to the amount paid to class
     members, is disproportional.  Before the Court is willing to grant a fee request, the proportionality
28   of fees paid to the class must be increased.

16

consumer class action the participation rate could be as high as 50 percent.  The arbitrator

determined that, in light of the range of the fee award, the total fees accrued by Plaintiffs, and the

specific facts and circumstances of the case, a total attorneys' fee award of $350,000 was

appropriate.[7]  *See* Arbitrator Decision at 10.

        The total amount that Defendants have agreed to set aside for claims to members of the

class is $1.2 million.  On April 5, 2012, the parties provided updated claims information.  *See*

Parties' Updated Claims Information, ECF No. 117.  Confusingly, in the parties' updated claims

information, the parties represent that there are 57,238 class members.  *Id.* at 2.  By contrast, in the

briefing on the motion for final approval, the parties asserted that the class size was approximately

66,000 members.  *See* Mot. for Final Approval at 3, 13, 16, ECF No. 102.  The parties' updated

claims information states that the claims rate is approximately 3.8%.  Parties' Updated Claims

Information at 2, ECF No. 117.  However, if the actual class size is 66,000 members, the claims

rate could be lower (3.3%).  The class notice date was September 19, 2011, and the deadline to

submit claim forms was January 14, 2012.  *See* Settlement Website,

http://www.arpumcafeepopupad.info/.  Nonetheless, the Court notes that the participation rate (and

thus the claims pay out) could *theoretically* increase because, pursuant to section 2.7 of the

settlement agreement, the claims period is open until 30 days after final settlement approval.

However, based on the notice to the class and the deadline for submitting claim forms, it is unlikely

that the claims rate will significantly increase.

        The parties' April 5, 2012 updated claims information states that the total claims payable to

the class is $67,825 ($43,675 in cash + $23,350 valued for 12 month licenses + $800 valued for 6

month licenses) in comparison to the $350,000 attorneys' fee award.  Thus, the attorneys' fee

award is more than 83% percent of the total amount paid by Defendants to settle this lawsuit.  The

---

[7]  The Ninth Circuit has also indicated that a "clear sailing" agreement, where the Defendant agrees
not to oppose Plaintiffs' counsel's motion for attorneys' fees, is an additional indication that the
proposed settlement is not fair, adequate, and reasonable.  *See In re Bluetooth*, 654 F.3d at 947.  In
this case, the parties submitted their fee dispute to a third party neutral.  However, the arbitrator
was bound by the range agreed upon by the parties, and upon resolution of the dispute before the
mediator, Defendants agreed not to oppose the fee application.  *See* Settlement Agreement ¶ 8.1,
ECF No. 88-1.  The terms of the settlement agreement do not contain a pure "clear sailing"
arrangement.

17

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

attorneys' fee award far exceeds the Ninth Circuit "benchmark" of 25% for a reasonable fee award, and represents a disproportionate distribution of the settlement funds.  *Cf. Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Moreover, the parties should have foreseen that the settlement would produce a situation in which the attorneys' fees comprised a disproportionate distribution of the settlement.  The parties conceded at the hearing that they did not expect the claims rate to reach the 50 percent benchmark cited in the arbitrator's fee decision.  Instead, Plaintiffs asserted that a participation rate of 3 to 5 percent would be a "good claims rate" in a consumer class action.  Under the settlement terms, class members are entitled to receive $5 to $30 in cash depending upon how many months the class member was charged for the Arpu software.  Assuming a 3 percent claims rate, the total amount paid to the class would be anywhere from $8,550 (57,000 class members x 3% participation x $5) to $51,300 (57,000 class members x 3% participation x $30).  Assuming a 5 percent claims rate, the total paid to the class would be anywhere from $14,250 (57,000 class members x 5% participation x $5) to $85,500 (57,000 class members x 5% participation x $30).  Alternatively, class members also have the option to elect a McAfee product, valued up to $49.99, as an in-kind benefit.  Assuming a 3 to 5 percent participation rate based solely on the election of the McAfee product,[8] the value to the class of the settlement benefit would be between $42,750 (57,000 class members x 3% participation x $25) to $142,500 (57,000 class members x 5% participation x $50).  Thus, assuming a 3 to 5 percent participation rate, the negotiated settlement was likely to produce class benefits worth somewhere between $8,550 and $142,500.

Plaintiffs have indicated that the average subscription length for class members was 3.7 months.  Pls' Mem. In Supp. of Mot. for Prelim. Approval at 10, ECF No. 87.  Because the maximum benefits require subscription lengths of six months or longer, much of the class was never eligible for the maximum benefits, and the total settlement award received by the class was unlikely to ever reach $142,500.  Thus, the parties should have foreseen that the settlement was

---

[8]  In calculating the value of the in-kind benefit, the Court assumed that the value of the product was either $49.99 for a full year license for those class members who paid charges for a full year, or $24.99 for the value of a half year license for those class members who paid charges for less than six months.

