1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| MELISSA FERRINGTON and CHERYL SCHMIDT,<br><br>                              Plaintiffs,<br><br>        v.<br><br>McAFEE, INC. and ARPU, INC.,<br><br>                              Defendants. | Case No.: 10-CV-01455-LHK<br>and related case 11-CV-0721-LHK<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING ATTORNEY'S FEES** |

## I.      BACKGROUND

In this case, Melissa Ferrington, Cheryl Schmidt, and Ken Pochis ("Plaintiffs") challenged a program pursuant to which class members purchased Defendant McAfee, Inc.'s security products and were then led to unknowingly enroll in subscription-based services offered by third party Arpu, Inc. Arpu received class members billing and credit records from McAfee, and charges appeared on class members credit and debit card statement under cryptic names that gave the impression that the charges related to McAfee purchases.

Ms. Ferrington and Ms. Schmidt (the "Ferrington Plaintiffs") filed their Complaint against McAfee in April of 2010 raising *inter alia* claims under California's Unfair Competion Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*  and the Consumer Legal Remedies Act

("CLRA"), Cal. Bus. & Prof. Code §§ 1750, *et seq*.  McAfee moved to dismiss the action in June

2010.  Counsel for the Ferrington Plaintiffs ("Ferrington Counsel") vigorously opposed this motion

and prevailed with respect to the Ferrington Plaintiffs' claims under the unfair and fraudulent prong

of the UCL.  The Ferrington Plaintiffs subsequently sought leave to file an amended complaint to

address the issues with respect to their other claims.  Ferrington Counsel then engaged in discovery

with McAfee.  Ferrington Counsel was required to take a number of steps, including sending letters

and calling counsel for McAfee, in order to compel McAfee to comply with Ferrington Plaintiffs'

discovery requests.

In January 2011, Ferrington Counsel and counsel for McAfee engaged in Court-ordered

mediation.  This mediation was unsuccessful, and Ferrington Counsel continued to conduct discovery

on behalf of the class.  Negotiations continued, and in April 2011, Ferrington Plaintiffs, McAfee, and

Arpu[1] executed a Memorandum of Understanding (the "Original Settlement").  Under the Original

Settlement, class members who submitted documentary proof showing that they had clicked on an

Arpu pop-up add while on McAfee's website were given their choice of cash benefits, with a

maximum of $30.00, or a six or twelve month license for the current version of McAfee Family

Protection software.   Significantly, the terms of the Original Settlement precluded class members

from receiving a benefit if the class members actually downloaded Arpu's software.  The Original

Settlement was subsequently submitted to the Court for preliminary approval.

At the preliminary approval hearing, Counsel for Mr. Pochis ("Pochis Counsel"), appeared

and objected to the Original Settlement.  Mr. Pochis had filed his own lawsuit against McAfee and

additional parties Arpu and Iolo Technologies, LLC, in February 2011.  Unlike the Ferrington

Plaintiffs, Mr. Pochis had downloaded Arpu's software.  Thus, under the Original Settlement, Mr.

Pochis would not be eligible for any benefits.  Mr. Pochis objected to several aspects of the Original

Settlement, most importantly, the fact that it would not confer benefits upon class members who

downloaded Arpu's software but would require those class members to release their claims.  As a

---

[1] In connection with seeking preliminary approval of the Original Settlement, Ferrington Plaintiffs
sought to amend the complaint to include Arpu as a Defendant in July 2011.

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

result of Mr. Pochis' objections, the Court denied, without prejudice, final approval of the Original Settlement.

The Ferrington Plaintiffs and Plaintiff Pochis then engaged in further settlement negotiations with Defendants McAfee, Arpu, and Iolo.  As a result of these negotiations, in June 2012, the parties reached a new Settlement Agreement pursuant to which all class members, including those who downloaded Arpu's software, will receive benefits.  As set forth in the Settlement Agreement, class members will receive either the "A" Benefit or the "B" Benefit.  The "A" Benefit allows qualified class members to select a cash refund or a license for the current version of McAfee Family Protection software.  Class members who make valid claims for the "A" Benefit will receive one benefit for each Arpu software product for which they paid.  All class members who do not make a claim for and receive the "A" Benefit will receive the "B" benefit, which is their choice of either: (1) a $20 certificate good for the purchase of any McAfee services or software license, or (2) a $20 certificate good for the purchase of any Iolo services or software license.  Class members do not need to make a claim to receive the "B" benefit.

Notwithstanding the parties' ability to reach agreement with respect to settling class members' substantive claims, the parties were unable to reach an agreement with respect to attorney's fees.  The Court mediated this disagreement on November 19, 2012.  The parties agreed that Defendants would pay $350,000 in fees and costs to Ferrington Counsel and $105,000 in fees and costs to Pochis Counsel.