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

likely to result in a disproportionate attorneys' fee award. In light of the actual disparity between the class award and the requested attorneys' fee award, and the fact that the structure of the settlement was likely to produce such a result, the Court is concerned that the settlement, taken as a whole, is not fair, reasonable, and adequate. *See In re Bluetooth*, 654 F.3d at 948-49 ("Even when technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'") (citations omitted); *Hanlon*, 150 F.3d at 1021 (explaining that a subtle sign that the product of the negotiations does not meet the requirements under Rule 23(e) arises "when counsel receive a disproportionate distribution of the settlement").

A second, related concern regarding the settlement arises from the residual funds that remain after all of the claims are distributed to class members. The parties confirmed at the final approval hearing that the settlement is, in fact, a claims-made settlement with no minimum distribution. In other words, only claims are paid, and any remainder will revert to Defendants. A reversion provision, like the one contained in the agreement here, is yet another indication that the proposed agreement does not meet the standards set forth in Rule 23(e). *See Mirfasihi*, 356 F.3d at 785 ("[T]he reversion of unclaimed funds to the putative wrongdoer" is a "questionable feature" of a certified class settlement agreement.).

Class action settlements can be a great benefit to consumers because they allow suits for damages in cases that would otherwise be economically infeasible to prosecute. *See In re General Motors*, 55 F.3d at 784. Especially in a case such as this, where the Ferrington class has meritorious claims and a settlement would allow consumers to be compensated for questionable business practices by the Defendants, the Court is reluctant to deny final approval of the class settlement. Nonetheless, the settlement presents many features that the Ninth Circuit has indicated suggest that the proposed settlement does not meet the standard set forth in Rule 23(e). Granting final approval would require an unknown subset of the class to relinquish its claims against Defendants for no consideration. Moreover, additional features of the proposed settlement, including a low rate of claims participation, a small claims pay out, a disproportionately large

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

1    attorneys' fee award, and a reversion clause, convinces the Court that final approval of the class

2    settlement is not appropriate here.

3         As an alternative to denying final approval of the class settlement, Pochis requests that the

4    class be redefined to exclude those class members who downloaded the Arpu software.  Objection

5    of Ken Pochis to Proposed Settlement at 11-12, ECF No. 109.  The Court, however, has no

6    authority to do so.  Courts do not have the ability to "delete, modify or substitute certain

7    provisions.  The settlement must stand or fall in its entirety."  *Browning v. Yahoo!, Inc*., No. 04-

8    CV-01463, 2006 WL 1390555, at *1 (N.D. Cal. May 19, 2006) (citing *Hanlon*, 150 F.3d at 1026).

9    Therefore, the Court is compelled to deny Plaintiffs' motion for final approval of the class

10   settlement.

11        Nonetheless, guidance may be useful here to aid the parties in attempting to reach

12   resolution of this case.  Many of the concerns with the proposed settlement identified in this Order

13   would be addressed if the class definition had conformed to the class definition in the TAC, which

14   excluded from the definition of the class those individuals who had actually downloaded the Arpu

15   software.[9]  Alternatively, to the extent the parties wish to reach a global settlement in both this case

16   and the related class action in which Pochis is a named plaintiff, the parties must take care to

17   ensure that all subclasses are adequately represented and to give adequate consideration to all

18   members of each subclass.

19                    **C.  Conclusion**

20        The Court recognizes that real costs to the parties necessarily flow from the denial of final

21   approval of a class settlement, and so does not deny Plaintiffs' motion lightly.  *Staton*, 327 F.3d at

22   952 ("Judicial review also takes place in the shadow of the reality that rejection of a settlement

23   creates not only delay but also a state of uncertainty on all sides, with whatever gains were

24   potentially achieved for the putative class put at risk.").  While "[d]enial of final approval of the

25   proposed settlement presents an unusual situation," *In re TD Ameritrade Accountholder Litig.*, 266

---

[9]    In light of the conclusion to deny final approval, the Court need not address Pochis's objections
regarding the notice and claims procedures.  It is worth noting, however, that the low claims rate
discussed at the final approval hearing could be affected by a claims process that is unnecessarily
onerous in comparison to the limited benefit received by the class members.

20

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE

**United States District Court**
For the Northern District of California

1   F.R.D. at 424, it is necessary here to protect the rights of the absent class members of the subclass

2   of claimants who downloaded the Arpu software and who are essentially releasing their claims

3   against McAfee and Arpu for no consideration.  In light of the reservations identified above, the

4   Court cannot find that the proposed class may be properly certified or that the proposed settlement

5   is fair, reasonable and adequate.  Accordingly, the motion for final approval is DENIED without

6   prejudice.

7           Additionally, the Order conditionally granting class certification for the purposes of the

8   settlement agreement is set aside.  *See* ECF No. 101.  A further case management conference is set

9   for May 23, 2012 at 2:00 p.m.  The parties shall come prepared to discuss scheduling and other

10   matters.

11   **IT IS SO ORDERED.**

12   Dated: April 6, 2011

13   LUCY H. KOH
     United States District Judge

Case No.: 10-CV-01455-LHK
ORDER DENYING FINAL APPROVAL WITHOUT PREJUDICE