## II.   LEGAL STANDARD

The Court's jurisdiction in this case arises under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), which means the Court's jurisdiction is based on diversity.  *See Exxon Mobil Corp. v. Allapttah Servs., Inc.*, 545 U.S. 546, 571 (2005) ("CAFA confers federal diversity jurisdiction over class actions . . .").  "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees."  *Gezalyan v. BMW of N. Am., LLC*, 697 F. Supp. 2d 1168, 1169 (C.D.Cal. 2010) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees." (citing

3

1   *Mangold,* 67 F.3d at 1478)).  Because the Court is exercising its diversity jurisdiction and because

2   Plaintiffs' claims are based on California law, the Court applies California law in determining

3   whether the fee award request in this case is appropriate.

4          In awarding attorney's fees, California courts have often applied a lodestar/multiplier method.

5   *See Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 446 (1998) (recognizing that

6   "[t]he 'touchstone' or 'lodestar' method of determining reasonable attorney's fees was endorsed by

7   the California Supreme Court in *Serrano v. Priest*" (quoting *Serrano*, 20 Cal.3d 25 (1977)).  Under

8   the lodestar method, fees are calculated "'by multiplying the number of hours reasonably expended

9   by counsel by a reasonable hourly rate.'"  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545,

10  556 (2009) (citation omitted).  "'Once the court has fixed the lodestar, it may increase or decrease

11  that amount by applying a positive or negative 'multiplier' to take into account a variety of other

12  factors, including[:] [1] the quality of the representation, [2] the novelty and complexity of the issues,

13  [3] the results obtained, and [4] the contingent risk presented.'"  *Id.* (citation omitted).

14  **III.    ANALYSIS**

15         **A.    Fees are Authorized by California Civil Procedure Code § 1021.5**

16         Under California law, "a court may award attorneys' fees to a successful party against one or

17  more opposing parties in any action which has resulted in the enforcement of an important right

18  affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been

19  conferred on the general public or a large class of persons, (b) the necessity and financial burden of

20  private enforcement, or of enforcement by one public entity against another public entity, are such as

21  to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the

22  recovery, if any."  Cal. Civ. Proc. Code § 1021.5.

23         The Court finds that the three requirements for awarding attorney's fees under California

24  Civil Procedure Code § 1021.5 are satisfied.  Plaintiffs have obtained a "a significant benefit" in the

25  form of cash, vouchers, and certificates for approximately 57,000 class members.   Cal. Civ. Proc.

26  Code § 1021.5.  The financial burden of privately pursuing this litigation is significant such that an

27  award of attorney's fees is "appropriate."  *Id.*; *see also Ryan v. California Interscholastic Fed'n*, 94

28  Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement,

4

an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter."). Moreover, private enforcement of the rights at issue in this litigation -- *e.g.* the right not to be deceived into paying for unwanted services -- is necessary because "public enforcement of the" rights is "inadequate." *Collins v. City of Los Angeles*, 205 Cal. App. 4th 140, 154 (2012) ("Private enforcement is necessary [under requirement (b)] only if public enforcement of the 'important right affecting the public interest' . . . at issue is inadequate."). Finally, fees are not being paid from the class members' recovery. Rather, Defendants have set aside a separate amount that will be used to cover the costs of the cash, vouchers, and certificates being provided to class members.

### B.    The Fee Award Requested is Appropriate

Ferrington Counsel are seeking an award of $350,000, and Pochis Counsel are seeking an award of $105,000. The Court finds that these amounts are appropriate.

As an initial matter, Ferrington and Pochis Counsel (collectively, "Counsel") are *not* seeking to collect their entire lodestars. Notably, in a class action case such as the instant case, the prevailing party's counsel is not only eligible for its lodestar, counsel's lodestar may be enhanced by a multiplier to compensate counsel for the risks of the litigation. *See In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 ("Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.").

Here, however, Counsel are not requesting that a multiplier be applied and are, in fact, requesting only a percentage of their lodestar. The lodestar for Ferrington Counsel is $862,953.75.[2]

---

[2] The Court has reviewed Ferrington Counsel's documentation of its hours as well as Ferrington Counsel's requested hourly rates and finds both to be appropriate.

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

1    Ferrington Counsel's costs are $35,514.26.  Subtracting Ferrington Counsel's costs of $35,514.26

2    from their award of $350,000, Ferrington Counsel are receiving $314,485.74 less their lodestar.  The

3    loadstar for Pochis Counsel is $179,250.[3]  Pochis Counsel's costs are $2,355.78.  Subtracting Pochis

4    Counsel's costs of $2,355.78 from their award of $105,000, Pochis Counsel are receiving $76,605.78

5    less their lodestar.  Thus, Ferrington Counsel have agreed to receive only receiving 36% of their

6    lodestar, and Pochis Counsel have agreed to receive only 42% of their lodestar.  The Court finds that,

7    in light of the benefits obtained for the class in terms of cash, vouchers, and certificates, Counsel

8    should be granted the amounts Counsel has requested.

9         Moreover, the Court observes that, were the Court to treat this as a common fund case and

10   apply a percentage method to determine attorney's fees, the fee awarded would be well within the

11   amounts approved by the Ninth Circuit.  Where, as here, a court uses the lodestar method to

12   determine attorney's fees, a court may use the percentage method to cross-check the reasonability of

13   the fee award.  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011)

14   ("[T]he percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not

15   dwarf class recovery.'" (citation omitted)); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 557

16   (endorsing use of percentage method as a cross-check).  The Ninth Circuit has approved a benchmark

17   percentage of 25 percent for attorney's fee awards.  *Paul, Johnson, Alston & Hunt v. Graulty*

18   *("Paul")*, 886 F.2d 268, 272 (9th Cir. 1989).  Percentage awards of between 20 and 30 percent are

19   common.  *See Vizcaino*, 290 F.3d at 1047.  Here, if the Court were to calculate a common fund, the

20   total fund would be $1,624,825.  This amount is calculated by adding: (1) $70,125 (cash and software

21   licenses); (2) $1,099,700 (value of the certificates), and (3) $455,000 (attorney's fees).  The $455,000

22   award sought by Counsel is approximately 25.67% of the common fund, well within the usual range

23   for these types of cases.

24        Furthermore, the Court finds that the requested award is supported by the remaining factors

25   identified in *In re Consumer Privacy Cases*: "'[1] the quality of the representation, [2] the novelty

26

27   ———————————————

28   [3] The Court has reviewed Pochis Counsel's documentation of its hours as well as Pochis Counsel's requested hourly rates and finds both to be appropriate.

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

and complexity of the issues, [3] the results obtained, and [4] the contingent risk presented.'" *Id.*, 175 Cal. App. 4th at 556 (citation omitted).

The quality of the representation in this case was high.  Indeed, the Court notes that Ferrington Counsel was faced with a challenging Motion to Dismiss which raised a number of novel and complex issues, including issues relating to the rules governing post-transaction marketing and whether the software purchased in this case qualifies as a "good" under the CLRA.  As a result of Ferrington Counsel's work in responding to the Motion to Dismiss, the Ferrington Plaintiffs prevailed with respect to several of their claims.  Ferrington Plaintiffs then amended the Complaint in an effort to cure deficiencies relating to the two claims the Court dismissed.  Defendants negotiated the Original Settlement with the Ferrington Plaintiffs because the Ferrington Plaintiffs survived a Motion to Dismiss.

The results obtained in this case also justify awarding Counsel fees.  The settlement in this matter provides class members with a cash reimbursement, a voucher for free software, or, if a class member does not submit a claim, a certificate for $20 which may be used to purchase software from McAfee or Iolo.  Ferrington Counsel took the lead in litigating this case and were responsible for negotiating the Original Settlement with McAfee, which conferred substantive benefits on the class in the form of cash and vouchers.  Pochis Counsel similarly contributed to the results achieved in this case.  Pochis Counsel objected to the Original Settlement.  As set forth *supra*, the Original Settlement did not provide benefits for class members who actually downloaded Arpu's software.  As a result of Pochis' objection and Pochis Counsel's efforts, the final Settlement Agreement affords class members with benefits regardless of whether they downloaded Arpu's software.  Moreover, because of Pochis Counsel's objection, the Settlement Agreement provides class members with a benefit even if the class members cannot or do not submit documentary proof of their purchase.  Furthermore, Pochis Counsel's efforts led to Defendants Iolo and Arpu being included in the Settlement Agreement.  The combined efforts of Ferrington Counsel and Pochis Counsel have resulted in significant benefits being conferred upon the class.  Thus, the results obtained factor weighs in favor of granting Counsel's request for fees.

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

1    Finally, the Court observes that both Counsel litigated this case on contingency and the risks

2 were substantial.  Indeed, as discussed above, Ferrington Counsel were faced with a Motion to

3 Dismiss which raised a number of novel and complex issues.  Thus, the risk of this litigation was

4 high.  Moreover, the Court observes that, notwithstanding the risks, Ferrington Counsel invested

5 significant time in this matter, including conducting substantial discovery, litigating the Motion to

6 Dismiss, and negotiating the settlement in this matter.  Pochis Counsel similarly invested time in this

7 matter, including: objecting to the Original Settlement between the Ferrington Plaintiffs and McAfee;

8 taking steps to gain Arpu and Iolo's participation in the Settlement Agreement; and negotiating

9 amendments to the Original Settlement to ensure that all class members, including those who

10 downloaded Arpu's software, would receive benefits.  The Court therefore finds that Ferrington

11 Counsel and Pochis Counsel invested their time and efforts entirely on contingency and that this

12 factor weighs in favor of awarding Counsel attorney's fees.

13    Thus, for all the reasons set forth above, the Court finds that Counsel's fee requests are

14 appropriate and should be granted.

15    **C.    *In re HP Inkjet Printer Litig.***

16    The Court also finds that awarding Counsel their fees is consistent with the Ninth Circuit's

17 decision in *In re HP Inkjet Printer Litig. ("Inkjet")*, 716 F.3d 1173, 1175 (9th Cir. 2013).  In *Inkjet*,

18 the Ninth Circuit construed 28 U.S.C. § 1712(a).  Section 1712(a) provides that in a "coupon

19 settlement[,]… the portion of any attorney's fee award to class counsel that is attributable to the

20 award of the coupons shall be based on the value to class members of the coupons that are

21 redeemed."  In *Inkjet*, the Ninth Circuit held that the district court erred in awarding attorney's fees

22 before any coupon had been issued because the district court could not, at that point, know what the

23 redeemed value of the coupons would be.  *See id.*, 716 F.3d at 1186.

24    The instant case is distinguishable from *Inkjet* for at least the following two reasons.  First,

25 this is a cash -- not a coupon -- settlement.  Under the "A" Benefit, class members may select either a

26 cash refund or a 6 or 12 month license for the current version of McAfee Family Protection Software.

27 The 12 month software license has a cash value of $49.99.  *See McAfee Family Protection*,

28

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

1    MCAFEE.COM.[4]  It is only if a class member does not submit a proof of claim or the class member's

2    proof of claim is determined to be invalid, that the class member receives a $20 certificate.  Given

3    that virtually all class members have an option to receive either cash or a voucher for a free product,

4    this is not a coupon settlement.  *Cf Shames*, 2012 WL 5392159 at *16 (holding that CAFA did not

5    apply where settlement "offer[ed] the option between cash and vouchers for free products") (citing

6    *CLRB Hanson Indus., LLC v. Weiss & Associates, PC*, 465 F. App'x 617, 619 (9th Cir. 2012)).

7           Second, the Court observes that even the $20 certificates are not coupons.  Courts have

8    recognized that coupons are "discounts on products."  *See e.g. Shames v. Hertz Corp.*, 07-CV-2174-

9    MMA WMC, 2012 WL 5392159, at *16 (S.D. Cal. Nov. 5, 2012).  Notably, the credits offered in

10   *Inkjet* were in the amounts of $2, $5, and $6.  *See id.*, 716 F.3d at 1176.  There is no indication in

11   *Inkjet* that these credits could be used to purchase entire products.  At the June 20, 2013 hearing,

12   Counsel stated that there may have been a few, small products that could have been purchased from

13   HP's website using the $2, $5, and $6 credits.  In any event, the credits were for the most part only

14   useful as discounts on HP's products.  Thus, in *Inkjet*, class members would have been required to

15   invest additional funds with HP, the company that allegedly wronged them, in order to receive any

16   benefit from the settlement agreement.  Here, in contrast, the $20 certificates at issue may be used to

17   purchase entire products.  *See McAfee Products For Home*, MCAFEE.COM (advertising McAfee

18   SiteAdvisor Live, McAfee Family Protection Android Edition, and SnagZip for $19.99)[5]; *Iolo*

19   *Products*, IOLO.COM (advertising DriveScrubber 3 for $19.95)[6].  Consequently, the $20 certificates

20   are not coupons.

21          Accordingly, the Court concludes that *Inkjet* is distinguishable and does not prohibit this

22   Court from awarding attorney's fees in this case.

23          **D.    Conclusion**

24          For all the reasons set forth above, the Court GRANTS Counsels' requests for fees.

25   Ferrington Counsel shall receive $350,000.  Pochis Counsel shall receive $105,000.  As discussed at

26

27   ────────────────────
     [4] Available at: http://home.mcafee.com/store/family-protection
     [5] Available at: http://home.mcafee.com/store
28   [6] Available at: http://www.iolo.com/purchase/

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES

the June 20, 2013 Final Approval Hearing, Defendants shall make their payments to Cohen Milstein Sellers & Toll PLLC who will distribute the funds to all class counsel.

**IT IS SO ORDERED.**

Dated:  July 22, 2013

Hon. Lucy H. Koh
United States District Judge

Case No.: 10-CV-01455-LHK and related case 11-CV-0721-LHK
ORDER GRANTING ATTORNEY'S FEES